IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ALEX GOLDFARB,

　　　　　　　　　　Plaintiff,

　　　v.

CHANNEL ONE RUSSIA and
RT AMERICA,

　　　　　　　　　　Defendants.

Case No. 1:18-cv-08128-DAB

ORAL ARGUMENT REQUESTED

## MEMORANDUM OF LAW IN SUPPORT OF
## RT AMERICA, A.K.A. ANO TV NOVOSTI'S MOTION TO DISMISS

**WHITE & CASE**

701 Thirteenth Street, NW
Washington, DC  20005

February 11, 2019

*Counsel for Defendant RT America, a.k.a. ANO TV Novosti*

# TABLE OF CONTENTS

ARGUMENT ...................................................................................................................2

I.  PLAINTIFF FAILS TO ALLEGE ANY BASIS FOR PERSONAL JURISDICTION
    OVER TV NOVOSTI.............................................................................................2

    A.  This Court Lacks General Jurisdiction Over TV Novosti .................................2

    B.  This Court Lacks Specific Jurisdiction Over TV Novosti ................................4

II. PLAINTIFF FAILS TO STATE A CLAIM AGAINST TV NOVOSTI .........................9

    A.  Plaintiff Fails To State A Claim For Libel Per Se .........................................10

        1.  Plaintiff Fails To Allege That TV Novosti Acted With The
            Requisite Degree Of Fault ......................................................................11

            a.  Plaintiff Is A Public Figure ..........................................................11

            b.  Plaintiff Fails To Allege That TV Novosti Acted With
                Actual Malice..............................................................................12

            c.  Plaintiff Fails To Allege That TV Novosti Acted In A
                Grossly Irresponsible Manner.......................................................17

        2.  Mr. Litvinenko's Statements Are Not Defamatory................................18

            a.  Mr. Litvinenko's Statements Are Protected Opinion ..................19

            b.  Mr. Litvinenko's Statements Are Not "Of And
                Concerning" The Plaintiff............................................................22

        3.  Plaintiff Fails To Allege Special Damages.............................................23

    B.  Plaintiff Fails To State A Claim For Intentional Infliction of Emotional
        Distress.........................................................................................................24

    C.  Plaintiff Fails To Sufficiently Plead A Basis for Punitive Damages ...................25

CONCLUSION...............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abramson v. Pataki*,
    278 F.3d 93 (2d Cir. 2002)...................................................................................23

*Adelson v. Harris*,
    973 F. Supp. 2d 467 (S.D.N.Y. 2013)....................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................9

*Bensusan Restaurant Corp. v. King*,
    126 F.3d 25 (2d Cir. 1997)......................................................................................2

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)....................................................................................5

*Bilinski v. Keith Haring Found., Inc.*,
    632 F. App'x 637 (2d Cir. 2015) ...........................................................................24

*Biro v. Condé Nast*,
    622 F. App'x 67 (2d Cir. 2015) .......................................................................11, 12

*Biro v. Condé Nast*,
    807 F.3d 541 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2015 (2016)..............9, 12, 18

*Brian v. Richardson*,
    87 N.Y.2d 46 (1995)....................................................................................19, 21, 22

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017)............................................................................................8

*Brown v. Lockheed Martin Corp.*,
    814 F.3d 619 (2d Cir. 2016)....................................................................................3

*Bulger* v. *Royal Doulton, PLC*,
    No. 05 Civ. 7709, 2006 WL 3771016 (S.D.N.Y. Dec. 19, 2006)............................2

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)...........................................................................................7, 8

*Cabello-Rondón v. Dow Jones & Co.*,
 No. 16-cv-3346, 2017 U.S. Dist. LEXIS 131114 (S.D.N.Y. Aug. 16, 2017)..............15, 16, 17

*Chaiken v. VV Publ'g Corp.*,
 119 F.3d 1018 (2d Cir. 1997) ...........................................................................................17, 18

*Chaiken v. VV Publ'g Corp.*,
 907 F. Supp. 689 (S.D.N.Y. 1995)...........................................................................10, 11, 17

*Chanko v. Am. Broad. Cos.*,
 49 N.E.3d 1171 (N.Y. 2016)........................................................................................25

*Chau v. Lewis*,
 771 F.3d 118 (2d Cir. 2014).......................................................................................18, 23

*Chirag v. MT Marida Marguerite Schiffarhrts*,
 604 F. App'x 16 (2d Cir. 2015) .........................................................................................2

*Cortes v. Twenty-First Century Fox Am., Inc.*,
 285 F. Supp. 3d 629 (S.D.N.Y. 2018)....................................................................................10

*Cruikshank v. Bennett*,
 30 Misc. 232 (N.Y. Sup. Ct. 1900) ....................................................................................24

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014)..........................................................................................................2, 8

*Elias v. Rolling Stone LLC*,
 872 F.3d 97 (2d Cir. 2017)............................................................................................20, 21

*Fisk v. Letterman*,
 401 F. Supp. 2d 362 (S.D.N.Y. 2005) .................................................................................15

*Frank v. Nat'l Broad. Co.*,
 119 A.D.2d 252 (N.Y. App. Div. 1986) ...............................................................................10

*Gertz v. Robert Welch, Inc.*,
 418 U.S. 323 (1974)............................................................................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011)..............................................................................................................8

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
 466 U.S. 408 (1984)................................................................................................................7

*Henderson v. INS*,
 157 F.3d 106 (2d Cir. 1998)...................................................................................................5

*Idema v. Wager*,
   120 F. Supp. 2d 361 (S.D.N.Y. 2000)....................................................................25

*Immuno AG v. Moor-Jankowski*,
   77 N.Y.2d 235 (1991) ..............................................................................19, 21

*Kirby v. Wildenstein*,
   784 F. Supp. 1112 (S.D.N.Y. 1992)..................................................................23

*Konikoff v. Prudential Ins. Co. of Am.*,
   234 F.3d 92 (2d Cir. 2000)..............................................................................17

*Kurzon LLP v. Thomas M. Cooley Law Sch.*,
   No. 12-cv-8352-L TS-RLE, 2014 U.S. Dist. LEXIS 85776
   (S.D.N.Y. June 24, 2014)...................................................................................6

*Levin v. McPhee*,
   917 F. Supp. 230 (S.D.N.Y. 1996)..................................................19, 20, 21, 22

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
   244 F.R.D. 204 (S.D.N.Y. 2007) ......................................................................15

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016) .........................................................................15

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964)....................................................................................13, 14

*Norex Petroleum Ltd. v. Blavatnik*,
   22 N.Y.S.3d 138, 2015 N.Y. Misc. LEXIS 3136
   (N.Y. Sup. Ct. Aug. 25, 2015) ...........................................................................3

*Palin v. N.Y. Times Co.*,
   264 F. Supp. 3d 527 (S.D.N.Y. 2017)........................................................ passim

*Peffers v. Stop & Shop Supermarket Co. LLC*,
   No. 14-cv-3747, 2015 U.S. Dist. LEXIS 126785 (S.D.N.Y. June 9, 2015) ...........................25

