**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEX GOLDFARB, | |
| Plaintiff, | Case No. 1:18-cv-08128 (DAB) |
| v. | |
| CHANNEL ONE RUSSIA | ORAL ARGUMENT REQUESTED |
| and | |
| RT AMERICA, a.k.a. ANO TV-NOVOSTI, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>CHANNEL ONE RUSSIA'S MOTION TO DISMISS</u>**

BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20036

*Counsel for Defendant Channel One Russia*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................1

I. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BASED ON FORUM NON
   CONVENIENS ....................................................................................................................3

   A.   An Adequate Alternative Forum Exists.........................................................................5

   B.   Both Private and Public Interest Factors Favor the Alternative Forum.......................6

       1. Private Interest Factors Favor the Alternative Forum ............................................7

       2. Public Interest Factors Favor the Alternative Forum ...........................................11

II. PLAINTIFF HAS NOT ESTABLISHED PERSONAL JURISDICTION OVER CHANNEL
    ONE ................................................................................................................................15

   A.   Exercising General Jurisdiction Over Channel One Would Violate Due Process.................15

   B.   Specific Jurisdiction Cannot Lie Because Plaintiff's Claims Do Not "Arise From" or Have a
   "Substantial Relationship To" Channel One's Activities in New York ....................16

       1. New York's Long-Arm Statute is Not Satisfied .....................................................16

       2. Specific Jurisdiction Cannot be Exercised Here Consistent With Due Process .................22

CONCLUSION......................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelson v. Harris,*
  973 F. Supp. 2d 467 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017) ............................ 11, 12, 13

*Alfadda v. Fenn,*
  159 F.3d 41 (2d Cir. 1998) ..................................................................................................... 5, 6, 7

*Allstate Life Ins. v. Linter Grp., Ltd.,*
  994 F.2d 996 (2d Cir. 1993) ........................................................................................................ 7

*Ashcroft v Iqbal,*
  556 U.S. 662 (2009) .................................................................................................................. 15

*Base Metal Trading Ltd. v. Russian Aluminum,*
  98 Fed. App'x 47 (2d Cir. 2004) ................................................................................................. 6

*Base Metal Trading SA v. Russian Aluminum,*
  253 F. Supp. 2d 681 (S.D.N.Y. 2003) ......................................................................................... 6

*Beekmans v. J.P. Morgan & Co.,*
  945 F. Supp. 90 (S.D.N.Y. 1996) ........................................................................................... 7, 14

*Best Van Lines, Inc. v. Walker,*
  490 F.3d 239 (2d Cir. 2007) ................................................................................................. 16, 17

*Biro v. Nast,*
  No. 11 Civ. 4442(JPO), 2012 WL 3262770 (S.D.N.Y. Aug. 10, 2012) ............................. 17, 18, 22

*Blanco v. Banco Indus. de Venezuela, S.A.,*
  997 F.2d 974 (2d Cir. 1991) ...................................................................................................... 10

*BNSF Ry. Co. v. Tyrell,*
  137 S. Ct. 1549 (2017) .............................................................................................................. 15

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.,*
  137 S. Ct. 1773 (2017) .............................................................................................................. 23

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) .................................................................................................................. 24

*Calavo Growers of Calif. v. Generali Belgium,*
  632 F.2d 96 (2d Cir. 1980) ........................................................................................................ 11

*Calder v. Jones,*
    465 U.S. 783 (1984) ................................................................................................ 23, 24

*Cantor Fitzgerald, LP v. Peaslee,*
    88 F.3d 152 (2d Cir. 1996) ............................................................................................ 16

*Chanko v. Am. Broadcasting Cos., Inc.,*
    27 N.Y.3d 46 (2016) ........................................................................................................ 8

*Chatwal Hotels & Resorts LLC v. Dollywood Co.,*
    90 F. Supp. 3d 97 (S.D.N.Y. 2015) ............................................................................. 15

*Chigirinskiy v. Panchenkova,*
    No. 14-CV-4410 (JPO), 2015 WL 1454646 (S.D.N.Y. Mar. 31, 2015) ...................... 6

*Chloe v. Queen Bee of Beverly Hills, LLC,*
    616 F.3d 158 (2d Cir. 2010) ......................................................................................... 15

*Curti v. Girocredit Bank,*
    No. 93 Civ. 1782 (PKL), 1994 WL 48835 (S.D.N.Y. Feb. 14, 1994) ........................ 19

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014) ................................................................................................... 2, 15

*Dale Sys. v. Gen.Teleradio,*
    105 F. Supp. 745 (S.D.N.Y. 1952) .............................................................................. 12

*Damigos v. Flanders Compania Naviera, S.A. Panama,*
    716 F. Supp. 104 (S.D.N.Y. 1989) .............................................................................. 10

*Davis v. Costa-Gavras,*
    580 F. Supp. 1082 (S.D.N.Y. 1984) ................................................................. 11, 12, 13

*Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.,*
    7 N.Y.3d 65 (2006) ........................................................................................................ 16

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,*
    722 F.3d 81 (2d Cir. 2013) ........................................................................................... 15

*Dudnikov. v. Chalk & Vermilion Fine Arts, Inc.,*
    514 F.3d 1063 (10th Cir. 2008) ................................................................................... 15

*Dupont v. New Jersey State Police,*
    No. 08 Civ. 10220(DLC), 2009 WL 2486052 (S.D.N.Y. Aug. 14, 2009) .................. 16

*Eades v. Kennedy, PC Law Offices,*
    799 F.3d 161 (2d Cir. 2015) ......................................................................................... 15

*Enigma Software Grp. USA v. Bleeping Computer LLC,*
194 F. Supp. 3d 263 (S.D.N.Y. 2016)........................................................................8

*Esheva v. Siberia Airlines,*
499 F. Supp. 2d 493 (S.D.N.Y. 2007)........................................................................6

*Flores v. S. Peru Copper Corp.,*
No. 00 Civ. 9812, 2002 WL 1587224 (S.D.N.Y. July 16, 2002) ........................10

*Freidzon v. Lukoil,*
No. 14 Civ. 5445 (AT), 2015 WL 13021409 (S.D.N.Y. Mar. 12, 2015), *appeal
dismissed*, 644 Fed. App'x 52 (2d Cir. 2016) ........................................................6

*Friedman v. Self Help Cmty. Servs., Inc.,*
647 Fed. App'x 44 (2d Cir. 2016) ............................................................................8

*Gulf Oil Corp. v. Gilbert,*
330 U.S. 501 (1947)..............................................................................................3, 14

*Hanson v. Denckla,*
357 U.S. 235 (1958)..................................................................................................22

*Henderson v. INS,*
157 F.3d 106 (2d Cir. 1998) .....................................................................................2

*In Touch Concepts, Inc. v. Cellco P'ship,*
949 F. Supp. 2d 447 (S.D.N.Y. 2013)....................................................................19

*Ioannides v. Marika Maritime Corp.,*
928 F. Supp. 374 (S.D.N.Y. 1996) .........................................................................11

*Iragorri v. United Techs. Corp.,*
274 F.3d 65 (2d Cir. 2001) (en banc)...............................................................3, 4, 5

*J. McIntyre Mach., Ltd. v. Nicastro,*
564 U.S. 873 (2011)..................................................................................................24

*Keeton v. Hustler Magazine,*
465 U.S. 770 (1984)..................................................................................................23

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
313 U.S. 487 (1941)..................................................................................................11

*Legros v. Irving,*
327 N.Y.S.2d 371 (1st Dep't 1971).........................................................................18

*Licci ex rel. Licci v. Lebanese Canadian Bank,*
20 N.Y.3d 327 (2012) ..............................................................................................22

*Licci ex rel. Licci v. Lebanese Canadian Bank,*
   732 F.3d 161 (2d Cir. 2013) ..................................................................................................21

