UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\- X
\-\-\-

ALEX GOLDFARB,

                                Plaintiff,

                -against-

CHANNEL ONE RUSSIA and RT AMERICA,

                        Defendants.

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\- X
\-\-\-

Civil Action No. 1:18 -CV-08128 (DAB)

**AFFIDAVIT OF PLAINTIFF ALEX GOLDFARB IN OPPOSITION TO MOTION TO DISMISS OF CHANNEL ONE RUSSIA**

STATE OF NEW JERSEY  :
                        : ss
COUNTY OF BERGEN     :

        ALEX GOLDFARB, being duly sworn, deposes and says:

        1.      I am the plaintiff in this action and have personal knowledge of the facts set forth in this affidavit, except for those stated upon information and belief. I submit this affidavit in opposition to the motion of defendant Channel One Russia ("Channel One") to dismiss the Complaint on the grounds of forum non conveniens and lack of personal jurisdiction.

<u>RUSSIA IS NOT AN ADEQUATE FORUM FOR MY CLAIMS</u>

        2.      With respect to forum non conveniens, I respectfully submit that Russia would not be an adequate forum for me to litigate my defamation claims against Channel

1

One. Upon information and belief, entities owned by or affiliated with the Russian government are the majority owner of Channel One.[1]

3.      As a threshold matter it is unlikely that I would be able to obtain a Russian visa to attend hearings in Moscow. In June 2013, I accepted an invitation to participate in a program on TV Russia-1 (not a defendant in this action) in their studios in Moscow. Several days later, however, the producer of the program informed me that the Russian Ministry of Foreign Affairs had denied "in a categorical form" the studio's request to issue me a visa. She added that the denial of my visa was "a high- level decision". I believe that the prohibition on my travel to Russia is still in effect.

4.      Even if I am allowed to enter Russia, there is a considerable risk that I would be arrested in Russia as a suspect in the murder of Alexander Litvinenko. Based on official statements of the Russian Prosecutor General Office ("PGO"), Russian investigators give credence to the theory, as described in paragraphs 40 – 42 of the Complaint, that Mr. Berezovsky and I killed Mr. Litvinenko.

5.      The following are some relevant PGO statements:

•      On December 7, 2006, the PGO stated that it "has opened a criminal case in connection with the murder of Russian citizen Alexander Litvinenko and the attempted murder of Russian citizen Dmitry Kovtun"[2].

_____

[1] Based on internet searches, 51% of Channel One is owned by three Russian government entities: Federal Agency for State Property (38.9%), TASS (9.1%) and Ostankino Technical Group (3.0%). The remaining 49% is owned by VTB (20%), of which the Russian government is the majority owner, and National Media Group (29%), which is controlled by Bank Rossiya and Yuri Kovalchuk. While announcing sanctions against Russia, the U.S. Treasury Dept. described Kovalchuk as "the largest single shareholder of Bank Rossiya and also the personal banker for senior officials of the Russian Federation, including Putin." (see:https://www.treasury.gov/press-center/press-releases/pages/j123331.aspx).

[2] https://www.reuters.com/article/us-britain-poisoning/russia-launches-own-murder-probe-as-ex-spy-is-buried-idUKL0682176120061207

- On July 23, 2007, Deputy Prosecutor General Alexander Zvyagintsev said that in the Russian investigation, "We consider all versions, including the possibility that somebody from Litvinenko's inner circle has a connection with the crime"[3].

- On August 4, 2010, Mr. Zvyagintsev wrote to then British Home Secretary Theresa May, *inter alia* characterizing me as an "accomplice" of Mr. Berezovsky in Mr. Litvinenko's murder, and citing the findings of the PGO Investigation that I was a co-conspirator in the alleged 2003 plot to defraud the UK authorities into granting asylum to Mr. Berezovsky (Exhibit 1). Mr. Zvyagintsev's letter was in response to the judicial findings to the contrary in *Berezovsky vs Terluk* on March 10, 2010. (Complaint ¶ 41)

- On April 12, 2018, the PGO issued a statement[4] repeating the same allegations against me - notwithstanding the fact that by that date they had been debunked both in *Berezovsky vs Terluk* and in the Litvinenko Public Inquiry.

- On April 18, 2018, Prosecutor General Yuri Chaika told the Russian Parliament that Berezovsky (who died in London in 2013) was in fact killed to keep him from leaving Britain with 'secrets' about Litvinenko's murder[5].