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
   609 F.3d 30 (2d Cir. 2010)................................................................................2

*Phila. Newspapers v. Hepps*,
   475 U.S. 767 (1986)....................................................................................11, 12

*Pontarelli v. Shapero*,
   231 A.D.2d 407 (N.Y. App. Div. 1996) ..............................................................4

*Prozeralik v. Capital Cities Communs.*,
   82 N.Y.2d 466 (1993) ............................................................................25

*Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp.*,
   No. 14-CV-4819, 2015 U.S. Dist. LEXIS 176994 (S.D.N.Y. Sept. 21, 2015)......................3, 4

*Sae Han Sheet Co. v. Eastman Chem. Corp.*,
   No. 17 Civ. 2734, 2017 U.S. Dist. LEXIS 173410 (S.D.N.Y. Oct. 18, 2017) .........................3

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
   925 N.Y.S.2d 407 (N.Y. App. Div. 2011) ...............................................................10

*Shamoun v. Mushlin*,
   No. 12 Civ. 3541, 2014 U.S. Dist. LEXIS 45617 (S.D.N.Y. Mar. 26, 2014)......................5, 6

*Smartix Int'l Corp. v. MasterCard Int'l LLC*,
   355 F. App'x 464 (2d Cir. 2009) ...............................................................................9

*Sorvillo v. St. Francis Preparatory Sch.*,
   607 F. App'x 22 (2d Cir. 2015) ...............................................................................10

*SPCA v. Am. Working Collie Ass'n*,
   963 N.E.2d 1226 (N.Y. 2012)...................................................................................4

*Taormina v. Thrifty Car Rental*,
   No. 16-CV-3255, 2016 U.S. Dist. LEXIS 176673 (S.D.N.Y. Dec. 21, 2016) .....................3, 6

*Thai v. Cayre Grp., Ltd.*,
   726 F. Supp. 2d 323 (S.D.N.Y. 2010).......................................................................24

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*,
   65 N.E.3d 35 (N.Y. 2016)........................................................................................22

*Trachtenberg v. FailedMessiah.com*,
   43 F. Supp. 3d 198 (E.D.N.Y. 2014) .........................................................................6

*Verragio, Ltd. v. Malakan Diamond Co.*,
   No. 16 Civ. 4634, 2016 U.S. Dist. LEXIS 150689 (S.D.N.Y. Oct. 20, 2016) .........................4

*Walden v. Fiore*,
   571 U.S. 277 (2014)..................................................................................................8

*Weil v. Am. Univ.*,
   No. 07 Civ. 7748, 2008 U.S. Dist. LEXIS 1727 (S.D.N.Y. Jan. 2, 2008)................................6

## STATUTES AND RULES

N.Y. C.P.L.R. § 302...............................................................................................4, 5

Plaintiff complains of five different broadcasts, but only one broadcast—the April 1, 2018 "Worlds Apart" program—is by the defendant here, ANO TV Novosti.  *See* Compl. ¶ 13, ECF No. 1 (identifying "RT America, a.k.a. ANO TV-Novosti ('RT')" as a defendant); *see also* Pl.'s Ltr. Re: Amending Caption, ECF. No. 19 (seeking to amend caption to include reference to ANO TV Novosti).  The other four broadcasts are allegedly by Channel One Russia, also a defendant in this action.  TV Novosti is not alleged to be (and, indeed, is not) related to Channel One Russia.

Autonomous Non-Profit Organization TV Novosti is the legal name of a company incorporated in Russia with its principal place of business in Moscow.  *See* Compl. ¶ 13.  TV Novosti creates, owns, and distributes services and platforms under the umbrella brand name of RT.  RT is a global, round-the-clock network of eight TV channels (broadcasting news, current affairs, and documentaries) with digital platforms in six languages (including English, Arabic, Spanish, Russian, and French).  RT America is one of the brands within the RT portfolio that also includes RT UK and RT France.  As the Complaint acknowledges, RT has a total weekly audience of over 100 million viewers, and its broadcasts are available in over 100 countries.  *Id.*

The Complaint alleges that the April 1, 2018 "interview program," allegedly broadcast to an unspecified audience, featured an interviewee, Mr. Walter Litvinenko, who made certain defamatory statements about Plaintiff.  *See* Compl. ¶ 97.  Plaintiff now seeks to recover from TV Novosti—not Mr. Litvinenko—for damages Plaintiff purportedly suffered from Mr. Litvinenko's allegedly defamatory statements.  *See id.* ¶ 135 (Prayer for Relief).

The Court should dismiss Plaintiff's Complaint as to TV Novosti because it fails to make a *prima facie* case of personal jurisdiction over TV Novosti, and the allegations regarding the

April 1, 2018 "Worlds Apart" program fail to state claims of libel per se or intentional infliction of emotional distress ("IIED") against TV Novosti.

## ARGUMENT

**I.    PLAINTIFF FAILS TO ALLEGE ANY BASIS FOR PERSONAL JURISDICTION OVER TV NOVOSTI**

Plaintiff fails to carry his burden of making a *prima facie* showing that TV Novosti is subject to personal jurisdiction in this action.  *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010) ("[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists."); *see also Chirag v. MT Marida Marguerite Schiffarhrts*, 604 F. App'x 16, 19 (2d Cir. 2015) (requiring *prima facie* case of personal jurisdiction be based on "non-conclusory fact-specific allegations").

Because the Complaint is based on diversity jurisdiction (Compl. ¶ 14), the Court must look to the law of New York to determine whether personal jurisdiction exists over TV Novosti. *See Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997); *Bulger* v. *Royal Doulton, PLC*, No. 05 Civ. 7709, 2006 WL 3771016, at *7, (S.D.N.Y. Dec. 19, 2006) (Batts, J.) ("In general, federal courts must guarantee that personal jurisdiction is in accordance with both the long-arm statute of the state in which the federal court is located and with the Constitution.").

### A.    This Court Lacks General Jurisdiction Over TV Novosti

Plaintiff asserts only general personal jurisdiction in this case:  "This Court has personal jurisdiction over [TV Novosti] pursuant to New York CPLR § 301," New York's general jurisdiction statute.  Compl. ¶ 16.  The U.S. Supreme Court has established that for general personal jurisdiction to apply, a foreign corporation's contacts with the forum must be so "continuous and systematic" that the foreign corporation is "essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (internal citation and quotation marks

omitted); *see Norex Petroleum Ltd. v. Blavatnik*, 22 N.Y.S.3d 138, 2015 N.Y. Misc. LEXIS 3136, at *48–50 (N.Y. Sup. Ct. Aug. 25, 2015) (applying *Daimler* and dismissing complaint that did not allege the defendant was incorporated or headquartered in New York for lack of general personal jurisdiction).  Save for "a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business."  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (quoting *Daimler*, 571 U.S. at 139 n.19); *see also Sae Han Sheet Co. v. Eastman Chem. Corp.*, No. 17 Civ. 2734, 2017 U.S. Dist. LEXIS 173410, at *19 (S.D.N.Y. Oct. 18, 2017) ("[M]ere contacts with the forum"—even if they are systematic and continuous, which Plaintiff does not allege here—are "extraordinarily unlikely to qualify." (internal citation and quotation marks omitted)); *Taormina v. Thrifty Car Rental*, No. 16-CV-3255, 2016 U.S. Dist. LEXIS 176673, at *15–16 (S.D.N.Y. Dec. 21, 2016) (holding no general jurisdiction over defendant where defendant had nearly 200 offices in New York and derived substantial portion of its revenues from New York); *Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp.*, No. 14-CV-4819, 2015 U.S. Dist. LEXIS 176994, at *17–19 (S.D.N.Y. Sept. 21, 2015) (holding no general jurisdiction over defendant when defendant received $2.8 billion in revenue from New York, maintained seventeen warehouses in New York, and employed 3,400 people in New York).