*Mason v. Antioch Univ.,*
   No. 15-CV-5841(SJF)(GRB), 2016 WL 2636257 (E.D.N.Y. May 5, 2016) ....................................21

*Montgomery v. Minarcin,*
   693 N.Y.S.2d 293 (3d Dep't 1999) .......................................................................................18

*New York Times Co. v. Sullivan,*
   376 U.S. 254 (1964) ............................................................................................................8

*Norex Petroleum Ltd. v. Access Indus.,*
   416 F.3d 146 (2d Cir. 2005) ...................................................................................................3

*Opert v. Schmid,*
   535 F. Supp. 591 (S.D.N.Y. 1982) ........................................................................................18

*Overseas Media, Inc. v. Skvortsov,*
   441 F. Supp. 2d 610 (S.D.N.Y. 2006), *aff'd* 277 Fed. App'x 92 (2d Cir. 2008)..........................5

*Palmisano v. News Syndicate Co.,*
   130 F. Supp. 17 (S.D.N.Y. 1955) .........................................................................................12

*Penguin Grp. (USA) v. Am. Buddha,*
   609 F.3d 30 (2d Cir. 2010) ..................................................................................................15

*Peters v. Baldwin Union Free Sch. Dist.,*
   320 F.3d 164 (2d Cir. 2003) ..................................................................................................9

*Piper Aircraft Co. v. Reyno,*
   454 U.S. 235 (1981) ....................................................................................................*passim*

*Quackenbush v. Allstate Ins. Co.,*
   517 U.S. 706 (1996) ............................................................................................................3

*Reeves v. Am. Broadcasting Cos.,*
   719 F.2d 602 (2d Cir. 1983) ................................................................................................12

*RIGroup LLC v. Trefonisco Mgmt. Ltd.,*
   949 F. Supp. 2d 546 (S.D.N.Y. 2013), *aff'd* 559 Fed. App'x 58 (2d Cir. 2014)............................6

*Schertenleib v. Traum,*
   589 F.2d 1156 (2d Cir. 1978) ........................................................................................10, 14

*Schultz v. Boy Scouts of Am., Inc.,*
   65 N.Y.2d 198 (1985) ........................................................................................................11

*Scottish Air Int'l v. British Caledonian Grp.*,
   751 F. Supp. 1129, 1135 (S.D.N.Y. 1990), *rev'd on other grounds*, 945 F.2d 53 (2d
   Cir. 1991) ................................................................................................................................7

*Scottish Air Int'l v. British Caledonian Grp.*,
   81 F.3d 1224 (2d Cir. 1996) ..................................................................................... 5, 6, 7, 14

*Shamoun v. Mushlin*,
   No. 12 Civ. 3541(AJN), 2014 WL 12776779 (S.D.N.Y. Mar. 26, 2014) .................................. 17, 22

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ................................................................................................................3

*SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n*,
   18 N.Y.3d 400 (2012) ..................................................................................................... 20, 21

*Sunward Elec., Inc. v. McDonald*,
   362 F.3d 17 (2d Cir. 2004) .....................................................................................................17

*Swinton v. Safir*,
   93 N.Y.2d 758 (1999) ............................................................................................................19

*Tarasevich v. Eastwind Transp. Ltd.*,
   No. 02 Civ. 1806(JSM), 2003 WL 21692759 (S.D.N.Y. July 21, 2003) .........................................6

*Triple Up Ltd. v. Youku Tudou Inc.*,
   No. 17-7033, 2018 WL 4440459 (D.C. Cir. July 17, 2018) ..............................................................15

*Troma Entm't, Inc. v. Centennial Pictures Inc.*,
   729 F.3d 215 (2d Cir. 2013) ...................................................................................................15

*United States v. Lebanese Canadian Bank Sal*,
   No. 11 Civ. 9186(PAE), 2012 WL 3854778 (S.D.N.Y. Sept. 5, 2012) ...........................................15

*Vanity Fair Mills, Inc. v. T. Eaton Co.*,
   234 F.2d 633 (2d Cir. 1956) .....................................................................................................6

*Varnelo v. Eastwind Transp., Ltd.*,
   No. 02Civ.2084(KMW)(AJP), 2003 WL 230741 (S.D.N.Y. Feb. 3, 2003) ............................ 4, 6, 10

*Walden v. Fiore*,
   571 U.S. 277 (2014) ........................................................................................................ 22, 24

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016) ............................................................................................ 23, 24

*Weil v. Am. Univ.*,
   No. 07 Civ. 7748(DAB), 2008 WL 126604 (S.D.N.Y. Jan. 2, 2008) .................................. 17, 18, 22

**Statutes**

28 U.S.C. § 1391(b)(1) ...................................................................................................................1

28 U.S.C. § 1391(b)(2) ...................................................................................................................1

28 U.S.C. § 1391(c)(2) ...................................................................................................................1

28 U.S.C. § 1391(c)(3) ...................................................................................................................2

**Rules**

N.Y. C.P.L.R. § 301 ................................................................................................................2, 15

N.Y. C.P.L.R. § 302 ................................................................................................................2, 16

N.Y. C.P.L.R. § 302(a).......................................................................................................... 16, 17

**Other Authorities**

Restatement (Second) of Conflict of Laws § 150 ....................................................... 11, 12, 13

## INTRODUCTION

Plaintiff's complaint asserts claims of libel *per se* and intentional infliction of emotional distress[1] against Channel One Russia ("Channel One"). Compl. ¶¶ 115-134. These claims derive from four broadcasts, in March and April 2018, of the Channel One television shows "Worlds Apart," "Man and Law," and "Let Them Talk."

Each relevant broadcast was produced, edited and aired from Channel One's Moscow-based studios. Each broadcast targeted only a Russian audience, was conducted only in the Russian language, and was aired by Channel One solely in Russia. The allegedly defamatory utterances emanated from three Russian citizens who appeared as guests on the programs: Walter Litvinenko, Dmitry Kovtun and Andrey Lugovoy. Walter Litvinenko is the father of Alexander Litvinenko, a former officer of the Russian Federation Security Service who died in London of poisoning in November 2006. Compl. ¶¶ 2, 4. Mr. Lugovoy is a current member of the Russian Parliament and a former KGB agent. Mr. Kovtun is a Russian businessman and former KGB agent. Both Messrs. Lugovoy and Kovtun have been accused by British authorities as responsible for the death of Alexander Litvinenko. *See* Esther Addley & Luke Harding, *Key Findings: Who Killed Alexander Litvinenko, How & Why*, The Guardian (Jan. 21, 2016), *available at* https://www.theguardian.com/world/2016/jan/21/key-findings-who-killed-alexander-litvinenko-how-and-why. Based on the on-air statements of these three guests, Plaintiff initiated this action against Channel One in the Southern District of New York, invoking diversity jurisdiction and venue pursuant to 28 U.S.C. §§ 1391(b)(1)-(b)(2). Compl. ¶¶ 14, 17.[2]

---

[1] The intentional infliction of emotional distress claim is, by definition, derivative of Plaintiff's defamation claims. *See* Compl. ¶ 133.

[2] Plaintiff is mistaken that subsection (b)(1) or (b)(2) of the general venue statute is applicable. Channel One is an alien corporation that does not "reside" in New York, as defined by subsection (c)(2) of the general venue statute. 28 U.S.C. § 1391(c)(2) (defining business entities' residence as "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question"). As elaborated *infra*, Channel One is not subject to personal jurisdiction because the acts relevant to Plaintiff's claims did not occur in New York; accordingly, venue cannot lie pursuant to either subsections (b)(1) or (b)(2) of Section 1391. Channel One is not challenging venue, however,

The Court should dismiss this suit under the doctrine of *forum non conveniens* ("FNC"). FNC dismissal is appropriate because Russian courts are adequate to adjudicate Plaintiff's claims, the key witnesses and evidence are located in Russia and in the Russian language (necessitating extensive translation), and beyond the compulsory process of the Court. Moreover, New York's choice-of-law principles indicate that Russian law should be applied, as Russia has a more substantial connection to Plaintiff's claims. Litigating these claims in the Southern District will be inefficient and difficult, imposing undue burdens on this Court and the parties.