6.    In addition to the possibility of arrest on trumped up charges of murder, as set forth in the affidavit of Yuri Shvets, a former KGB agent who has been recognized as an expert by United States courts in numerous asylum cases, I have a well-grounded fear that Russian security services may target me for an extrajudicial action. The UK Inquiry established beyond a reasonable doubt that agents of the Russian Federal Security Service ("FSB") killed my friend Alexander Litvinenko. Recently, there were reports of a poisoning attempt on Piotr Verzilov, an activist of the rock group Pussy Riot.[6] If I succeed in the

---

[3] https://www.rt.com/news/lugovoy-case-unsubstantial-russian-prosecution/

[4] https://www.rusemb.org.uk/fnapr/6479

[5] https://meduza.io/en/news/2018/04/18/russia-s-attorney-general-says-boris-berezovsky-was-killed-to-keep-him-from-leaving-britain-with-secrets-about-litvinenko-s-murder

[6] https://www.cnn.com2018/09/18/europe/pussy-riot-pyotr-verislov-poisoned-int/index.html

present action the FSB's role in the Litvinenko murder will be effectively reaffirmed. As a result, I am concerned that the FSB may target me for some harmful action, such as poisoning or planting drugs or classified material on me and then arresting me on narcotics or espionage charges. Planting false evidence is a classic FSB "dirty trick", which was recently used against the human rights activist Oyub Titiyev[7] and the US citizen Paul Whelan[8]. The United States Federal Bureau of Investigation has informed me that I may be a target for Russian action in this country (Cpt. 111); the danger to me would obviously be even greater in Russia.

7.      The FSB's hostility towards me is evident from the fact that I was denied entry to Russia (see ¶ 3 above). As described in the complaint (¶ 106), Andrey Lugovoy, the FSB agent who murdered Mr. Litvinenko and who is presently a member of the Duma Security Committee, while (falsely) asserting that I was blacklisted from entering Russia in the 1990ies, stated: "Such lists are not compiled arbitrarily, meaning that he was a threat to the security of Russian Federation". Even if the ban is lifted to allow me to attend hearings in Russia, the danger of FSB action against me as an alleged "threat to the security of the Russian Fedreration" would remain.

8.      Another compelling reason why Russia is not an adequate forum for my defamation claims against Channel One, which is controlled by the Russian state is that I will not be able to receive a fair trial in Russia. There is overwhelming evidence that Russian courts are subservient to Russian government in cases of political significance such as this. Excerpts from a few of the many reports from international observers documenting the control of Russian courts by political authorities include the following:

---

[7] https://www.reuters.com/article/us-russia-chechnya-rights/court-in-chechnya-sentences-rights-activist-to-four-years-in-penal-colony-idUSKCN1QZ21K

[8] https://www.washingtonpost.com/world/2019/01/22/foreigners-russia-documents-can-be-dangerous/?utm_term=.a2415b3c1eb1

*"The Special Rapporteur is concerned about the many reported attempts by State authorities and private actors alike to exercise control over the judicial system — interference often referred to as "telephone justice" ... Many interlocutors said that interference with the judiciary from the executive or other powerful stakeholders is still entrenched in the system ... Despite its prohibition in the law, the interference is reportedly usual and constitutes a major factor in the forces that undermine the independence and impartiality of the judicial system. The worrisome perception that judges already know what they are going to decide before proceedings are completed is reinforced by the frequent lack of justification for verdicts rendered"* - Report of the United Nations Special Rapporteur on the independence of judges and lawyers on her mission to the Russian Federation (2014)[9].

*"...whereas several trials and judicial proceedings over the last few years, such as the Magnitsky, Khodorkovsky and Politkovskaya cases, have cast doubt on the independence and impartiality of the judicial institutions of the Russian Federation; whereas such high-profile cases as that of Alexey Navalny are merely the most well-known cases outside Russia of what amounts to a systematic failure of the Russian state to uphold the rule of law and to deliver justice to its citizens; whereas the current court decision represents a politically motivated attempt to punish Alexey Navalny as one of the most prominent opponents of the government outside Russia of what amounts to a systematic failure of the Russian state to uphold the rule of law and to deliver justice to its citizens"* - European Parliament resolution on Russia, in particular the case of Alexei Navalny, ¶ H (2015)[10]