Here, the Complaint concedes that TV Novosti is "at home" in Russia:  TV Novosti "is an autonomous nonprofit organization formed under the laws of the Russian Federation with its principal place of business in Moscow, Russia."  Compl. ¶ 13.  Because the Complaint fails to allege any grounds to find TV Novosti "at home" in New York, TV Novosti is not subject to general personal jurisdiction in this Court or any United States court.

### B.        This Court Lacks Specific Jurisdiction Over TV Novosti

Plaintiff does not assert specific personal jurisdiction over TV Novosti and, therefore, has waived that as a basis for personal jurisdiction.  *Ritchie*, 2015 U.S. Dist. LEXIS 176994, at *10 ("Plaintiffs do not argue for jurisdiction under CPLR § 302, New York's long-arm specific jurisdiction statute, and have abandoned an argument for jurisdiction on that basis."); *see also Verragio, Ltd. v. Malakan Diamond Co.*, No. 16 Civ. 4634 (CM), 2016 U.S. Dist. LEXIS 150689, at *6 (S.D.N.Y. Oct. 20, 2016) (declining to consider basis for jurisdiction not asserted by plaintiff).

Even if Plaintiff had asserted jurisdiction under New York's long-arm statute (N.Y. C.P.L.R. § 302(a)), the Complaint does not allege a *prima facie* case of specific personal jurisdiction over TV Novosti.  Section 302(a) permits courts in New York to exercise personal jurisdiction over a foreign defendant in only four specifically enumerated situations.  Three of those situations—set forth in § 302(a)(2), (3), and (4)—simply do not apply here.

Section 302(a)(2) and (3) expressly exclude tort actions for defamation of character from the long-arm jurisdiction in New York.  *SPCA v. Am. Working Collie Ass'n*, 963 N.E.2d 1226, 1228 (N.Y. 2012) ("Long-arm jurisdiction [under C.L.P.R. § 302(a)(2),(3)] . . . provides an express statutory exception for 'cause[s] of action for defamation of character arising from the act.'"); *Pontarelli v. Shapero*, 231 A.D.2d 407, 410 (N.Y. App. Div. 1996) ("[T]he only tort alleged to have been committed, defamation of character, cannot form the basis for long-arm jurisdiction under the specific language of the statute.").

And § 302(a)(4) relates only to real property.  N.Y. C.P.L.R. § 302(a)(4).  The Complaint does not allege that Plaintiff's claims relate to any real property in New York.

Thus, this Court need only consider whether § 302(a)(1) applies; it does not.  Under § 302(a)(1), a plaintiff must allege that the defendant either "transacts any business within the

state or contracts anywhere to supply goods or services in the state." *Id.* § 302(a)(l).  Plaintiff

does not allege any such business or contracts by TV Novosti from which Plaintiff's claims arise.

Moreover, Plaintiff's defamation claim must "arise from" TV Novosti's alleged conduct in New

York, and Plaintiff must plead an "articulable nexus, or a substantial relationship, between the

claim asserted and the actions that occurred in New York."  *Henderson v. INS*, 157 F.3d 106, 123

(2d Cir. 1998) (internal quotation marks omitted).   The Complaint fails to make any such

allegation with respect to TV Novosti.

     In a decision that is dispositive here, the Second Circuit held that an out-of-state

defendant's act of circulating an alleged defamation in New York does not constitute

"transacting business" in New York:

> New York courts do not interpret "transacting business" to include
> mere defamatory utterances sent into the state.  Although section
> 302(a)(l) does not exclude defamation from its coverage, *New York
> courts construe "transacts any business within the state" more
> narrowly in defamation cases than they do in the context of other
> sorts of litigation*.  In other cases, "proof of one transaction," or a
> "single act," in New York is sufficient to invoke long-arm
> jurisdiction, even though the defendant never enters New York. . . .
> *In defamation cases, by contrast, the "single act" of uttering a
> defamation, no matter how loudly, is not a "transaction of
> business" that may provide the foundation for personal
> jurisdiction*.  In other words, when the defamatory publication
> itself constitutes the alleged "transaction of business" for the
> purposes of section 302(a)(l), more than the distribution of a
> libelous statement must be made within the state to establish long-
> arm jurisdiction over the person distributing it.

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007) (internal citations and brackets

omitted) (emphases added).

     Rather, a plaintiff must allege that the media defendant "engaged in some purposeful

activity within New York that was directly related to the creation of the allegedly defamatory

work, such as research, writing, printing, or broadcasting."  *Shamoun v. Mushlin*, No. 12 Civ.

3541(AJN), 2014 U.S. Dist. LEXIS 45617, at *16–17 (S.D.N.Y. Mar. 26, 2014) (internal quotation marks omitted); *see id.* at *27 (dismissing defamation action for lack of jurisdiction under § 302); *see also Trachtenberg v. FailedMessiah.com*, 43 F. Supp. 3d 198, 202 (E.D.N.Y. 2014) (dismissing defamation claim under § 302 because defamatory content was not "based on research physically conducted in New York"); *Weil v. Am. Univ.*, No. 07 Civ. 7748, 2008 U.S. Dist. LEXIS 1727, at *18–19 (S.D.N.Y. Jan. 2, 2008) (dismissing under § 302 because "the business of publishing and distributing the Magazine," which contained allegedly defamatory statements, all took place outside New York); *Kurzon LLP v. Thomas M. Cooley Law Sch.*, No. 12-cv-8352-L TS-RLE, 2014 U.S. Dist. LEXIS 85776, at *15–19 (S.D.N.Y. June 24, 2014) (dismissing under § 302 because defamation was unrelated to defendant's alleged business activities in New York, despite complaint's allegation that defendant circulated the statement to readers in New York).

Here, Plaintiff does not allege that Mr. Litvinenko's statements (or, indeed, any part of the April 1 program) were prepared or researched in New York or that they were made about a New York resident.  *See* Compl. ¶ 11 (alleging Plaintiff is a resident of New Jersey).  Because Plaintiff fails to allege that the alleged defamatory statements arose from any business that TV Novosti conducts in New York, Plaintiff fails to set forth a *prima facie* case for specific jurisdiction pursuant to § 302(a)(1).