Alternatively, the Court should dismiss for want of personal jurisdiction. Channel One is not "at home" in New York, *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), as Plaintiff's complaint concedes. Compl. ¶ 12 ("Channel One Russia . . . is a Joint-Stock Company formed under the laws of the Russian Federation with its principal place of business in Moscow, Russia"). That alone defeats invocation of general jurisdiction under Section 301 of the New York long-arm statute, N.Y. C.P.L.R. § 301. Even if Plaintiff meant to assert *specific* jurisdiction under Section 302 of the New York long-arm statute, N.Y. C.P.L.R. § 302, Plaintiff's complaint fails to allege facts establishing an "articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York" as the statute requires. *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998) (internal quotation marks omitted). Plaintiff's claims have no substantial relationship to Channel One's limited activity in New York and thus, dismissal for want of personal jurisdiction is warranted.

---

because as a non-resident alien, subsection (c)(3) of the general venue statute permits venue to lie in "any judicial district." 28 U.S.C. § 1391(c)(3) ("a defendant not resident in the United States may be sued in any judicial district . . . .").

**ARGUMENT**

**I.     PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BASED ON**
       ***FORUM NON CONVENIENS***

A district court "may dispose of an action by a *forum non conveniens* dismissal, bypassing

questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness,

and judicial economy so warrant." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432

(2007). The equitable doctrine of *forum non conveniens* grants the trial court broad discretion to "resist

imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue

statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947).

FNC dismissal is appropriate where "trial in the plaintiff's chosen forum imposes a heavy

burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons

of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). FNC

analysis involves a range of considerations, "most notably the convenience to the parties and the

practical difficulties that can attend the adjudication of a dispute in a certain locality." *Quackenbush v.*

*Allstate Ins. Co.*, 517 U.S. 706, 723 (1996) (citations omitted). The Second Circuit has identified three

relevant factors: the degree of deference to be accorded to plaintiff's choice of forum; whether there

is an adequate alternative forum available; and a balancing of the private and public interests

implicated by the choice of forums. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72-75 (2d Cir. 2001)

(en banc); *accord Norex Petroleum Ltd. v. Access Indus.*, 416 F.3d 146, 153 (2d Cir. 2005).

Ordinarily, there is a "strong presumption in favor of plaintiff's choice of forum." *Piper*

*Aircraft*, 454 U.S. at 255. But "[w]hen the plaintiff's choice is not its home forum . . . the

presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum

is appropriate is in such cases less reasonable." *Sinochem*, 549 U.S. at 430 (internal quotation marks

omitted). Here, the Southern District is not Plaintiff's home forum, which is New Jersey. Compl.

¶ 11. Plaintiff does not work in New York and, as elaborated *infra*, the Southern District is not a

3

convenient forum for the availability of witnesses or other evidence. It is "highly unlikely that the plaintiff chose this forum for 'the availability of witnesses or evidence to the forum district' . . . [because] the key witnesses . . . all reside in Russia." *Varnelo v. Eastwind Transp., Ltd.*, No. 02Civ.2084(KMW)(AJP), 2003 WL 230741, at *10 (S.D.N.Y. Feb. 3, 2003) (quoting *Iragorri*, 274 F.3d at 72). Moreover, as elaborated *infra*, Channel One is not amenable to suit in the Southern District due to the lack of a causal nexus between Plaintiff's claims and Channel One's limited activity in New York. While a plaintiff's choice of a non-home forum is entitled to deference when "the defendant [is] amenable to suit in the [forum]," *Iragorri*, 274 F.3d at 73, deference should not apply when the defendant is *not* amenable to suit in the forum, as is the case here.

More fundamentally, deference is accorded to the plaintiff's forum choice only if it was "motivated by legitimate reasons, including the plaintiff's convenience and the ability of a U.S. resident plaintiff to obtain jurisdiction over the defendant, and diminishing deference [is warranted if] a plaintiff's forum choice . . . was motivated by tactical advantage." *Id.* If a plaintiff chose the Southern District for forum-shopping reasons, such as "local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity . . . or the inconvenience and expense to the defendant resulting from litigation in [the chosen] forum—the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion by showing that convenience would be better served by litigating in another country's courts." *Id.* at 72.

Here, the Southern District is geographically close to Plaintiff's home and is convenient for Plaintiff in the raw sense of proximity. But this does not mean that it is convenient for Plaintiff (or Channel One, or the Court) to *litigate Plaintiff's claims* in this District. As discussed extensively *infra*,

there is no convenience to litigating Plaintiff's claims in the Southern District[3], and an inference of forum shopping therefore could be made, particularly since Channel One is likely to be an "unpopular" foreign defendant and litigating here will be very inconvenient and expensive. *Id.* at 72.

Even if the Court believes deference to Plaintiff's choice of forum is warranted, however, the presumption in favor of Plaintiff's choice is "not automatically dispositive in determining a *forum non conveniens* motion." *Scottish Air Int'l v. British Caledonian Grp.*, 81 F.3d 1224, 1232 (2d Cir. 1996). Any such presumption is overcome here because the public and private interest factors far outweigh any convenience to Plaintiff. "[W]hen the private and public interest factors clearly point towards trial in the alternative forum," the presumption in favor of the plaintiff's chosen forum is overcome, and the FNC motion should be granted. *Piper Aircraft*, 454 U.S. at 255.

### A.     An Adequate Alternative Forum Exists

An alternative forum is adequate if: (1) the defendants are subject to service of process there; and (2) the forum permits litigation of the subject matter of the dispute. *Alfadda v. Fenn*, 159 F.3d 41, 45 (2d Cir. 1998) (citing *Piper Aircraft*, 454 U.S. at 254 n.22). That the law of a foreign forum differs from U.S. law "'should ordinarily not be given conclusive or even substantial weight' in assessing the adequacy of the forum." *Id.* (quoting *Piper Aircraft*, 454 U.S. at 247).

Here, Channel One is a Russian business entity with its principal place of business in Moscow, Russia. Compl. ¶ 12. As such, it "is clearly amenable to service of process in Russia." *Overseas Media, Inc. v. Skvortsov*, 441 F. Supp. 2d 610, 617 (S.D.N.Y. 2006), *aff'd* 277 Fed. App'x 92 (2d Cir. 2008); *accord* Declaration of Sergey S. Sokolov, filed herewith ("Sokolov Decl.") ¶¶ 11-14. As the

---

[3] As elaborated in the discussion of public interest factors, all relevant evidence is in the Russian language and located in Russia. Plaintiff himself is a native and fluent speaker of Russian, as are all other potential witnesses.

declaration of Russian legal expert Sergey Sokolov shows, Russian law permits litigation of Plaintiff's claims, and Russian courts routinely consider such claims.[4] Sokolov Decl. ¶¶ 15-21.