*"The current procedures and criteria to appoint, dismiss and sanction judges still provide insufficient guarantees for objective and fair proceedings and judges remain exposed to pressure from powerful political and economic interests."* - Council of Europe Commissioner for Human Rights (2016)[11]

*"The law provides for an independent judiciary, but judges remained subject to influence from the executive branch, the armed forces, and other security forces, particularly in high-profile or politically sensitive cases, as well as to corruption. The outcomes of some trials appeared predetermined,"* - U.S. Department of State. Russia 2018 Human Rights Report[12]

---

[9] https://www.ohchr.org/EN/HRBodies/HRC/.../A_HRC_26_32_Add.1_ENG.DOC

[10] http://www.europarl.europa.eu/doceo/document/RC-8-2015-0046_EN.html?redirect

[11] https://www.coe.int/en/web/commissioner/-/as-long-as-the-judicial-system-of-the-russian-federation-does-not-become-more-independent-doubts-about-its-effectiveness-remain

[12] http://www.state.gov/j/drl/rls/hrrpt/humanrightsreport/index.htm?year=2018&dlid=289175

*"The judiciary lacks independence from the executive branch, and career advancement is effectively tied to compliance with Kremlin preferences."* – Freedom House Russia Report 2019[13]

9.      The lack of judicial independence in Russia is also evidenced in decisions of the European Court of Human Rights ("ECHR"). For example, in 2016 ECHR ruled that Russia violated opposition leader Aleksei Navalny's right to a fair trial.[14] In 2018, ECHR found that members of activist group Pussy Riot were denied a fair trial[15]. ECHR statistics show that   most of the judgments against Russia concern the right to a fair trial under Article 6 of the European Convention of Human Rights. [16]

10.     The allegations in my complaint implicate political matters in which the Russian government holds a keen interest. Western states have officially accused the Russian government – and in effect President Vladamir Putin -- of committing two political assassinations on British soil using weapons of mass destruction: the radioactive poisoning of Alexander Litvinenko in London in 2006 and the nerve agent attack on Sergei Skripal in Salisbury in 2018, which killed an innocent bystander. In the Litvinenko case these allegations are backed by judicial findings made after extensive investigation. The stated purpose of the broadcasts defaming me was to discredit these allegations against the Russian government and to advance a fictitious narrative that both murders were "provocations" committed by enemies of Russia—including me as an alleged member of the Central Intelligence Agency. The narrative advanced by Channel One in its defamatory broadcasts echoes official statements of the Russian Government. (Cpt. ¶ 80).

---

[13] https://freedomhouse.org/report/freedom-world/2019/russia

[14] https://www.rferl.org/a/russia-european-court-navalny-rights-violated/27569325.html

[15] https://www.themoscowtimes.com/2018/07/17 european-court-awards-damages-pussy-riot-2012-church-performance-a62272

[16] https://www.echr.coe.int/Documents/Stats_violation_1959_2015_ENG.pdf

11.     The political significance of the Litvinenko case is illustrated by the fact that it will be explored in two upcoming productions in London: a play "A Very Expensive Poison" in the Old Vic Theater and an opera "The Life and Death of Alexander Litvinenko" at the Grange Park Opera festival.  In both productions, Andrey Lugovoy will be depicted as the assassin sent by the Russian state.  The alternative defamatory narrative-that I am the murderer-has been promoted by Channel One in an attempt to benefit Putin's regime.  The political stakes for the Russian government in the outcome of this case are manifest.

12.     Because the Russian courts are not independent in politically significant cases such as this, and the political stakes involved for the Russian government in this litigation, it is virtually certain that I would not get a fair trial in Russia.

## PERSONAL JURISDICTION

13.     Channel One asserts that the Complaint failed to allege that Channel One "expressly aimed" or targeted its Russian-language broadcasts at New York." Paragraph 15 of the Complaint however clearly alleges that Channel One's "Russian-language programs are streamed to tens of thousands of paid cable, satellite and IPTV subscribers in New York through major distributors, including Spectrum, DirecTV, Optimum and Xfinity." The New York area is targeted by Channel One because of the substantial number of Russian language speakers living there.

14.     Channel One targets its broadcasts at New York (and elsewhere outside Russia) using as its agent a Channel One subsidiary called Channel One Russia Worldwide ("CORW"). According to a Russian business registry[17], Channel One owns 51% of

---

[17] https://sbis.ru/contragents/7717029599/771701001

CORW. Both companies are located in the same building in Moscow. Alexei Efimov is the CEO of CORW, and is listed among Channel One's top executives on its web site[18].