Because "specific jurisdiction is claim-specific," the Court "must have specific jurisdiction over each of the Plaintiff's claims." *Taormina*, 2016 U.S. Dist. LEXIS 176673, at *7.  Sections 302(a)(2), (3), and (4) are inapplicable to Plaintiff's IIED claim for the same reasons they are inapplicable to his defamation claim:  his claim (a) does not relate to real property in New York, and (b) sounds in defamation.  *See Shamoun*, 2014 U.S. Dist. LEXIS

45617, at *12–13 ("All of the Plaintiffs' claims [which include an IIED claim] are factually based upon the allegedly defamatory statements published online, so the defamation exception applies and neither section 302(a)(2) nor section 302(a)(3) can support personal jurisdiction over the Defendants.").  Similarly, because Plaintiff's IIED claim is based on the same facts as his defamation claim, § 302(a)(1) cannot support personal jurisdiction over TV Novosti for Plaintiff's IIED claim for the same reasons § 302(a)(1) cannot support personal jurisdiction over Plaintiff's defamation claim—Plaintiff does not allege any business or contracts by TV Novosti from which Plaintiff's claims arise.

Finally, even if Plaintiff could satisfy the requirements of New York's long-arm statute (which he cannot), the Court's exercise of jurisdiction must comport with constitutional due process (which it does not).  Specific personal jurisdiction under the constitutional due process standard exists "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum, the [U.S. Supreme] Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of *in personam* jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).  This constitutional limitation prevents a foreign defendant from "being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (internal quotation marks omitted).  It is, therefore, "essential in each case that there be some act by which the defendant *purposefully avails* itself of the privilege of conducting activities within the forum State . . . ."  *Id.* at 474–75 (emphasis added) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The purposeful availment  requirement is "essential" because it ensures that jurisdiction is not premised on "'attenuated' contacts," *id.* at 475 (quoting *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)), or "the unilateral activity of another party," *id.* (quoting *Helicopteros Nacionales*, 466 U.S. at 417).   The cases are clear that "the defendant *himself* . . . [must] create a 'substantial connection' with the forum State." *Id.* (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

      In *Walden v. Fiore*, the U.S. Supreme Court clarified that "to exercise jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a substantial connection with the forum State."   571 U.S. 277, 284 (2014) (emphasis added); *see Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) ("When there is no such connection, specific jurisdiction is lacking."); *Walden*, 571 U.S. at 284 (requiring for specific jurisdiction "a substantial connection with the forum State" based on "suit-related" contacts "that the 'defendant *himself*' creates with the forum State"); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (holding "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction" (internal quotation marks omitted)).

      Plaintiff's claims against TV Novosti arise from the alleged interview of Walter Litvinenko on April 1, 2018.  *See* Compl. ¶¶ 97–98.  The Complaint, however, is devoid of any allegation of fact connecting that interview to New York in any way.  Indeed, Plaintiff fails to allege any connection—let alone a "substantial connection"—between the alleged "suit-related conduct" and New York.  *See Walden*, 571 U.S. at 284.  TV Novosti's April 1, 2018 alleged broadcast of purported defamatory statements by Walter Litvinenko is not "tethered to [New York] in any meaningful way." *Id.* at 290.

Because Plaintiff has failed to carry his burden of making a *prima facie* showing that TV Novosti is subject to either general or specific personal jurisdiction in this action, the Court should dismiss Plaintiff's claims against TV Novosti for lack of personal jurisdiction.

## II.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST TV NOVOSTI

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").  In particular, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  This test "asks for more than a sheer possibility that a defendant has acted unlawfully" and treats "plead[ed] facts that are merely consistent with a defendant's liability" as "stop[ping] short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks omitted).

The Court need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*, at 678–79.  Failure to plead sufficient facts that meet the plausibility threshold for any element of a defamation claim requires dismissal of the claim. *See Biro v. Condé Nast*, 807 F.3d 541, 544–47 (2d Cir. 2015) (finding that the pleading standard articulated in *Twombly* and *Iqbal* applies to defamation claims, including the element of "actual malice," and affirming the lower court's decision to grant a motion to dismiss where plaintiff failed to plausibly allege one element of a defamation claim), *cert. denied*, 136 S. Ct. 2015 (2016); *see also Smartix Int'l Corp. v. MasterCard Int'l LLC*, 355 F. App'x 464, 466 (2d Cir. 2009) ("To survive a motion to dismiss, a plaintiff must sufficiently plead *each* of [the] elements [of his claim] to meet the standards set forth in *Twombly* and *Iqbal*.").

The inquiry into pleading sufficiency is particularly important in the context of defamation cases.  Indeed, "courts should, where possible, resolve defamation actions at the pleading stage," due to the chilling effect of defamation cases on the exercise of First Amendment rights.  *Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013).

### A.       Plaintiff Fails To State A Claim For Libel Per Se

Under New York law "[a] claim for defamation is an umbrella term that incorporates the twin torts of libel and slander."  *Cortes v. Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629, 641 (S.D.N.Y. 2018) (internal citation and quotation marks omitted).   A defamatory television broadcast is classified as a libel.  *See Frank v. Nat'l Broad. Co.*, 119 A.D.2d 252, 255 (N.Y. App. Div. 1986).

To sufficiently plead libel under New York law, a plaintiff must allege:   (1) a "defamatory factual statement [of and] concerning the plaintiff"; (2) "publication to a third party"; (3) the requisite degree of "fault"; (4) "falsity of the defamatory statement"; and (5) "special damages or *per se* actionability."  *Sorvillo v. St. Francis Preparatory Sch.*, 607 F. App'x 22, 24 (2d Cir. 2015) (quoting *Chau v. Lewis*, 771 F.3d 118, 126–27 (2d Cir. 2014)); *Chaiken v. VV Publ'g Corp.*, 907 F. Supp. 689, 695 (S.D.N.Y. 1995).

Here, Plaintiff fails to allege facts sufficient to support the following elements of a defamation claim: (1) the requisite degree of fault by TV Novosti; (2) the existence of a defamatory factual statement of and concerning Plaintiff; and (3) special damages.  *See Sandals Resorts Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 412 (N.Y. App. Div. 2011) (affirming libel per se claim was nonactionable where it failed to sufficiently plead elements of defamation claim).

**1.    Plaintiff Fails To Allege That TV Novosti Acted With The Requisite Degree Of Fault**

Plaintiff here is a public figure and, as such, Plaintiff must allege that TV Novosti acted with "actual malice."  *See Phila. Newspapers v. Hepps*, 475 U.S. 767, 773 (1986) (stating that a showing of "actual malice" must be made by "clear and convincing" evidence "when a 'public figure' sues a magazine or news service" (internal citations omitted)).  And regardless of whether Plaintiff is a public figure, the requisite level of malice for a media defendant in a defamation case under New York law is that the defendant must have acted in a "grossly irresponsible manner."  *Chaiken*, 907 F. Supp. at 696.  Plaintiff's allegations fail to meet either standard.