Moreover, decisions of this District have concluded on numerous occasions that for FNC purposes, Russia is an adequate alternative forum for a wide variety of claims. *See, e.g., Chigirinskiy v. Panchenkova*, No. 14-CV-4410 (JPO), 2015 WL 1454646, at *10 (S.D.N.Y. Mar. 31, 2015); *Freidzon v. Lukoil*, No. 14 Civ. 5445 (AT), 2015 WL 13021409, at *5-6 (S.D.N.Y. Mar. 12, 2015), *appeal dismissed*, 644 Fed. App'x 52 (2d Cir. 2016); *RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 554-55 (S.D.N.Y. 2013), *aff'd* 559 Fed. App'x 58 (2d Cir. 2014); *Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493, 499-500 (S.D.N.Y. 2007); *Tarasevich v. Eastwind Transp. Ltd.*, No. 02 Civ. 1806(JSM), 2003 WL 21692759, at *2-3 (S.D.N.Y. July 21, 2003); *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 698-709 (S.D.N.Y. 2003); *Varnelo*, 2003 WL 230741, at *13-18.

Because Channel One is clearly subject to Russian courts' jurisdiction and there are adequate analogous causes of action available there, the FNC analysis necessitates consideration of the public and private interest factors.

### B.      Both Private and Public Interest Factors Favor the Alternative Forum

The courts weigh public and private interest factors to ascertain whether adjudication would be more convenient in the alternative forum. *Alfadda*, 159 F.3d at 45-46. Public interest factors include: administrative difficulties stemming from court congestion; the undesirability of imposing jury duty upon individuals in a community which lacks a substantial relation to the litigation; the interest in having local controversies decided locally; and avoidance of problems of confusion associated with applying foreign law or multiple sets of law. *See Scottish Air Int'l*, 81 F.3d at 1232; *see also Piper Aircraft*, 454 U.S. at 260. The private interest factors include: ease of access to evidence,

---

[4] "[T]he district court is free to consider submissions by the parties [*e.g.*, declarations] without converting a *forum non conveniens* motion into a motion for summary judgment." *Base Metal Trading Ltd. v. Russian Aluminum*, 98 Fed. App'x 47, 49 (2d Cir. 2004) (citing *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 645 (2d Cir. 1956)).

including documents and witnesses; the cost for witnesses to attend trial; the availability of compulsory process for witnesses and other potential third-party defendants; and other factors that might shorten trial or make it less expensive. *Scottish Air Int'l*, 81 F.3d at 1232; *see also Piper Aircraft*, 454 U.S. at 257.

### 1.    Private Interest Factors Favor the Alternative Forum

The private interest factors turn on the "relative ease of access to sources of proof," such as records and witnesses. *Piper Aircraft*, 454 U.S. at 257. If "many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview," FNC dismissal is appropriate. *Id.* at 258; *accord Scottish Air Int'l*, 81 F.3d at 1233 (location of witnesses abroad, "weigh heavily in favor of dismissal."); *Alfadda*, 159 F.3d at 47-48; *Allstate Life Ins. v. Linter Grp., Ltd.*, 994 F.2d 996, 1001 (2d Cir. 1993); *Beekmans v. J.P. Morgan & Co.*, 945 F. Supp. 90, 94 (S.D.N.Y. 1996) ("The inability to obtain the testimony of these witnesses is a compelling factor favoring dismissal.").

Here, critical documents and witnesses necessary to establish Plaintiff's claims and Channel One's defenses are located in Russia. Indeed, "most every possible witness in the instant action is a [foreign citizen] and beyond the jurisdiction of this court.*" Scottish Air Int'l v. British Caledonian Grp.*, 751 F. Supp. 1129, 1135 (S.D.N.Y. 1990), *rev'd on other grounds*, 945 F.2d 53 (2d Cir. 1991). Equally important, there are no convenient (or likely successful) means by which this Court can secure the production of such important documentary and testimonial evidence. While the Russian Federation has ratified the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, the "United States has not accepted Russia's accession" thereto because Russia has not named a central authority to handle such evidentiary requests. U.S. Dep't of State, Bureau of Consular Affairs, Russian Federation, *available at* https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/RussianFederation.html. According to the U.S. State Department, "Due to the Russian

Federation's unilateral suspension of judicial cooperation in civil and commercial matters, requests for evidence submitted via diplomatic channels in the form of letters rogatory generally are not executed by Russian authorities." *Id.*

Other than Plaintiff's own testimony—which cannot establish his claims—no witnesses of high probative value to the claims and defenses in this case are located in New York. The most important witnesses are the Channel One producers and editors and the show guests who made the allegedly defamatory statements (*i.e.*, Walter Litvinenko, Dmitry Kovtun and Andrey Lugovoy), all of whom are domiciled in Russia. These witnesses are critical to the claims and defenses in this action because Plaintiff must establish a specific *mens rea* for his claims. Plaintiff's intentional infliction claim, for example, requires proof that Channel One acted intentionally or recklessly. *See Friedman v. Self Help Cmty. Servs., Inc.*, 647 Fed. App'x 44, 47 (2d Cir. 2016); *Chanko v. Am. Broadcasting Cos., Inc.*, 27 N.Y.3d 46, 56 (2016). Likewise, Plaintiff's defamation claim requires proof of either "actual malice" or "gross negligence."[5] For Plaintiff to succeed on either of his claims, therefore, the trier of fact must undertake a heavily fact-intensive inquiry into the mindset of numerous employees (or former employees) and on-air guests who were involved in the relevant broadcasts. The state of mind of these individuals—all of whom are Russian domiciliaries—can be gleaned only via discovery abroad, which is difficult, if not impossible here.

Indeed, the only New York-based individual with whom Plaintiff had any contact relating to the relevant television programs is Ms. Zhanna Agalakova, a reporter for Channel One. Compl. ¶ 94. But Plaintiff's complaint admits that this interview "*never appeared on air.*" Compl. ¶ 94. (emphasis

---

[5] As a public figure, plaintiff must prove, by clear and convincing evidence, that specific individuals at Channel One acted with "actual malice." *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964). Even if Plaintiff is not a public figure, the subject matter of the relevant broadcast was a matter of public concern, which would require evidence that Channel One "acted in a grossly irresponsible manner." *Enigma Software Grp. USA v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 287 (S.D.N.Y. 2016).

added). And, as the uncontested Declaration of Dmitry Orlov establishes, Ms. Agalakova has no responsibility to make production decisions on behalf of Channel One. Orlov Decl. ¶ 6, ECF No. 54-1.

In fact, the unused interview with Ms. Agalakova forms no part of Plaintiff's *prima facie* case of defamation under New York law, which consists of: (1) a false statement; (2) published without privilege or authorization to a third party; (3) constituting fault as judged by, at a minimum, a negligence standard; (3) which causes special harm or constitutes defamation per se. *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003). The complaint states that "Channel One rebroadcast the same falsehoods" after Ms. Agalakova conducted this interview. Compl. ¶ 94. But "rebroadcast[ing] the same falsehoods" necessarily implies that Plaintiff's claims are based on the "same falsehoods," and Ms. Agalakova's unused interview will be, at most, a footnote to this litigation. Moreover, the unused interview has little or no probative value on the issue of actual malice, since (as noted) she played no role in the decision not to air the interview. Evidence about Channel One's actual malice (or lack therefore) is accordingly in Russia, where the relevant decision was made, not New York.

Even assuming *arguendo* that discovery of key witnesses and documents could be had in the Southern District, all such evidence will be in the Russian language, necessitating extensive translation by this Court and the parties, and creating concerns about translation accuracy. Plaintiff himself is fluent in the Russian language (it is his native tongue), as are all other witnesses to this case. But few, if any, relevant witnesses or documents will be in English. Exhibit 2 of Plaintiff's complaint previews these complexities, containing Russian-to-English translations of the five Russian-language television programs (four of which aired on Channel One) that form the basis of his claims. Compl. Ex. 2.