15.     CORW is a plaintiff in two lawsuits pending in the Southern District of New York: *CORW vs Infomir* (16-cv-01318) and *CORW vs Russian TV* (18-cv-02318). The two respective complaints are attached hereto as Exhibits 2 and 3. Both complaints (in ¶ 26 and ¶ 7, respectively) explicitly state that CORW "is authorized by its parent corporation [i.e., Channel One] to represent its interests relating to unauthorized distribution of the Russian version of Channel One Russia".

16.     On behalf of Channel One, CORW has entered into agreements to distribute Channel One's programs with various distributors of video content active in the New York market, including New York based companies such as Time Warner Cable, Altice, Directv, and Optimum.[19]

17.     The viewers of Channel One in New York are paid subscribers to the distribution services listed above and have specifically sought access to Russian language programming. Channel One's programming is encrypted so that only authorized recipients may access it. End-users receive equipment (top-box, decoder, satellite dish) and/or proprietary software allowing them to watch the broadcasts on consumer electronics devices. The delivery of a program to each consumer constitutes an end-user specific sale, which generates revenue for Channel One. These purposeful activities rely on infrastructure in New York, such as cable networks, and service and sales organizations.

---

[18] https://www.1tv.ru/about/team

[19] ¶ 4 of *CORW vs Russian TV* Complaint (Exhibit AG-3) in and a portion of a CORW marketing presentation (Exhibit AG-4)

18.     The two actions brought by CORW in the Southern District of New York are against New York based defendants who allegedly intercept Channel One programs and sell access to end users bypassing the broadcaster's encryption.

19.     In addition to the activities of its subsidiary CORW selling its programming in the New York market, Channel One has an extensive sales and marketing operation in New York. As noted in paragraph 15 of the Complaint, Channel One maintains an exclusive sales agent in New York, "Atmosphere - Channel One Russia," which generates substantial advertising sales in New York area. Atmosphere's page on Facebook[20] evidence Channel One's marketing activity in New York.

- Exhibit 5. An invitation to the Gala Dinner for Partners in Lotte New York Palace Hotel on November 21, 2017.
- Exhibit 6. A photograph from the same dinner in NY showing Dmitry Borisov, the host of the defaming programs "Let Them Say".
- Exhibit 7. A photograph from the same dinner in NY showing Natalia Nikonova (on the left), Deputy Director General of Channel One Russia.
- Exhibit 8. A price list for Channel One advertising packages in the New York market.

20.     The facts set forth above establish Channel One's targeted broadcasting, publishing and distribution of its programming and selling advertising in New York. In addition, actions by Channel One in New York were part of the creation of the defamatory programs equivalent to *research and writing* in the creation of a printed media content. These steps contributed to the defamatory programs by analogy to investigative work by a newspaper reporter which was not included in the final version of an article. There were two such steps in this case:

---

[20] https://www.facebook.com/atmosphere.ch1

- Arrangements for a preproduction interview (Complaint ¶ 91-93), which consisted of three telephone calls and exchange of emails from/to "Lara" (now identified as Larisa Nazarova), the Moscow based worker of Channel One, and three telephone conversations with New York based free-lancer Anastasiya Orlyanskaya, who acted for and under Channel One's direction. While I cannot recall which of the six phone calls I took in New York, New Jersey or in transit over George Washington Bridge, Ms. Orlyanskaya was definitely calling from New York. Moreover, the planned interview was to take place in Manhattan at the residence of Mr. Vladimir Kozlovsky at East 33 Street. To this end, Ms Orlyanskaya made arrangements for a specific time with Mr. Kozlovsky and also hired a free- lance New York based cameraman Alexander Babaev to film the interview. She later cancelled those arrangements.[21]

- The Agalakova interview (Complaint ¶ 94), which took place in Channel One's bureau in Manhattan.[22]

.......

_____
Alex Goldfarb

Sworn to before me this 9 th
day of May, 2019

_____
Notary Public

REHANA R MOHAMED
Notary Public - State of New Jersey
My Commission Expires Apr 19, 2023

_____

[21] I acknowledge that I was in New Jersey when I was interviewed by Channel One's Moscow based producer Natalia.

[22] Defendant produced a statement of Ms. Nassonova that the interview lasted about 30 minutes, whereas my recollection was that it took more than an hour. The discrepancy may be due to editing in the New York bureau before filing the material with Moscow.