**a.    Plaintiff Is A Public Figure**

Public figures are individuals that have "invite[d] attention and comment."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974).  An individual can be classified as a public figure for all purposes when they "occupy positions of . . . persuasive power and influence," but the classification occurs most often when "an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues."  *Id.* at 345, 351.  The Second Circuit makes the limited-purpose public figure assessment by considering whether the plaintiff:  "(1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media."  *Biro v. Condé Nast*, 622 F. App'x 67, 69 (2d Cir. 2015) (quoting *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136–37 (2d Cir. 1984)).

Here, by Plaintiff's own allegations, Plaintiff is a public figure or, at the very least, a limited-purpose public figure with respect to the content at issue in this litigation.  Plaintiff

alleges that he "enjoys a considerable public standing in Russia and around the world, including the United States." Compl. ¶ 108. Plaintiff further alleges that he is "a noted human rights activist" and "was the CEO of the International Foundation for Civil Liberties," a non-profit that worked to "expos[e] wrongdoing by the Putin regime." *Id.* ¶¶ 11, 30. Moreover, Plaintiff has "continuing access to the media," *Biro*, 622 F. App'x at 69, as he is "often invited to take part in news programs, talk shows, conferences and documentaries on Russian affairs both here and abroad." Compl. ¶ 108.

With respect to this case, the Complaint alleges that Plaintiff "voluntarily injected himself" into the events at issue and "successfully invited public attention to his views." *Biro*, 622 F. App'x at 69. Indeed, Plaintiff assumed "a position of prominence" in the matters at issue here (*id.*)—following Alexander Litvinenko's death, he stood "in front of the hospital" and "read [a] statement to the press" that was written by Alexander Litvinenko before his death (Compl. ¶ 36) and, subsequently, in 2007, he published a book on the death of Alexander Litvinenko (*id.* ¶ 38).

### b.   Plaintiff Fails To Allege That TV Novosti Acted With Actual Malice

Because Plaintiff is a public figure, to survive a motion to dismiss, he must allege facts that support a plausible inference that TV Novosti acted with "actual malice." *See Phila. Newspapers*, 475 U.S. at 773 (recognizing that a "public figure" must prove "actual malice" to recover damages); *Biro*, 807 F.3d at 546–47 (affirming decision to grant a motion to dismiss where the plaintiff, a limited-purpose public figure, failed to plausibly allege "actual malice"). Actual malice requires that the alleged statements were made "with knowledge that the statements were false or with reckless disregard of their falsity." *Palin v. N.Y. Times Co.*, 264 F. Supp. 3d 527, 533 (S.D.N.Y. 2017) (citing *Phila. Newspapers*, 475 U.S. at 773, 775).

–12–

More particularly here, actual malice alleged against an organization as a whole is insufficient.  *See Palin*, 264 F. Supp. 3d at 538–39 (finding that a specific editor's "knowledge and intent" are what is "ultimately at issue so far as actual malice is concerned").  Instead, Plaintiff must allege that a *specific individual*—someone who was responsible for publishing the alleged defamatory content—acted with actual malice.  *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) ("[T]he state of mind required for actual malice [has] to be brought home to the persons in the [defendant's] organization having responsibility for the publication of the [alleged defamatory statement].").

Here, the only TV Novosti individual that Plaintiff even identifies in connection with the April 1, 2018 broadcast is Ms. Oksana Boyko.  *See* Compl. ¶¶ 97–98.  Yet, nowhere in the Complaint does Plaintiff allege that she is responsible for the publication or broadcast of the show.  The Complaint describes her as simply the "host."  *Id.* ¶ 97.

Plaintiff makes only two other allegations about Ms. Boyko, and those allegations are not sufficient to plausibly infer actual malice.  First, Plaintiff's allegation that Ms. Boyko *knew* that his wife's death was the result of cancer (Compl. ¶¶ 97, 125) is undermined by the very statement he cites as supporting this assertion.  *Compare* Compl. Ex. 3, file "VTS_03_1.VOB," at 6:36–6:49 [hereinafter "Compl. Ex. 3"] (referring to Mr. Litvinenko's rambling statements about "this lady" and stating: "You mean Goldfarb's wife.  She had cancer, I hear."), *with id.* ¶ 97, *and id.* Ex. 2 at 24 (omitting Ms. Boyko's full statement, and stating instead: "You mean Goldfarb's wife.  She had cancer?").  Ms. Boyko's full statement reveals that Ms. Boyko did not in fact know what caused Plaintiff's wife's death.  *See Palin*, 264 F. Supp. 3d at 533 (S.D.N.Y. 2017) (finding that actual malice requires that the alleged statements were made "with knowledge that the statements were false or with reckless disregard as to their falsity").

Second, Plaintiff's allegation of actual malice with respect to Ms. Boyko's statements about the UK Inquiry Report also fails.  As an initial matter, Plaintiff cannot establish Ms. Boyko's state of mind by generally pointing to the reporting history of TV Novosti.  *See Sullivan*, 376 U.S. at 287 (finding that the "mere presence of the stories in the files does not, of course, establish that the [defendant] 'knew' the advertisement was false, since the state of mind required for actual malice would have to be brought home to the persons in the [defendant]'s organization having responsibility for the publication of the [alleged defamatory content]"); *Palin*, 264 F. Supp. 3d at 538, 536 (stating it is not the media defendant's "collective knowledge and intent that is relevant" but instead the knowledge of the individual responsible for publishing the statement).

Moreover, Plaintiff's allegations establish that the UK Inquiry did include "closed evidence" that "related to Litvinenko's work for MI6 and the Russian State's responsibility." Compl. ¶ 73.  Ms. Boyko's statement that Theresa May "classified the Litvinenko case, all the investigation materials, and she said it was a matter of national security" (*id.* ¶ 98), when in fact this file was only partially classified, amounts to no more than a "supposed research failure," which does "not constitute clear and convincing evidence of actual malice, even of the 'reckless' kind." *Palin*, 264 F. Supp. 3d at 538.  Indeed, Ms. Boyko's exploration of this topic revealed to viewers that Mr. Litvinenko did not have access to any confidential materials when making his statement, *see* Compl. Ex 2 at 24, which served to allow readers to better assess Mr. Litvinenko's assertions on their own.

In addition, the video exhibit submitted by Plaintiff reveals that, contrary to how the interview is portrayed in the written transcript, Ms. Boyko and Mr. Litvinenko repeatedly interrupt and talk over each other.  *See, e.g.*, Compl. Ex. 3 at 6:36–6:49.  The nature of this

interview, which shows Ms. Boyko listening to and challenging Mr. Litvinenko in real time (*id.* Ex. 3 0:58–6:50), contradicts any allegations that Ms. Boyko acted with actual malice. *See Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007) ("At the motion to dismiss stage, where a plaintiff's factual allegations or legal conclusions are flatly contradicted by documentary evidence, they are not presumed to be true, or even accorded favorable inference . . . .") (internal quotation marks omitted); *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005) ("The Court … is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint.").