"Translation costs can be an important, though not necessarily dispositive, factor in the *forum non conveniens* analysis." *Varnelo*, 2003 WL 230741, at \*24; *see also Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 983 (2d Cir. 1991) ("[T]he documentary evidence is in the Spanish language, as would be trial or deposition testimony, requiring translation to English that would result in significant cost to the parties and delay to the court. This factor militates strongly in favor of Venezuela as a more appropriate forum for this litigation."); *Schertenleib v. Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978) ("Moreover, even if the documents and witnesses could be brought here, there is a serious problem of translation. . . . [M]ost of the pertinent documents relevant to the underlying dispute are in French. The expense of translation, which is potentially substantial, would be totally avoided if the trial is in Geneva."); *Flores v. S. Peru Copper Corp.*, No. 00 Civ. 9812, 2002 WL 1587224, at \*26 (S.D.N.Y. July 16, 2002) ("The principal fact witnesses . . . are in Peru; many of the witnesses . . . speak only Spanish. . . . If this case were presented to a jury in this Court, the translation requirements alone, of testimony and documents, would double the length of the trial."); *Damigos v. Flanders Compania Naviera, S.A. Panama*, 716 F. Supp. 104, 108 (S.D.N.Y. 1989) ("[T]he vast majority of witnesses speak only Greek and will require an interpreter at depositions and at trial if the action remains in this court. The cost of interpreters and translation of documents will, for the most part, be avoided if the trial is conducted in Greece.").

The sobering reality about the difficulty of obtaining relevant evidence and its translation counsels strongly against adjudication of Plaintiff's claims in the Southern District. Judicial economy would be better served by trying these claims in Russia, where the key documents and witnesses are found. FNC dismissal will ensure that both Plaintiff's claims and Channel One's defenses will be fully, fairly and efficiently litigated in an adequate alternative forum.

## 2. Public Interest Factors Favor the Alternative Forum

The public interest factors likewise support FNC dismissal. New York has little interest in this litigation. The Plaintiff is not a resident of New York, but of New Jersey. Compl. ¶ 11. The defendant, Channel One, is a Russian business entity with its principal place of business in Moscow. Compl. ¶ 12. The allegedly defamatory utterances occurred in Russian language broadcasts that aired from Channel One's studios in Moscow. Compl. ¶¶ 82, 83, 116, 128, 132-33. Neither of the two New York-based employees of Channel One was involved in the production, editing or broadcast of the allegedly defamatory utterances, and Plaintiff's complaint does not allege otherwise. In short, the "focal point of this litigation is not New York," *Calvo Growers of Calif. v. Generali Belgium*, 632 F.2d 96, 967 (2d Cir. 1980), but Russia, where the television programs that are the basis for Plaintiff's claims were produced, edited and aired, in the Russian language, targeting a Russian audience.

In fact, under New York's choice-of-law principles—which apply here, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)—this Court will likely be required to apply Russian law if it entertains this action. "While the Court need not definitively resolve the choice of law issue at this point, the likelihood that foreign law will apply weighs against retention of the action." *Ioannides v. Marika Maritime Corp.*, 928 F. Supp. 374, 379 (S.D.N.Y. 1996).

New York's choice-of-law principles dictate that, for tort claims, the "substantive law of the jurisdiction that has the *most significant interest* in 'the specific issue raised in the litigation'" should be applied. *Adelson v. Harris*, 973 F. Supp. 2d 467, 476 (S.D.N.Y. 2013) (emphasis added), *aff'd*, 876 F.3d 413 (2d Cir. 2017) (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 198, 196 (1985)). In "cases where a defamatory statement is published nationally, there is only a 'presumptive' rule that the law of plaintiff's domicile applies, which 'does not hold true . . . if with respect to the particular issue, some other state has a more significant relationship to the issue or the parties.'" *Adelson*, 973 F. Supp. 2d at 477 (quoting *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1091 (S.D.N.Y. 1984)); *accord*

11

Restatement (Second) of Conflict of Laws § 150 cmt. e (1971). Indeed, pursuant to the Restatement, a state other than Plaintiff's domicile may be the state with the "most significant relationship" to the defamation if the "plaintiff is better known in this state than in the state of his domicile, or . . . the place of principal circulation of the matter claimed to be defamatory was in this [other] state." Restatement (Second) of Conflict of Laws § 150 cmt. e (1971).

New York's choice-of-law analysis endorses the use of a multi-factor balancing test to ascertain which state has the most significant interest in a multistate defamation action. *Reeves v. Am. Broadcasting Cos.*, 719 F.2d 602, 605 (2d Cir. 1983) ("[I]t is proper for a federal court in New York to apply the case-by-case balancing test of the *Restatement (Second) of the Conflict of Laws*"); *accord Adelson*, 973 F. Supp. 2d at 477. In *Palmisano v. News Syndicate Co.*, 130 F. Supp. 17, 19 n.2 (S.D.N.Y. 1955), for example, the court identified nine relevant factors: (1) the state of plaintiff's domicile; (2) the state of plaintiff's principal activity to which the alleged defamation relates; (3) the state where plaintiff in fact suffered the greatest harm; (4) the state of the publisher's domicile or incorporation; (5) the state where defendant's main publishing office is located; (6) the state of principal circulation; (7) the place of emanation; (8) the state where the libel was first seen; and (9) the law of the forum. *Accord Costa-Gavras*, 580 F. Supp. at 1091; *Dale Sys. v. Gen.Teleradio*, 105 F. Supp. 745, 747-49 (S.D.N.Y. 1952).

Of these nine factors, only two—the state of Plaintiff's domicile (factor one) and the law of the forum (factor nine)—indicate that domestic law (either New Jersey's or New York's) should govern Plaintiff's claims. The other seven factors all point overseas, with six of the seven pointing toward Russia.

The second factor—the "state of plaintiff's principal activity to which the alleged defamation relates"—points overseas, either to London (where Litvinenko died) or some other foreign location (where activities of an undercover CIA agent inherently occur). The third factor—"the state where

plaintiff in fact suffered the greatest harm"—refers to the state where the plaintiff is "better known." Restatement (Second) of Conflict of Laws § 150 cmt. e (1971). Here, Plaintiff's complaint states that he is presently a "noted human rights activist," Compl. ¶ 11., whose books, public speaking and media appearances has given him "considerable public standing *in Russia* and around the world . . . ." Compl. ¶ 108 (emphasis added). Moreover, "during the 1990s, Dr. Goldfarb spent much of his time in Russia, directing various significant charitable projects funded by George Soros." Compl. ¶ 107. By Plaintiff's own admission, his charitable and human rights-related work in Russia has created public standing there, not in the United States. For choice-of-law-analysis purposes, therefore, Russia has a more significant relationship to Plaintiff's claims because, as the Restatement puts it, Plaintiff is "better known" in Russia than in his own domicile (New Jersey). Restatement (Second) of Conflict of Laws § 150 cmt. e (1971).

The remaining five factors—the state of the publisher's domicile or incorporation, the state where defendant's main publishing office is located; the state of principal circulation, the place of emanation, and the state where the libel was first seen—all unequivocally suggest that Russia has a more "significant interest" in Plaintiff's claims. Indeed, Russia has a "particularly significant interest" in having the laws of Russia applied to Plaintiff's claims because they are of "special concern" to the Russian television industry and the editors/producers/guests of Channel One who were directly involved in the allegedly defamatory broadcasts. *Adelson*, 973 F. Supp. 2d at 478. As the *Costa-Gavras* court put it, defamation claims are of "special concern to the book publishing, news, and film industries, to authors and artists, and to the states of their domiciles and principal places of business." 580 F. Supp. at 1092. The Russian actors against whom these claims are asserted have a "justified expectation that their conduct will be judged by the rules of jurisdictions in which they carry on their activities," *Adelson*, 973 F. Supp. 2d at 478, and accordingly, New York's choice-of-law analysis—with its focus on the jurisdiction with the most "significant" interest or relationship to the

issues—indicates that substantive Russian law will govern Plaintiff's claims. *Cf. Scottish Air Int'l*, 81 F.3d at 1234 (appropriate for trial court to conclude that Great Britain had more substantial interest because litigation involved issue relating to a foreign corporation).