Furthermore, courts routinely find that an allegation of actual malice is undermined when the reporter attempts to explain contrasting viewpoints with respect to the alleged defamatory statement. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016) ("[W]here the publisher includes information contrary to the general conclusions reached in an article, that showing tends to undermine the claims of malice"); *Palin*, 264 F. Supp. 3d at 538 ("[T]he allegation of actual malice is even more improbable because the Times included as a hyperlink an article undercutting its own conclusions."). Indeed, this Court has previously found that an article at issue in a defamation case "cannot be said to evince an intent to deliberately avoid learning or portraying the truth" if the article included information that "flatly contradict[ed] claims by a source cited in the article." *Cabello-Rondón v. Dow Jones & Co.*, No. 16-cv-3346 (KBF), 2017 U.S. Dist. LEXIS 131114, at *29–30 (S.D.N.Y. Aug. 16, 2017).

Here, the transcript of the alleged broadcast (Compl. Ex. 2 at 22–25) undermines any claim of actual malice because Ms. Boyko clearly explained that multiple sources contradicted Mr. Litvinenko's opinion as to the death of his son and repeatedly asked Mr. Litvinenko to

explain his opinions in light of these contradictory sources.  To start, Ms. Boyko explained, that immediately following Alexander Litvinenko's death, Mr. Litvinenko "publicly blamed Russia" for his son's death; Ms. Boyko then asked "Who or what made you change your opinion on this issue?"  Compl. Ex. 2 at 22.  Mr. Litvinenko stated:  "I kept analyzing this situation; I kept thinking again and again and eventually I came to a conclusion and now nothing can change my opinion.  Putin would never do anything like that."  *Id.*  Upon Mr. Litvinenko's explanation that "[Putin] is a decent person" and "doesn't do such nasty thinks [sic]," Ms. Boyko asked "Well, in Putins [sic?] eyes I guess, [Alexander Litvinenko] was a traitor?"  *Id.* Ex. 2 at 23.

Ms. Boyko then changed the subject, challenging Mr. Litvinenko's position by pointing to specific evidence cited by "our British colleagues" that "there is a chemical trace that leads through Lugovoy to the airport and then back to Moscow."  *Id.*  Ms. Boyko next explained that Alexander Litvinenko's widow "publicly, and I think sincerely, accuses Russian authorities" of killing Alexander.  *Id.*  Ms. Boyko next moved on to questioning Mr. Litvinenko about the lack of evidence he has to support his opinion about his son's death.  *Id.* Ex. 2 at 23–25.  Ultimately, the alleged broadcast "cannot be said to evince an intent to deliberately avoid learning or portraying the truth," because the broadcast itself "flatly contradict[ed]" Mr. Litvinenko's claims with several contrary sources.  *Cabello-Rondón*, 2017 U.S. Dist. LEXIS 131114, at *29–30; *see also Palin*, 264 F. Supp. 3d at 538.

The same is true with respect to the statements concerning Plaintiff's wife.  As explained above, Ms. Boyko challenged Mr. Litvinenko on the issue to the extent that she was able, asserting that "[s]he had cancer, I hear."  *Compare* Compl. Ex. 3 at 6:36–6:49, *with id.* ¶ 97, *and id.* Ex. 2 at 24.  In short, Ms. Boyko "cannot be said to evince an intent to deliberately avoid learning or portraying the truth" because her questioning included information that "flatly

contradict[ed]" Mr. Litvinenko's assertions, namely that Plaintiff's wife died of cancer.  *Cabello-Rondón*, 2017 U.S. Dist. LEXIS 131114, at *29–30.

### c.     Plaintiff Fails To Allege That TV Novosti Acted In A Grossly Irresponsible Manner

Under New York law, "where the content of the [publication] is arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition," a purportedly defamed party may recover only if he "establish[es] . . . that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Chaiken*, 907 F. Supp. at 696 (citation omitted); *see also Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 101 (2d Cir. 2000).  In certain instances, the "grossly irresponsible manner" standard is higher than actual malice.  *See Konikoff*, 234 F.3d at 104–05 (providing an example of a scenario, a television station's decision to knowingly re-broadcast defamatory statements of a public official, wherein the station may be acting with actual malice, but not demonstrating gross irresponsibility).

Here, the allegedly defamatory statements are about "matters of public concern."  *See Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1032 (2d Cir. 1997) ("New York courts generally defer to publishers' judgments as to what subjects are matters of public concern.").  Indeed, Plaintiff's allegations establish that Alexander Litvinenko's death and the circumstances surrounding it are of public concern.  *See* Compl. ¶¶ 36, 38 (establishing that following Alexander Litvinenko's death, Plaintiff "read [a] statement to the press" that was written by Alexander before his death and that Plaintiff later published a book titled "Death of a Dissident. The Poisoning of Alexander Litvinenko and the Return of the KGB").

Moreover, Plaintiff's allegations establish that Mr. Litvinenko's opinions are themselves newsworthy, and thus within the ambit of responsible journalism—specifically that Mr. Litvinenko is Alexander Litvinenko's father and that Mr. Litvinenko first believed that the Russian authorities killed his son but later changed his opinion.  *See* Compl. ¶ 4.  These specific circumstances are newsworthy, and it was not "grossly irresponsible" to allow Mr. Litvinenko to voice his opinion and to challenge him on that opinion.  *See Chaiken*, 119 F.3d 1018, 1032 (2d Cir. 1997) ("New York courts generally defer to publishers' judgments as to what subjects are matters of public concern . . . .").

Plaintiff's defamation claim fails in its entirety because he failed to sufficiently plead that TV Novosti acted with the requisite degree of fault.  *See Biro*, 807 F.3d at 546–47 (affirming dismissal where plaintiff, a limited-purpose public figure, failed to plausibly allege "actual malice").

### 2.    Mr. Litvinenko's Statements Are Not Defamatory

To establish a defamation claim, Plaintiff must establish the existence of a defamatory statement, an element that is actually "composed of multiple parts."  *Chau*, 771 F.3d at 127.  The statement must (a) be "defamatory," meaning that it "attributes odious or despicable characterizations to its subject"; (b) consist of facts, not opinions; and (c) be "about the plaintiff."  *Id.*.

Plaintiff asserts a claim of libel per se against TV Novosti because TV Novosti broadcasted statements by Walter Litvinenko that allegedly accused Plaintiff of poisoning Alexander Litvinenko and murdering Plaintiff's wife.  Compl. ¶¶ 9, 116, 126.  Plaintiff's claim fails because Mr. Litvinenko's statements are protected opinion and, thus, cannot support a defamation claim.  Moreover, the statements that Walter Litvinenko made on the April 1, 2018

TV Novosti broadcast do not accuse any specific individual of murder and thus cannot support a defamation claim.