Because New York's choice-of-law principles indicate that Russian law should govern Plaintiff's claims, this Court will face ineluctable complexities if it attempts to adjudicate those claims. As the Supreme Court recognized in *Piper Aircraft*, the FNC doctrine "is designed in part to help courts avoid complex exercises in comparative law." 454 U.S. at 251; *accord Gulf Oil Corp.*, 330 U.S. at 509 (FNC prevents court from having to "untangle problems in conflict of laws, and in law foreign to itself."). The application of Russian law would "necessitate[] the introduction of inevitably conflicting expert evidence on numerous issues of [Russian] law, and it creates the uncertain and time-consuming task of resolving such questions by an American judge unversed in civil law tradition." *Schertenleib*, 589 F.2d at 1165; *accord Piper Aircraft*, 454 U.S. at 260 n.29 (court's lack of familiarity with Scottish law is "clearly appropriate" factor for trial court's consideration of FNC motion). Determining the content of Russian law obviously would be easier at a trial in Russia. *Schertenleib*, 589 F.2d at 1165; *Beekmans*, 945 F. Supp. at 94.

There is no apparent convenience to Plaintiff by adjudicating his claims in the Southern District. The Southern District is not Plaintiff's home forum, nor is it the forum in which Plaintiff's reputation as a human rights activist has suffered the most harm. Moreover, most of the key witnesses and documents are located in Russia, beyond the compulsory process of this Court, and in the Russian language, necessitating extensive translation. Adjudicating the claims and defenses in the Southern District will be neither fair nor efficient. Accordingly, any presumption in favor of Plaintiff's choice of forum is far outweighed by the relevant public and private interests, necessitating FNC dismissal.

## II.      PLAINTIFF HAS NOT ESTABLISHED PERSONAL JURISDICTION OVER CHANNEL ONE

The "plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (citing *Penguin Grp. (USA) v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). To carry it, the plaintiff must make a *prima facie* showing that jurisdiction exists on the face of the complaint. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013). While the Court must take well-pled allegations in the complaint as true, it need not accept as true implausible, bare, conclusory or speculative allegations. *Ashcroft v Iqbal*, 556 U.S. 662, 678-79 (2009); *Triple Up Ltd. v. Youku Tudou Inc.*, No. 17-7033, 2018 WL 4440459, at *2 (D.C. Cir. July 17, 2018); *Dudnikov. v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008); *United States v. Lebanese Canadian Bank Sal*, No. 11 Civ. 9186(PAE), 2012 WL 3854778, at *1 (S.D.N.Y. Sept. 5, 2012).

To determine whether personal jurisdiction exists, a two-step inquiry is required. First, the court must be satisfied that the relevant long-arm statute extends jurisdiction to the non-resident defendant. Second, if the long-arm statute is satisfied, the court must ascertain whether exercising personal jurisdiction comports with due process. *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)).

### A.      Exercising General Jurisdiction Over Channel One Would Violate Due Process

Plaintiff claims that personal jurisdiction exists pursuant to Section 301 of the New York long-arm statute, N.Y. C.P.L.R. § 301, which refers to general jurisdiction. Compl. ¶ 16. *See also Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 103 (S.D.N.Y. 2015) (Section 301 is general jurisdiction). It is clearly unconstitutional to subject Channel One to general jurisdiction in New York, which is neither Channel One's state of incorporation nor its principal place of business. *Bauman*, 571 U.S. at 137; *see also BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1559 (2017) (defendant-

railroad's operation of over 2,000 miles of track and employment of over 2,000 employees in forum insufficient to establish general jurisdiction).

**B.**    **Specific Jurisdiction Cannot Lie Because Plaintiff's Claims Do Not "Arise From" or Have a "Substantial Relationship To" Channel One's Activities in New York**

### 1.    *New York's Long-Arm Statute is Not Satisfied*

Assuming that Plaintiff meant to assert *specific* jurisdiction over Channel One[6] pursuant to Section 302 of the New York long-arm statute, N.Y. C.P.L.R. § 302, he fares no better, as his complaint fails to allege any plausible facts linking his claims to Channel One's activities in New York.

The specific jurisdiction provision of New York's long-arm statute requires that the "cause of action aris[e] from any of the acts enumerated in this section . . . ." N.Y. C.P.L.R. § 302(a). It enumerates various acts falling within the long-arm of New York, the only one of which is relevant here,[7] by Plaintiff's own admission, is subsection (a)(1). Opp'n to RT's Mot. to Dismiss at 5, ECF No. 47 ("NYCPLR Section 302(a)(1), the *relevant provision* of New York's long-arm statute . . . .") (emphasis added). Subsection (a)(1) extends jurisdiction if the non-resident defendant "transacts any business within the state . . . ." N.Y. C.P.L.R. § 302(a)(1). Plaintiff must therefore establish: (1) that Channel One transacted business within New York; and (2) the business so transacted gave rise to Plaintiff's claims. *Best Van Lines*, 490 F.3d at 246 (citing *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)).

---

[6] Indeed, Plaintiff's Opposition to the Motion to Dismiss filed by co-Defendant RT America no longer advocates for general jurisdiction against RT America, focusing instead solely on Section 302 of the New York long-arm statute and hence, specific jurisdiction. *See* Opp'n to RT America's Mot. to Dismiss at 4-9, ECF No. 47.

[7] The other enumerations in New York's long-arm statute are expressly inapplicable to defamation actions. N.Y. C.P.L.R. §§ 302(a)(2)-(3); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244-46 (2d Cir. 2007) (discussing these defamation exclusions). The New York long-arm's express carve-out for defamation actions extends to Plaintiff's intentional infliction claim, as it is based on the same alleged defamatory statement. *Cantor Fitzgerald, LP v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996); *Dupont v. New Jersey State Police*, No. 08 Civ. 10220(DLC), 2009 WL 2486052, at *9 (S.D.N.Y. Aug. 14, 2009) ("The defamation exception . . . applies to allegations that in fact sound in defamation, not just allegations that explicitly bear a defamation label.").

In *Best Van Lines*, the Second Circuit concluded, "New York courts do not interpret 'transact[ing] business' to include mere defamatory utterances sent into the state." 490 F.3d at 248. Rather, "New York courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation. . . . In defamation cases . . . the 'single act' of uttering a defamation, not matter how loudly, is not a 'transact[ion of] business' that may provide the foundation for personal jurisdiction." *Id.* Accordingly, something more than mere distribution of the defamatory utterance into the state must exist before the defendant can be said to have "transacted business" in New York. *Id. Accord Shamoun v. Mushlin*, No. 12 Civ. 3541(AJN), 2014 WL 12776779, at *5 (S.D.N.Y. Mar. 26, 2014); *Biro v. Nast*, No. 11 Civ. 4442(JPO), 2012 WL 3262770, at *9-10 (S.D.N.Y. Aug. 10, 2012).

Here, Channel One maintains a location at 250 West 57th Street, New York, NY, which serves as a storage facility for special equipment and a place for journalists and videographers to work on stories they are developing in the region. *See* Declaration of Larisa A. Nasonova, filed herewith ("Nasonova Decl.") ¶ 3. Channel One employs two individuals who work from this facility as needed: a reporter (Ms. Zhanna Agalakova), and a cameraman (Mr. Boris Leonov). *Id.* ¶ 4.

Assuming *arguendo* that these activities constitute "transacting business" within the meaning of Section 302(a)(1), the New York long-arm statute remains unsatisfied because Plaintiff's claims do not "aris[e] from" any of these New York activities. N.Y. C.P.L.R. § 302(a); *Best Van Lines*, 490 F.3d at 246. A cause of action "aris[es] from" a transaction of business under Section 302(a)(1) when there exists an "articulable nexus" or a "substantial relationship" between the defendant's in-state activities and the cause of action. *Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004); *Weil v. Am. Univ.*, No. 07 Civ. 7748(DAB), 2008 WL 126604, at *5 (S.D.N.Y. Jan. 2, 2008).