### a.    Mr. Litvinenko's Statements Are Protected Opinion

The New York Court of Appeals "has held that opinion receives greater protection under the New York [Constitution] than under the United States Constitution." *Levin v. McPhee*, 917 F. Supp. 230, 240 (S.D.N.Y. 1996); *see also Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 255 (1991) (explaining the history of New York's heightened protections of free speech and holding that although the alleged defamatory statements in that case would be subject to liability under federal Constitutional law, the statements qualify as protected opinion under New York law). If "the specific text or the social context signals to the reader that the statement is opinion rather than fact," the allegedly defamatory statement is not actionable under New York law. *Levin*, 917 F. Supp. at 240; *see also Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995) (holding that "the court should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff'") (quoting *Immuno*, 77 N.Y.2d at 254); *Immuno*, 77 N.Y.2d at 255 (concluding that the test for whether a statement is protected opinion under New York law "takes into account the full context of challenged speech . . . [which] accords with the central value of assuring 'full and rigorous exposition and expression of opinion on matters of public interest'" (citation omitted)).

Here, the challenged statements are protected opinion. *First*, "[t]he immediate context in which the challenged statements were made . . . supports the conclusion that the specific accusations of which plaintiff complains could not have been understood by a reasonable [listener] as assertions of fact that were proffered for their accuracy." *Brian*, 87 N.Y.2d at 53. In the interview segment that Plaintiff alleges contains the defamatory statements, the questions that

the TV Novosti program host asked Mr. Litvinenko were heavily caveated with phrases such as "you personally think" and "[w]hy are you so sure."  *See* Compl. ¶ 97.  Such qualifying language is even more pervasive in the larger interview segment attached to the Complaint, which indicates to the listener that the purpose of the questions was to elicit Mr. Litvinenko's personal opinion.  *See* Compl. Ex. 2 at 22–25 (asking "Who or what made you change your opinion on this issue" and including challenging statements, such as "Your opinion about the cause of death of your son is different from what his widow Marina says."); *Elias v. Rolling Stone LLC*, 872 F.3d 97, 111 (2d Cir. 2017) (finding that, because alleged defamatory statements were framed with qualifying language, they "clearly represent [the defendant's] interpretation").

In addition, the "presentation of conflicting theories" within the broadcast itself even more strongly "signals to the [listener] that what is being expressed is no more than speculation," and is thus protected opinion.  *Levin*, 917 F. Supp. at 240; *see id.* at 241–42 (dismissing libel claim based on defendant's accusation that plaintiff murdered a prominent Russian artist on the ground that the otherwise defamatory statement was presented alongside additional theories). Even if Mr. Litvinenko's statements are deemed to accuse Plaintiff of murder (which they do not), Mr. Litvinenko's theory was elicited as only one of a number of possible explanations of how Alexander Litvinenko died, with the alternative explanations suggesting his death was caused by the Russian authorities.  *See* Compl. Ex. 2, at 22–23.  With respect to Plaintiff's wife's death, the TV Novosti host confronts Mr. Litvinenko with the conflicting theory that the host had heard that Plaintiff's wife had died of cancer.  *Id.* Ex. 3 at 6:36–6:49; *see Levin*, 917 F. Supp. at 240 (finding that the statement "I believe . . . X killed Y" sufficiently indicates opinion, particularly in light of the simultaneous presentation of conflicting theories).

*Second*, the context for the allegedly defamatory statements—that they were made by a guest on an interview program—only further establishes that Mr. Litvinenko's statements are nonactionable opinion. *See Brian*, 87 N.Y.2d at 51 ("In addition to considering the immediate context in which the disputed words appear, the courts are required to take into consideration the larger context in which the statements were published, including the nature of the particular forum."). Here, Plaintiff alleges that the TV Novosti show is an "interview program" (Compl. ¶ 97), not an objective news report. By its nature, therefore, the show "is closely related in spirit to the 'marketplace of ideas,'" and the New York Court of Appeals has held that the values of "fair comment, fair report and the immunity accorded expression of opinion" are "best effectuated by according defendant some latitude to [broadcast statements] on a matter of legitimate public concern." *Immuno*, 77 N.Y.2d at 255; *see id.* at 256–57 (holding that New York Times was not liable for an allegedly defamatory letter to the editor in the op-ed section, because the context for the letter signaled it was an expression of opinion and not facts verified by the newspaper). Thus, the context of an "interview program" during which Mr. Litvinenko made his allegedly defamatory statements signals to the viewer that TV Novosti is simply providing a forum for Mr. Litvinenko's opinions. *See Levin*, 917 F. Supp. at 237 n.6 ("[L]ayers of attribution . . . are important in determining whether a statement, although [otherwise] actionable at common law, is a constitutionally protected expression of opinion.").

*Finally*, a statement of opinion is not actionable when it "either discloses the facts on which it is based or does not imply the existence of undisclosed facts." *Elias*, 872 F.3d at 111 (quoting *Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997)). Because neither TV Novosti nor Mr. Litvinenko suggested that Mr. Litvinenko "possesse[d] facts unknown to the [listener]," TV Novosti did not "vouch[] for the truthfulness of the defamatory statement, and a reasonable

[listener] could not conclude that it was an assertion of fact." *Levin*, 917 F. Supp. at 241; *Brian*, 87 N.Y.2d at 54 (concluding alleged defamatory statement to be opinion because "there was no suggestion in the article that there were additional undisclosed facts on which [the defamatory statement's] credibility had been based").

Indeed, according to the transcript attached to the Complaint, Mr. Litvinenko stated that his opinion about his son's death was based on nothing more than his own "analysis." Compl. Ex. 2 at 22 ("I kept analyzing this situation; I kept thinking again and again and eventually I came to a conclusion."). The TV Novosti host asked Mr. Litvinenko whether he had access to any classified information about his son's death, and Mr. Litvinenko repeatedly stated that he had no access to such documents. *See* Compl. Ex. 2 at 24 (stating that "they didn't show me any documents, nothing," "I have no access whatsoever," and "nobody would let me have any access"). Since, according to the Complaint, Mr. Litvinenko did not possess facts unknown to a viewer, a viewer "is able to draw his or her own conclusion from the facts and agree or disagree with [Mr. Litvinenko's] statement." *Levin*, 917 F. Supp. at 240. At worst, a reasonable viewer could conclude only that Mr. Litvinenko was of the *opinion* that Plaintiff might have been involved with Alexander Litvinenko and Plaintiff's wife's deaths. *Id.* at 241–42. Such an opinion is not actionable and, thus, Plaintiff's libel claim should be dismissed.

### b.   Mr. Litvinenko's Statements Are Not "Of And Concerning" The Plaintiff

To sufficiently allege a libel per se claim, Plaintiff must identify a defamatory statement that is "of and concerning the plaintiff." *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 65 N.E.3d 35, 37 (N.Y. 2016) (dismissing defamation claims because alleged statements were not "of and concerning" plaintiffs). In Paragraph 97 of the Complaint, Plaintiff identifies and quotes the segment of the April 1 broadcast that allegedly contains defamatory statements about him.