To satisfy Section 302(a)(1), a defamation plaintiff must show that the defendant's in-state activities are "*directly related* to the *creation* of the allegedly defamatory work, such as research, writing,

printing, or broadcasting." *Shamoun*, 2014 WL 12776779, at *6 (internal quotation marks omitted;

emphasis added); *accord Biro*, 2012 WL 3262770, at *10-12; *Weil*, 2008 WL 126604, at *6 (New York

courts require that defamation claim must "arise from the defendants' *specific business transactions in

New York*") (emphasis added). The plaintiff asserting a defamation claim must demonstrate that the

"business of publishing and distributing"—*i.e.*, creating—the defamatory content took place in the

forum. *See Weil*, 2008 WL 126604, at *6; *see also Montgomery v. Minarcin*, 693 N.Y.S.2d 293, 296 (3d

Dep't 1999) (302(a)(1) satisfied because the "defamation complained of arises directly from

[defendant's] purposeful and extended transaction of business as a journalist in this state"); *Legros v.

Irving*, 327 N.Y.S.2d 371, 374 (1st Dep't 1971) (302(a)(1) satisfied when "all the significant actions

culminating in the publication of the [alleged defamatory] book occurred in New York").

   Here, Plaintiff's complaint indicates no nexus whatsoever between Channel One's limited

activities in New York and the utterances giving rise to his claims. *See Weil*, 2008 WL 126604, at *6

(Section 302(a)(1) not satisfied when defendant demonstrated that "the business of publishing and

distributing the Magazine . . . all take place outside of New York."); *Opert v. Schmid*, 535 F. Supp. 591,

593 (S.D.N.Y. 1982) (Section 302(a)(1) not satisfied when defamatory utterances arose in interview

published in German automotive magazine). Specifically, Plaintiff's complaint alleges only one

interaction with Channel One employees that occurred in New York—namely, the interview

videotaped by Ms. Agalakova on March 22, 2018. Compl. ¶ 94.[8]

   The interview with Ms. Agalakova was *never broadcast* by Channel One, as Plaintiff admits.

Compl. ¶ 94. ("Nothing from this interview ever appeared on air."). By definition, an unpublished

---

[8] The complaint alleges that the interview with Ms. Agalakova "last[ed] more than an hour." Compl. ¶ 94. But as the Nasonova Declaration shows, the interview lasted only approximately thirty minutes, with approximately fifteen minutes dedicated to Russian foreign and domestic policy in general, and another fourteen minutes dedicated to the Russian link with the death of fourteen individuals in Great Britain. Nasonova Decl. ¶ 7. Only approximately 1 minute, 40 seconds addresses Plaintiff's role in the death of Alexander Litvinenko, *id.*, and it contains Plaintiff's *defense* of the accusations against him. Plaintiff's utterances in self-defense do not give rise to his claims here.

interview cannot give rise to Plaintiff's claims, as both defamation and the derivative intentional infliction claim require *publicized* falsehoods. Compl. ¶ 1 (detailing the alleged falsehoods forming the basis of plaintiff's claims). "A cause of action for defamation does not arise until there is a publication." *Curti v. Girocredit Bank*, No. 93 Civ. 1782 (PKL), 1994 WL 48835, at *3 (S.D.N.Y. Feb. 14, 1994); *accord In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 484 (S.D.N.Y. 2013). In the words of the Court of Appeals of New York, "[i]t is hornbook law that defamation is not actionable before there has been publication—meaning some dissemination—because until then no injury to reputation, giving rise to compensable damages, has actually occurred." *Swinton v. Safir*, 93 N.Y.2d 758, 765 (1999). Accordingly, the truth or falsehood of the statements on which Plaintiff's claims are based does not turn in any way on Plaintiff's interview with Ms. Agalakova. The unused interview cannot reasonably be said to "give rise to" Plaintiff's claims.

The other contacts Plaintiff had with Channel One employees did not take place in the forum (New York). A second interview with Plaintiff—a telephone interview conducted by Channel One's Moscow-based producer, Natalia—did not take place in New York, and Plaintiff's complaint does not assert otherwise. Compl. ¶ 95. Instead, as a telephone interview, it presumably was received by Plaintiff in New Jersey. Compl. ¶ 11 (Plaintiff is citizen and resident of New Jersey).

Even assuming *arguendo* that Plaintiff received the telephone call while physically located in New York, there is no averment in the complaint that the Channel One producer who conducted the interview (Natalia) was *aware* that Plaintiff was in New York during the pendency of the call. Moreover, in this interview, Plaintiff was asked about the subject-matter of the show (the poisoning of Sergei Skripal)—"What do you think about the poisoning of Skripal"?—to which Plaintiff replied, "I think Russian special services poisoned Skripal" and explained why he believed that. Compl. Ex. 2 at 37. The show's host then asked Plaintiff more pointedly, "Litvinenko's father has accused you of killing his son. How do you respond to him?" Plaintiff responded that Walter Litvinenko "is no

father to him, he abandoned the boy when he was two years old" and that he "betrayed his son for

an apartment in Moscow." *Id.* Plaintiff thus conveyed to Channel One's audience his belief that his

primary accuser, Walter Litvinenko, was a liar who was motivated by money.

Plaintiff does not allege that this telephone interview is defamatory—nor could he, since the

content of the interview comes from Plaintiff's own mouth and contained Plaintiff's *defense* of the

alleged defamatory accusations against him. As with the unused Agalakova interview, this telephone

interview does not have a direct or substantial nexus with Plaintiff's claims. While this telephone

interview—unlike the Agalakova interview—was actually broadcast, its publication was *positive* for

Plaintiff, not negative. It contained no *falsehoods* (unless Plaintiff himself uttered them) and caused no

injury to Plaintiff. Indeed, by broadcasting this telephone interview, Channel One gave Plaintiff an

opportunity to defend himself and his reputation. The telephone interview, therefore, bears no

direct or substantial causal relationship to Plaintiff's claims.

Even assuming *arguendo* that these interviews bear some causal relationship to Plaintiff's

claims (and further, that the telephone interview occurred in New York), courts must "consider[]

whether the relationship between the activities and the allegedly offending statement is *too diluted*."

*SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 404 (2012) (emphasis added).

"[W]here the contacts are more circumscribed and not *directly related* to the defamatory statement,

defendants have prevailed." *Id.* (emphasis added). In that case involving "three phone calls and two

short visits—totaling less than three hours" by the defendant, the Court of Appeals of New York

concluded that defendant had not satisfied Section 302(a)(1) of the New York long-arm. *Id.* at 405.

The court thought it "of importance that the [alleged defamatory] statements were not written in or

directed to New York." *Id.*

Here, in addition to the unused Agalakova interview (which was conducted in New York),

and the broadcast telephone interview (which was presumably received by Plaintiff in New Jersey),

Plaintiff's complaint alleges three additional pre-production inquiry calls from Channel One producers based in Moscow—on March 14, 2018 (Compl. ¶ 91), March 21, 2018 (Compl. ¶ 92), and March 23 (Compl. ¶ 93).[9] Again, Plaintiff's complaint does not allege that these three phone calls were received in New York or, if they were so received, that Channel One's producers *knew* that Plaintiff (a New Jersey resident) received those calls in New York. Moreover, none of these pre-production inquiry calls resulted in any published broadcasts and therefore lack a substantial relationship, or causal nexus to, Plaintiff's claims, which arise from utterances made by Russian guests during broadcasts produced, edited and aired by Channel One in Russia. *See SPCA of Upstate N.Y.*, 18 N.Y.3d at 404-05.