But Plaintiff grossly overstates the content of the statements.  Nowhere in this segment (nor in the remainder of the program) does Walter Litvinenko accuse any specific person (let alone Plaintiff) of murder.

Mr. Litvinenko was asked about his "opinion" that Plaintiff was "connected to" Alexander Litvinenko's death, and Mr. Litvinenko responded:  "He is a CIA guy.  It's CIA that [sic] killed my son."  Compl. ¶ 97; *see also id*. Ex. 2 at 23–24.  This alleged statement does not accuse Plaintiff of poisoning Alexander Litvinenko.  Rather, Mr. Litvinenko accuses *the CIA* of killing Alexander Litvinenko.  Compl. ¶ 97; *see also id.* Ex. 2 at 23–24.  A claim for defamation "is insufficient if a statement merely makes reference to the plaintiff as a member of a group." *Abramson v. Pataki*, 278 F.3d 93, 102 (2d Cir. 2002).  Accusing someone of being part of the CIA is not defamatory.  *Chau*, 771 F.3d at 127.

Similarly, Mr. Litvinenko's alleged statements do not accuse Plaintiff of murdering his wife.  Instead, they are a muddled rant that accuses an unknown "they" of killing a "young . . . woman."  Compl. ¶ 97.  From the alleged statement, it is unclear who Mr. Litvinenko is accusing.  In any event, Plaintiff is not "clearly identifiable" in this statement.  *Abramson*, 278 F.3d at 102.

These vague and ambiguous alleged statements do not constitute libel per se.  *See Abramson*, 278 F.3d at 102 ("[A]n individual plaintiff must be clearly identifiable to support a claim for defamation.").

### 3.    Plaintiff Fails To Allege Special Damages

Even if Plaintiff properly alleged libel per se (which he has not), he is not entitled to special damages.  "Special damages are limited to losses having pecuniary or economic value, and must be fully and accurately stated, with sufficient particularity to identify actual losses." *Kirby v. Wildenstein*, 784 F. Supp. 1112, 1116 (S.D.N.Y. 1992) (internal quotation marks and

citations omitted); *see also Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637, 642–43 (2d Cir. 2015) (rejecting a special damages claim of "not less than $40 million" as "precisely the sort of generalized, round number that is too speculative and conclusory to satisfy the requirement that special damages be stated in detail"); *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010) (explaining that special damages "consist of the loss of something having economic or pecuniary value" and "must be fully and accurately stated, with sufficient particularity to identify actual losses" (internal quotation marks and citations omitted)).

Although special damages need not be alleged in order for a per se claim to be actionable, a plaintiff must allege special damages with the requisite specificity in order to collect them. *See Cruikshank v. Bennett*, 30 Misc. 232, 233 (N.Y. Sup. Ct. 1900) ("In order to prove special damage in an action for [libel or libel per se], it must be specifically alleged in the complaint.").

Here, Plaintiff alleges special damages "in amounts to be established at trial," without alleging such damages with the requisite specificity. Compl. ¶ 135; *see also id.* ¶¶ 108–14. Plaintiff's claim to special damages thus fails as a matter of law, even if he establishes the per se actionability of his claim, and should therefore be dismissed. *See Cruikshank*, 30 Misc. at 233; *Thai*, 726 F. Supp. 2d at 330.

**B.     Plaintiff Fails To State A Claim For Intentional Infliction of Emotional Distress**

Plaintiff's claim for IIED against TV Novosti must be dismissed because New York law does not permit a separate cause of action for IIED when that claim is redundant of a libel claim. Plaintiff's intentional infliction of emotion distress claim is nothing more than an attempt to recover for emotional injury allegedly sustained because of the claimed libel. Compl. ¶ 133. The only conduct that Plaintiff claims TV Novosti engaged in to cause his emotional distress is the alleged defamation itself. *Id.* ¶¶ 132–34. "New York courts have consistently held that a

plaintiff may not maintain a separate claim for intentional infliction of emotional distress grounded in the same facts as a claim for libel." *Idema v. Wager*, 120 F. Supp. 2d 361, 370 (S.D.N.Y. 2000); *see id.* (dismissing IIED claims as duplicative of libel claims); *see also Peffers v. Stop & Shop Supermarket Co. LLC*, No. 14-cv-3747 (VB), 2015 U.S. Dist. LEXIS 126785, at *10–11 (S.D.N.Y. June 9, 2015) (dismissing IIED claim because it "arises out of exactly the same facts—the allegedly defamatory publication of plaintiff's threat of violence—as [plaintiff's] defamation claim against [defendant], and thus cannot be maintained"). In any event, Plaintiff's allegations do not satisfy the elements of a claim for IIED. *See Chanko v. Am. Broad. Cos.*, 49 N.E.3d 1171, 1178 (N.Y. 2016) (outlining elements of claim). Thus, the Court should dismiss Plaintiff's IIED claim.

### C.     Plaintiff Fails To Sufficiently Plead A Basis for Punitive Damages

Plaintiff summarily demands punitive damages. Compl. ¶¶ 134–35. Under New York law, a plaintiff must establish common law malice in order to recover punitive damages in a defamation case. *See Prozeralik v. Capital Cities Communs.*, 82 N.Y.2d 466, 479–80 (1993) (finding that common law malice, which "focuses on the defendant's mental state in relation to the plaintiff and the motive in publishing the falsity," is required to recover punitive damages in a defamation action). As discussed above, Plaintiff failed to plead actual malice sufficiently. Thus, Plaintiff's demand for punitive damages should be dismissed.

### CONCLUSION

For the foregoing reasons, this Court should grant TV Novosti's Motion and should dismiss, with prejudice, all of Plaintiff's claims against TV Novosti.

Dated: February 11, 2019
      Washington, DC

Respectfully submitted,

**WHITE & CASE**

 /s/ *Nicole Erb*
Nicole Erb

Matthew S. Leddicotte (*pro hac vice* admission
pending)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:   + 1 202 626 3600
Facsimile:    + 1 202 639 9355
nerb@whitecase.com
mleddicotte@whitecase.com

*Counsel for RT America, a.k.a. ANO TV Novosti*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 11, 2019, I caused an electronic copy of the foregoing Memorandum Of Law In Support Of RT America, a.k.a. ANO TV Novosti's Motion To Dismiss to be served electronically by the Court's Electronic Case Filing (ECF) System.

I also hereby certify that, on February 11, 2019, I caused a copy the foregoing Memorandum of Law in Support of RT America, a.k.a. ANO TV Novosti's Motion To Dismiss to be served by U.S. mail as follows:

Vladimir Lenskiy
108 Perry Street
Unit 2A
New York, New York 10014

Channel One Russia
250 West 57th Street
Suite 429
New York, New York 10107

Dated: February 11, 2019                    /s/ *Nicole Erb*
                                            Nicole Erb