Indeed, none of the actions alleged in Plaintiff's complaint—even if they constitute "transacting business" in New York—can be fairly characterized as giving rise to Plaintiff's defamation claims because they have no relationship to the *prima facie* elements of the causes of action pleaded. *Licci ex rel. Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168-69 (2d Cir. 2013) (Section 302(a)(1) requires that at least one *prima facie* element arise from defendant's New York activity); *accord Mason v. Antioch Univ.*, No. 15-CV-5841(SJF)(GRB), 2016 WL 2636257, at *8 n.5 (E.D.N.Y. May 5, 2016). As the Court of Appeals of New York put it, Section 302(a)(1) "does not require that every element of the cause of action pleaded must be related to the New York contacts;

---

[9] These three phone-call related interactions were with a Channel One producer, "Lara," whom the complaint alleges called Plaintiff as part of production exploration. Compl. ¶¶ 91-93. "Lara" is Larisa Nazarova, a Moscow-based Channel One worker who worked under a civil law contract. Nasonova Decl. ¶ 8. Indeed, Plaintiff's complaint does not allege that Ms. Nazarova is based in New York (nor could it). All production of Channel One broadcasts takes place in Russia. Orlov Decl. ¶ 6, ECF No. 54-1 ("All final editorial and production decisions for programs aired on Channel One Russia are made by senior-level employees located in Moscow, Russia."); Nasonova Decl. ¶ 6. Moreover, by Plaintiff's own admission, none of the pre-production inquiries by Lara resulted in any interviews with Plaintiff and thus, have an even more attenuated relationship to Plaintiff's defamation claim than the interview actually conducted by Ms. Agalakova.

The other individual mentioned in Plaintiff's complaint, Ms. Anastasia Orlyanskaya, is not "Channel One's New York based associate," as Plaintiff claims. Compl. ¶ 93. Ms. Orlyanskaya is a freelancer in the U.S., not a Channel One employee. Nasonova Decl. ¶ 9. In any event, the limited, one-time contact between Plaintiff and Ms. Orlyanskaya—to "arrange a camera to film Dr. Goldfarb while he spoke on Skype"—never even happened, as it was cancelled. Compl. ¶ 93. As a matter of logic, Plaintiff's claims do not directly arise out, of or have a substantial relationship to, arranging and canceling a camera for a Skype-based interview that was also cancelled.

rather, where at least *one element* arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction." *Licci ex rel. Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 341 (2012) (emphasis added).

Here, no such relationship between Channel One's New York activities and Plaintiff's claims exists. The three pre-production phone calls are not alleged to have occurred *in New York* and, in any event, were never published. The broadcast telephone interview likewise is not alleged to have *occurred in New York* and, in any event, is irrelevant to Plaintiff's claims because it contained no false statements about Plaintiff and caused no injury to Plaintiff. The one activity conducted by Channel One in New York—the unused Agalakova interview—is of no avail, as it contained no false statement, was not published, and caused Plaintiff no harm. As discussed above, it has no probative value on actual malice because Ms. Agalakova played no role in Channel One's decision not to air the interview. As the uncontested declaration of Dmitry Orlov states, "All final editorial and production decision for programs aired on Channel One Russia are made by senior-level employees based in Moscow, Russia." Orlov Decl. ¶ 6, ECF No. 54-1.

Because Plaintiff has not shown that Channel One's limited activities in New York played a direct causal role in giving rise to Plaintiff's claims, the New York long-arm statute is not satisfied. *Shamoun*, 2014 WL 12776779, at *6; *Biro*, 2012 WL 3262770, at *10-12; *Weil*, 2008 WL 126604, at *6.

### 2.     *Specific Jurisdiction Cannot be Exercised Here Consistent With Due Process*

Even assuming *arguendo* that the New York long-arm statute is satisfied, exercising specific personal jurisdiction over Channel One would violate due process. For specific jurisdiction to be consistent with due process, the defendant must engage in "purposeful" activity, *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), by which the defendant targets the "forum state itself," not merely "persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). This purposeful activity,

moreover, must give rise to Plaintiff's claims. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017); *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016).

The Supreme Court has twice addressed the constitutional contours of specific jurisdiction in defamation cases. In *Keeton v. Hustler Magazine*, 465 U.S. 770 (1984), the Court concluded that due process permitted a federal district court in New Hampshire to exercise specific jurisdiction over a magazine publisher based upon a defamatory utterance in its magazine. The Court concluded that the defendant-magazine had "continuously and deliberately exploited the New Hampshire market" by a monthly circulation of 10,000-15,000 copies there. *Id.* at 771, 781. The publisher's purposeful solicitation of sales of its magazine in the forum state thus caused harm to the plaintiff's reputation in New Hampshire. *Id.* at 776.

In the second case, *Calder v. Jones*, 465 U.S. 783 (1984), the Court upheld specific personal jurisdiction against the *National Enquirer*, its reporter and editor in California, who were responsible for printing a libelous story about the plaintiff, a well-known actress residing in California. *Id.* at 786. The magazine had its largest circulation in California, consisting of over 600,000 copies sold there per week. *Id.* at 784-85. The *Calder* Court reasoned that because California was the "focal point of both the story and of the harm suffered," jurisdiction was proper over the defendants because they "expressly aimed" their tortious actions at California. *Id.* at 789. The defendants "knew that the brunt of that injury would be felt by [plaintiff] in the State in which she lives and works and in which the *National Enquirer* has its largest circulation." *Id.* at 789-90.

Here, by contrast, Plaintiff has proffered no evidence that Channel One knew that its Russian-language broadcasts—broadcasted by it solely in Russia—would cause harm to Plaintiff in New York, which is neither Plaintiff's residence nor place of business. Plaintiff has proffered no facts from which it may be plausibly inferred that Channel One "expressly aimed" or targeted its Russian-language broadcasts at New York, or indeed, anywhere other than Russia. Unlike *Keeton* and

*Calder*, Channel One does not purposefully inject its broadcasting content into New York and indeed, Plaintiff does not contend otherwise.[10] Moreover, the broadcasts themselves did not target New York, and indeed, did not mention New York at all. Unlike in *Calder*, Plaintiff here is not a resident of the forum, does not work in the forum, and is not associated with an industry centered in the forum. In short, there are no plausible facts upon which it can be inferred that Channel One has purposefully engaged in activities that target "the forum state itself." *Walden*, 571 U.S. at 284.

Even if it did, however, Plaintiff cannot establish specific jurisdiction because his defamation and intentional infliction claims lack a discernible nexus with any of Channel One's activities in New York. As discussed extensively above, there is no logical, causal linkage between Channel One's limited New York activities and the defamatory utterances upon which Plaintiff's claims are based and thus, specific jurisdiction cannot lie. *See Walden*, 571 U.S. at 284; *Waldman*, 835 F.3d at 340.

## CONCLUSION

For the foregoing reasons, this Court should grant Channel One's motion and dismiss, with prejudice, all of Plaintiff's claims against it.

Dated:  April 12, 2019
        Washington, D.C.

Respectfully Submitted,

/s/ *David B. Rivkin, Jr.*
David B. Rivkin, Jr.
Elizabeth Price Foley
Kendall E. Wangsgard
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
T: 202.861.1500
F: 202.861.1783
drivkin@bakerlaw.com

*Counsel for Defendant Channel One Russia*

---

[10] It is axiomatic that third parties' broadcasts of Channel One shows have no relevance to the jurisdictional inquiry regarding Channel One. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011). Personal jurisdiction must be established based on the *defendant's own contacts* with the forum, not those of third parties. *See Walden*, 571 U.S. at 286 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts with the other party's home forum, we believe the answer clearly is that it cannot.").