UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                    :

ALEX GOLDFARB,                                      :        Index No. 1:18-cv-08128(DAB)

                         Plaintiff,             :

               v.                                 :

CHANNEL ONE RUSSIA AND RT AMERICA,                  :

                    Defendants.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT CHANNEL ONE RUSSIA'S MOTION TO DISMISS


ROTTENBERG LIPMAN RICH, P.C.
230 Park Avenue, 18th Floor
New York, New York 10169
T: (212) 661-3080
F: (646) 203-0281
Attorneys for Plaintiff Alex Goldfarb

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.   *FORUM NON CONVENIENS* DISMISSAL IS NOT WARRANTED ............................. 1

    A.  The Three-Step Process ............................................................................................. 1

    B.  Step One: Goldfarb's Choice is
       Entitled to the Highest Degree of Deference ............................................................ 2

    C.  Step Two: Russia is not an Adequate Forum For This Plaintiff's Claims ................. 2

    D.  Step Three: The Balance of Interests Favor Goldfarb ............................................... 5

       1.  Goldfarb Presumptively Prevails in Weighing the Interests ............................ 5

       2.  The Public Interests Favor Goldfarb's Choice of New York .......................... 6

          a.  Having Local Disputes Settled Locally ............................................... 6

          b.  American Libel Law, Not Russian Law, Will Apply ........................... 6

       3.  The Dispute Impacts the New York Community .............................................. 7

       4.  The Private Interests Favor Goldfarb's Choice of New York ......................... 9

          a.  The Applicable Private Interests ......................................................... 9

          b.  Goldfarb's Convenience is Entitled to Deference ............................... 9

          c.  Likely Witnesses Reside in the United States, Russia, and England .... 12

          d.  Other Pragmatic Considerations Favor Goldfarb's Choice of New York ............ 12

       5.  Channel One Has Not Met Its Burden .......................................................... 14

II.  PERSONAL JURISDICTION EXISTS IN NEW YORK ................................................ 15

    A.  Jurisdiction Exists Under § 302(a)(1) ..................................................................... 15

       1.  The "Something More" Standard ................................................................... 15

2.      Channel One And Its Subsidiary And Agent Channel One Russia Worldwide
        Repeatedly and Intentionally Projected Defamatory Statements Into New York
        through Paid Subscription Programming................................................................15

3.      Channel One's Preparation for its Broadcasts Included Journalistic Activity
        Conducted in New York, Including its New York Office ....................................19

        a.   Jurisdiction is Proper Under the Due Process Clause ............................................22

        b.   Jurisdiction Discovery Would Be Required Prior to Dismissal............................24

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Alfadda v. Fenn*,
159 F.3d 41 (2nd Cir. 1998) ........................................................................... 6, 7, 9, 12

*Allstate Life Ins. Co. v. Linter Group Ltd.*,
994 F.2d 996 (2nd Cir.1993) ................................................................................... 9

*American Dredging Co. v. Miller*,
510 U.S. 443 (1994) ............................................................................................... 2

*Bank of Credit & Commerce International (Overseas) Ltd. v. State Bank of Pakistan*,
273 F.3d 241 (2nd Cir.2001) ................................................................................. 14

*Base Metal Trading SA v. Russian Aluminum*,
253 F. Supp. 2d 681 (S.D.N.Y. 2003) ................................................................... 12

*Base Metal Trading Ltd. v. Russian Aluminum*,
98 F. App'x 47 (2d Cir. 2004) ............................................................................... 12

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007) .................................................................................. 15

*Bryks v. Canadian Broadcasting Corp.*,
928 F. Supp. 381 (S.D.N.Y. 1996) .......................................................................... 7

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .............................................................................................. 22

*Cabiri v. Assasie-Gyimah*,
921 F. Supp. 1189 (S.D.N.Y. 1996) ........................................................................ 3

*Calder v. Jones*,
465 U.S. 783 (1984) .................................................................................... 17, 23, 24

*Canadian Overseas Ores Ltd. v. Compania De Acero Del Pacifico, S.A.*,
528 F. Supp. 1337 (S.D.N.Y.1982) ......................................................................... 5

*Chigirinskiy v. Panchenkova*,
No. 14-CV-4410 JPO, 2015 WL 1454646 (S.D.N.Y. Mar. 31, 2015) ...................... 11

*Cutco Indus, Inc. v.Naughton*,

806 F.2d 361 (2d Cir.1986)..................................................................................... 18

*Doe v. Exxon Mobil Corp.*,
393 F.Supp.2d 20 (D.D.C.2005) ............................................................................ 4

*Esheva v. Siberia Airlines*,
499 F. Supp. 2d 493 (S.D.N.Y. 2007).................................................................. 11

*First Union National Bank v. Arab African International Bank*,
48 Fed.App'x. 801 (2nd Cir.2002) ........................................................................ 14

*First Union National Bank v. Paribas*,
135 F.Supp.2d 443 (S.D.N.Y.2001)...................................................................... 14

*Freidzon v. Lukoil*,
14-cv-5445 (AT), 2015 WL 13021409 (S.D.N.Y. Mar. 12, 2015)........................... 11

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974).................................................................................... 12, 22

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 ............................................................................................... 9

*HSBC USA, Inc. v. Prosegur Paraguay, SA*,
2004 WL 2210283 (S.D.N.Y. Sept. 30, 2004)......................................................... 5

*In re National Presto Indus., Inc.*,
347 F.3d 662 (7th Cir. 2003) ............................................................................. 9

*Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*,
34 F.3d 410 (7th Cir. 1994) ................................................................. 16, 17, 23

*Intellivision v. Microsoft Corp.*,
484 F. App'x 616 (2nd Cir. 2012)......................................................................... 19

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945)........................................................................................ 22, 23

*Iragorri v. United Technologies Corp.*,
274 F.3d 65 (2nd Cir.2001) ................................................................................. 1

*Joint Stock Company "Channel One Worldwide" v. Russian TV Company, Inc., et al*,
1:18 cv-02318 (S.D.N.Y. 2018)............................................................................ 18

*Joint Stock Company Channel One Russia Worldwide v. Informir, LLC*,
1:16-cv-01318-UA (S.D.N.Y. 2016) ..................................................................... 17

*Katz Agency v. Evening News Assn.*,
514 F.Supp.423 (S.D.N.Y. 1981) ................................................................. 19

*Keeton v. Hustler Magazine*,
465 U.S. 770 (1984) ............................................................... 7, 8, 23, 24

*La Luna Enterprises, Inc. v. CBS Corp.*,
74 F. Supp. 2d 384 (S.D.N.Y. 1999) ............................................................. 7

*LaSala v. Bank of Cyprus Publishing Co.*,
510 F. Supp. 2d 246 (S.D.N.Y. 2007) ......................................................... 14

*Licciardello v. Lovelady*,
544 F.3d 1280 (11th Cir. 2008) ................................................................. 17

*Marine Midland Bank, N.A. v. Miller*,
664 F. 2d 899 (2nd Cir. 1981) ................................................................... 25

*Mayer v. Josiah Wedgewood & Sons, Ltd.*,
601 F.Supp 1523 (S.D.N.Y 1985) ............................................................. 18

*Mayes v. Leipziger*,
674 F.2d 178 (2d Cir.1982) ....................................................................... 18

*Merrill Lynch Futures, Inc. v. Miller*,
686 F.Supp. 1033 (S.D.N.Y.1988) ............................................................... 7

*Montgomery v. Minarcin*,
263 A.D.2d 665 N.Y.S.2d 293 (3d Dep't 1999) ......................................... 20

*Murray v. British Broad. Corp.*,
81 F.3d 287 (2nd Cir.1996) .......................................................................... 9

*New Hampshire v. Maine*,
532 U.S. 742 (2001) .................................................................................. 19

*Norex Petroleum Ltd. v. Access Industries, Inc.*,
416 F.3d 146 (2nd Cir.2005) ................................................................... 1, 9

*Peregrine Myanmar Ltd. v. Segal*,
89 F.3d 41 (2nd Cir. 1996) .......................................................................... 9

*Philadelphia Newspapers, Inc. v. Hepps*,
475 U.S. 767 (1986) .................................................................................. 12

v

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981)............................................................................................... 6, 9, 10, 14

*Pollux Holding Ltd. v. The Chase Manhattan Bank*,
329 F.3d 64 (2nd Cir.2003)................................................................................................ 1

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
244 F. Supp. 2d 289 (S.D.N.Y. 2003).............................................................................. 6

*R. Maganlal & Co. v. M.G. Chem. Co.*,
942 F.2d 164 (2nd Cir.1991).......................................................................................... 10

*Rasoulzadeh v. Associated Press*,
574 F. Supp. 854 (S.D.N.Y. 1983), *aff'd*, 767 F.2d 908 (2nd Cir. 1985)....................... 3

*Reeves v. American Broadcasting Companies, Inc.*,
719 F.2d 602 (2nd Cir. 1983).......................................................................................... 7

*RIGroup LLC v. Trefonisco Management. Ltd.*,
949 F. Supp. 2d 546 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2nd Cir. 2014)............. 10

*Rustal Trading US, Inc. v. Makki*,
17 F. App'x 331 (6th Cir. 2001) ....................................................................................... 4

*Schertenleib v. Traum*,
589 F.2d 1156 (2d Cir.1978)........................................................................................... 12

*Scottish Air International, Inc. v. British Caledonian Group, PLC*,
81 F.3d 1224 (2nd Cir. 1996).......................................................................................... 13

*Sinochem International Co. v. Malaysia International Shipping Corp.*,
549 U.S. 422 (2007).......................................................................................................... 2

*Symmetra Pty Ltd. v. Human Facets, LLC*,
12-cv-8857 SAS, 2013 WL 2896876 (S.D.N.Y. June 13, 2013)................................... 19

*Tannerite Sports, LLC v. NBCUniversal Media LLC*,
135 F. Supp. 3d 219 (S.D.N.Y. 2015)............................................................................ 21

*Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media*, LLC,
864 F.3d 236 (2nd Cir. 2017).......................................................................................... 16

*Tarasevich v. Eastwind Transport Ltd.*,
02-cv-1806 (JSM), 2003 WL 21692759 (S.D.N.Y. July 21, 2003)............................... 10

*Trout Point Lodge, Ltd. v. Handshoe*,
729 F.3d 481 (5th Cir. 2013) ........................................................................................ 13

*Uebler v.Boss Media AB*,
432 F.Supp2d 301 (S.D.N.Y. 2006)........................................................................ 18, 25

*Varnelo v. Eastwind Transportation, Ltd*.,
02-cv-2084(KMW)(AJP), 2003 WL 230741 (S.D.N.Y. Feb. 3, 2003) ....................... 10

*Walden v. Fiore*,
572 U.S. 277 (2014).................................................................................................... 24

*Williams v. Green Bay & Western R. Co*.,
326 U.S. 549 (1946)...................................................................................................... 6

*Wiwa v. Royal Dutch Petroleum Co*.,
226 F.3d 88 (2nd Cir.2000)........................................................................................ 5, 6

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980).................................................................................................... 23

*Wye Oak Tech., Inc. v. Republic of Iraq*,
941 F. Supp. 2d 53 (D.D.C. 2013) ............................................................................... 4

*Zerman v. Sullivan & Cromwell*,
677 F.Supp. 1316 (S.D.N.Y.1988) ............................................................................... 7

## Statutes

28 U.S.C. § 1404(a) ...................................................................................................... 2
28 U.S.C. § 4102(a)(1)(A), (B).................................................................................... 13
28 U.S.C. §§ 4101-4105 .............................................................................................. 13

## Rules

C.P.L.R § 302(a)(1) ............................................................................................. *passim*

Plaintiff Alex Goldfarb respectfully submits this memorandum of law in opposition to the motion of defendant Channel One Russia ("Channel One") to dismiss the Complaint on the grounds that (a) based on the doctrine of forum non conveniens he should be required to pursue his defamation claim against Channel One in Russia, and (b) this Court lacks personal jurisdiction over Channel One. As shown below, Channel One's arguments fail, and Dr. Goldfarb's claims should be litigated here.  Russia is not an adequate forum for Dr. Goldfarb to litigate his claims against Channel One, which is controlled by the Russian state. (*See* accompanying affidavits of Dr. Goldfarb, Melissa Hooper, Esq. and Yuri Shvets.)  While that fact disposes of the forum non conveniens issue, the balance of the relevant public and private interests strongly favors upholding Dr. Goldfarb's choice of forum: personal jurisdiction over Channel One exists in New York because Channel One has transacted business here, and the defamation claim arises out of that transaction of business.

## I. *FORUM NON CONVENIENS* DISMISSAL IS NOT WARRANTED

### A. The Three-Step Process

*Forum non conveniens* analysis is a three-step process.  *Pollux Holding Ltd. v. The Chase Manhattan Bank*, 329 F.3d 64, 70 (2nd Cir.2003).  "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum."  *Norex Petroleum Ltd. v. Access Industries, Inc*., 416 F.3d 146, 153 (2nd Cir.2005), *citing Iragorri v. United Technologies Corp*., 274 F.3d 65 (2nd Cir.2001) (en banc).

### B. Step One: Goldfarb's Choice is Entitled to the Highest Degree of Deference

Alex Goldfarb is entitled to the highest degree of deference in his choice of forum. Channel One Russia ("Channel One") mistakenly argues that such deference is inapplicable because the Southern District of New York is not Goldfarb's "home forum." The phrase "home forum" as used by federal courts in *forum non conveniens* cases is not the state or federal district of residence of a plaintiff who is a United States citizen. Rather, in *forum non conveniens* cases the courts are referring *only* to whether the *United States* is the plaintiff's home *country*. *See Sinochem International Co. v. Malaysia International Shipping Corp*., 549 U.S. 422, 430 (2007). The common-law doctrine of forum non conveniens "has continuing application [in federal courts] only in cases where the alternative forum is abroad." *American Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994). The heavy presumption favoring a plaintiff's choice of forum thus does not turn on whether the plaintiff resides in the federal district where the action is filed, but whether the plaintiff is a United States citizen. *Internal* domestic transfers between federal districts in the United States are now controlled by transfer, under 28 U.S.C. § 1404(a). Thus, for federal *forum non conveniens* analysis, this district *is* Goldfarb's "home." *Sinochem*, 549 U.S. at 429.

### C. Step Two: Russia is not an Adequate Forum For This Plaintiff's Claims

Goldfarb plausibly asserts that he is barred from travelling to Russia. Moreover, even if he is allowed to travel to Russia, he has a well -grounded fear of imprisonment, and possibly physical harm or murder if he enters Russia.[1] Russia is not simply an inconvenient forum; it is a potentially deadly one.

In *forum non conveniens* cases the federal American courts generally respect the sovereignty of foreign nations and the legitimacy of foreign tribunals, and do not credit generalized

---

[1] The basis for Dr. Goldfarb's well- grounded  fears about entering Russia, even if allowed to do so, are explained in detail in the accompanying affidavit of Yuri  Shvets, and paragraphs 3 – 7 of Dr. Goldfarb's affidavit.

claims that another nation's legal system is less fair, independent, or free from corruption than the courts in the United States.  But Goldfarb's argument that Russia is not an adequate forum in this case is not based in general attacks on the Russian legal system.  Goldfarb's claim is based on the republication by Channel One, an entity that is owned 51% by the Russian government, of defamatory statements accusing Goldfarb of murdering both Alexander Litvinenko and Goldfarb's wife Sevetlana.  Goldfarb alleges that the broadcast of the defamatory statements is a deliberate effort to deflect international outrage over the Russian state's complicity in the Litvinenko murder, and more recently the attempted murder of Sergei and Julia Skripal in England in 2018.   As the English official inquiry has determined, Russian agents were responsible for Litvinenko's murder, and Russia then sought to shift the blame for Litvinenko's murder to Goldfarb, even manufacturing the cruel lie that Goldfarb had killed his own wife. Cpt., ¶¶ 5, 52-73.  Against this backdrop, Channel One has trivialized the stakes here; this is not a routine antiseptic fight over competing conveniences.

The federal courts consistently recognize that when a plaintiff faces such particularized threats dismissal on *forum non conveniens* grounds is not appropriate.  *See, e.g., Rasoulzadeh v. Associated Press*, 574 F. Supp. 854, 861 (S.D.N.Y. 1983), *aff'd*, 767 F.2d 908 (2nd Cir. 1985).  ("In the case at bar, I have no confidence whatsoever in the plaintiffs' ability to obtain justice at the hands of the courts administered by Iranian mullahs.  On the contrary, I consider that if the plaintiffs returned to Iran to prosecute this claim, they would probably be shot.  There is, in these circumstances, no substance to AP's motion based upon *forum non conveniens*."); *Cabiri v. Assasie-Gyimah*, 921 F. Supp. 1189, 1199 (S.D.N.Y. 1996) (rejecting a *forum non conveniens* motion, noting: "Presuming Cabiri's allegations to be true, he would be putting himself in grave danger were he to return to Ghana to prosecute this action. . . .Likewise in the instant action, the

Court finds that plaintiff is highly unlikely to obtain justice in the Ghanaian courts, and that to force plaintiff to bring this action in Ghana would unnecessarily put him in harm's way, or, also unacceptable, would mean an end to the action altogether."); *Rustal Trading US, Inc. v. Makki*, 17 F. App'x 331, 335 (6th Cir. 2001) ("serious obstacles to conducting litigation in the alternative forum, such as a well-founded fear of persecution there, may render the forum inadequate.")

In assessing the adequacy of Russia as an alternative forum, this Court is entitled to engage in a realistic assessment of the circumstances, considering Goldfarb's Complaint and supporting materials.  Goldfarb essentially alleges that Channel One is an instrument of Vladimir Putin's government and its weaponized defamatory propaganda.  Goldfarb has alleged that as a complicit instrument of this regime, Channel One broadcast defamatory statements that Goldfarb was an agent of the CIA who murdered Litvinenko and Svetlana.  Goldfarb has sworn that he fears arrest, persecution, and perhaps death if he sets foot in Russia to assert his defamation claims.  This combination of factors strongly support denying Channel One's motion.  *Wye Oak Tech., Inc. v. Republic of Iraq*, 941 F. Supp. 2d 53, 57–58 (D.D.C. 2013) (a "court will not force plaintiffs to litigate in a forum where they would face a particularized and "serious risk to their safety."); *Doe v. Exxon Mobil Corp.*, 393 F.Supp.2d 20, 29 (D.D.C.2005) (dismissal for forum non conveniens denied where plaintiffs showed that they aced "a genuine risk of reprisals" if they litigated in Indonesia against the military).

A *forum non conveniens* dismissal is also unwarranted because, given the highly charged political issues implicated in this case, it is highly unlikely that Goldfarb could receive a fair trial in Russia.  International tribunals and authorities have repeatedly found that in such cases Russia's judicial system is effectively under the control of Russia's ruling regime, rendering fundamental

notions of judicial independence, fair play, substantial justice, and the rule of law a nullity.[2]  Such

concerns are particularly relevant here, where Goldfarb alleges he has been set up as the scapegoat

for government-authorized murder.

Serious specific questions about the independence of a foreign legal system in a particular

set of circumstances militate in favor of denial of a *forum non conveniens* motion.  *See Canadian*

*Overseas Ores Ltd. v. Compania De Acero Del Pacifico, S.A.,* 528 F. Supp. 1337, 1342

(S.D.N.Y.1982) (where one party was a state owned corporation, "serious questions about the

independence of the Chilean judiciary vis-à-vis the military junta currently in power" rendered

Chile an inadequate forum);  *HSBC USA, Inc. v. Prosegur Paraguay, SA*, 2004 WL 2210283, at

*3–4 (S.D.N.Y. Sept. 30, 2004) ( Paraguay was not an adequate alternative forum because the

Paraguayan Government was implicated in the alleged wrongdoing).  The words of the Second

Circuit are fully applicable here:

> Indeed, in many instances, the victim would be endangered merely by returning to
> that place. It is not easy to bring such suits in the courts of another nation. Courts
> are often inhospitable. Such suits are generally time consuming, burdensome, and
> difficult to administer. In addition, because they assert outrageous conduct on the
> part of another nation, such suits may embarrass the government of the nation in
> whose courts they are brought.

*Wiwa v. Royal Dutch Petroleum Co*., 226 F.3d 88, 106 (2nd Cir.2000).

**D.  Step Three:  The Balance of Interests Favor Goldfarb**

**1.  Goldfarb Presumptively Prevails in Weighing the Interests**

In assessing conveniences, as plaintiff Goldfarb starts with a presumptive lead, and

Channel One bears a heavy burden to overcome it.  This is not a sterile exercise of interest-

---

[2] This is explained in detail in the accompanying affidavit of. Melissa Hooper, Esq., the Director
of the Human Rights and Civil Society programs at Human Rights First, and paragraphs 8 – 12 of
Dr. Goldfarb's affidavit.

counting.  "The test for *forum non conveniens* is not a simple matter of which side has the weightier argument. Instead, the burden is on the defendant to show that the factors tilt 'strongly' in favor of trial in a foreign forum."  *Presbyterian Church of Sudan v. Talisman Energy, Inc*., 244 F. Supp. 2d 289, 335 (S.D.N.Y. 2003), *citing Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d at 100. "Each case turns on its facts." *Williams v. Green Bay & Western R. Co*., 326 U.S. 549, 557 (1946).  "If central emphasis were placed on any one factor, the forum non conveniens doctrine would lose much of the very flexibility that makes it so valuable." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249-50 (1981).

### 2. The Public Interests Favor Goldfarb's Choice of New York

"The public interests include: (1) having local disputes settled locally; (2) avoiding problems of applying foreign law; and (3) avoiding burdening jurors with cases that have no impact on their community."  *Alfadda v. Fenn*, 159 F.3d 41, 46 (2nd Cir. 1998).

#### a.  Having Local Disputes Settled Locally

The first public interest articulated by the Second Circuit is to have "local disputes settled locally." *Id.*  The dispute here strongly implicates the interests of the United States, and New York in particular.  Goldfarb is a United States citizen, a large part of Goldfarb's public reputation is centered in New York, many Russian speaking viewers of Channel One's defamatory broadcasts live in New York and Goldfarb was interviewed in New York as part of the production process.

#### b. American Libel Law, Not Russian Law, Will Apply

Channel One mistakenly argues that Russian law should apply to Goldfarb's defamation claim.  Under New York choice-of-law principles the defamation law of New Jersey or New York should govern Goldfarb's claim.  Under New York's "most significant relationship" choice of law regime, in defamation actions "the state of the plaintiff's domicile will usually have the most

6

significant relationship to the case." *Reeves v. American Broadcasting Companies, Inc*., 719 F.2d 602, 605 (2nd Cir. 1983). "In defamation cases, the jurisdiction of the plaintiff's domicile at the time of the alleged defamation usually has the greatest interest in the outcome of the litigation." *Bryks v. Canadian Broadcasting Corp*., 928 F. Supp. 381, 383 (S.D.N.Y. 1996), *citing* Reeves, 719 F.2d at 605; *see also Merrill Lynch Futures, Inc. v. Miller*, 686 F.Supp. 1033, 1041 (S.D.N.Y.1988); *Zerman v. Sullivan & Cromwell*, 677 F.Supp. 1316, 1318 (S.D.N.Y.1988); *Restatement (Second) of Conflict of Laws* § 150(2) (1971).  The plaintiff's domicile is the "jurisdiction is the place where any injury is most likely to be felt, and accordingly the jurisdiction that will have the greatest interest in having its laws control the consequences of that injury." *Bryks*, 928 F.Supp. at 383. *See also La Luna Enterprises, Inc. v. CBS Corp*., 74 F. Supp. 2d 384, 388 (S.D.N.Y. 1999) (plaintiff's domicile will usually have the most significant relationship to the case "because plaintiff's home state is where a plaintiff's reputation is most likely damaged.")

### 3.  The Dispute Impacts the New York Community

When the dispute has no connection to the American forum's community, an interest exists "in protecting jurors from sitting on cases with no relevance to their own community." *Alfadda v. Fenn*, 159 F.3d at 46.  New York jurors have an interest in vindicating the reputational interest of Goldfarb.  Goldfarb, an American citizen who lived and worked in Manhattan for years as a professor and human rights activist at Columbia University, lives in the New York metropolitan area.  Goldfarb has many colleagues and associates within New York metropolitan area, which is a principal locus of the reputational damage he has suffered.

The Supreme Court's decision in *Keeton v. Hustler Magazine*, 465 U.S. 770 (1984) is also important in assessing New York's public interest for *forum non conveniens* purposes.  *Keeton* emphasized the multi-state characteristics of defamation cases, and the *collective* interest of all the

states in ensuring that a forum will exist for the vindication of the reputation of the plaintiff suffered in all states in which the libel was published, an interest that the forum state is justified in asserting on its own behalf and as representative for the other states in the federal system. *Id.* at 777. ("New Hampshire also has a substantial interest in cooperating with other States, through the 'single publication rule,' to provide a forum for efficiently litigating all issues and damage claims arising out of a libel in a unitary proceeding."). Under the "single publication rule" a libel plaintiff may seek, and indeed is *required* to seek, recovery for damages arising in all jurisdictions from the single publication of libelous material reaching multiple jurisdictions. *Id.* at 773, n. 2. The *Keeton court* held that New Hampshire had an interest in protecting even a non-resident from the harms done to reputation in the state, even if that non-resident was anonymous prior to the publication. "The reputation of the libel victim may suffer harm even in a state in which he has hitherto been anonymous. The communication of the libel may create a negative reputation among the residents of a jurisdiction where the plaintiff's previous reputation was, however small, at least unblemished." *Id.* at 776-77.

*Keeton* also emphasizes the realty that false statements not only damage the victim of defamation, but all *readers* who are misled by such false statements. New Hampshire therefore had a constitutionally cognizable interest in redressing the damage to New Hampshire residents who were exposed to the defamatory falsehood, an interest independent of any harm done to the defamation plaintiff. "False statements of fact harm both the subject of the falsehood *and* the readers of the statement. New Hampshire may rightly employ its libel laws to discourage the deception of its citizens." *Id.* at 776 (emphasis in original). New York in Goldfarb's case, no less than New Hampshire in Keeton's case, has an interest in vindicating Goldfarb, and "in safeguarding its populace from falsehoods." *Id.* at 777.

### 4.  The Private Interests Favor Goldfarb's Choice of New York

#### a.  The Applicable Private Interests

This Court must "weigh the public and private interests identified in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, to determine which forum 'will be most convenient and will best serve the ends of justice.'" *Alfadda v. Fenn*, 159 F.3d at 45-46, *quoting Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 46 (2nd Cir. 1996).  The private interest factors include: "(1) ease of access to evidence; (2) the cost for witnesses to attend trial; (3) the availability of compulsory process; and (4) other factors that might shorten trial or make it less expensive." *Alfadda*, 159 F.3d at 46.

#### b.  Goldfarb's Convenience is Entitled to Deference

That litigating in Russia may be more convenient to Channel One does not matter, since litigating in New York is more convenient to Goldfarb.  When parties are from different jurisdictions, someone will be inconvenienced.  Federal courts do not swap out a defendant's convenience for a plaintiff's. "When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff, as the cases cited earlier make clear." *In re National Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003) (gathering cases).  Thus, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 508; *Norex Petroleum Ltd.*, 416 F.3d at 154 (2nd Cir.2005) (same).

In assessing convenience, "[t]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum." *Murray v. British Broad. Corp.*, 81 F.3d 287, 290 (2nd Cir.1996*); Piper*, 454 U.S. at 255 ("strong presumption in favor of the plaintiff's choice of forum"); *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 1001 (2nd Cir.1993) ("strong presumption").

9

Dismissal is not appropriate unless "the balance of convenience tilts strongly in favor of trial in the foreign forum." *R. Maganlal & Co. v. M.G. Chem. Co*., 942 F.2d 164, 167 (2ⁿᵈ Cir.1991).

While it is a truism that the heavy presumption favoring the plaintiff does not apply with full force when the plaintiff is foreign, *see Piper*, 455 U.S. at 255, Dr. Goldfarb is American, and the presumption is thus at its apex. In the cases cited by Channel One granting dismissal on forum non conveniens grounds in favor of a Russian forum, the plaintiffs were *not* United States citizens.

For example, in *Tarasevich v. Eastwind Transport Ltd*., No. 02 CIV. 1806 (JSM), 2003 WL 21692759 (S.D.N.Y. July 21, 2003), the plaintiff was a Russian seaman who brought a lawsuit for injuries he suffered in an explosion at sea. The ship was owned and operated by the defendant shipping companies, concerns operating out of Liberia and Greece. In granting the *forum non conveniens* motion, the court emphasized the Russia's interest in protecting its injured seaman. *Id.* at *4. Similarly, *Varnelo v. Eastwind Transportation, Ltd*., No. 02CIV.2084(KMW)(AJP), 2003 WL 230741 (S.D.N.Y. Feb. 3, 2003) was an action by a Russian widow as representative of the estate of a Russian seaman. As the court observed, "Russia has a strong interest in protecting its own seamen hired in Russia, and their Russian widows." *Id.* at *1. It is, however, one thing to assume that Russia would provide an adequate and fair forum to adjudicate the claims of a Russian seaman lost or injured at sea; it is quite another to assume Russia would provide an adequate and fair forum for defamation claims arising from a cynical propaganda campaign allegedly orchestrated by the Russian government to deflect international outrage against Russia for its heinous murders of dissidents.

*RIGroup LLC v. Trefonisco Management. Ltd*., 949 F. Supp. 2d 546, 548 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2ⁿᵈ Cir. 2014) is also readily distinguishable. The plaintiffs were Janna Bullock, a Russian national living in New York, and RIGroup, which the court characterized as

"legally defunct during the events in question, … reactivated only after the alleged corporate raiding in Russia, and … nothing more than a holding company for Bullock's international business ventures." *Id.* at 552. The defendants were all foreign nationals, and almost all Russian, and "at bottom" the case boiled down to allegations that the defendants "conspired to loot a Russian corporation owned and controlled by Plaintiffs." *Id.* at 549. The dismissal of a case involving Russians suing Russians over allegations of swindling in Russia on *forum non conveniens* grounds does not support dismissal of Dr. Goldfarb's suit as an American seeking redress for a defamation campaign targeting him in the United States.

The other cases cited by Channel One to support a *forum non conveniens* dismissal are also all readily distinguishable. *Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493, 498 (S.D.N.Y. 2007), was a suit on behalf of passengers injured or killed in a Siberian Airlines crash in Russia. None of the passengers were United States citizens or in transit to the United States, and there was no plausible connection to or interest of the United States involved. *Chigirinskiy v. Panchenkova*, No. 14-CV-4410 JPO, 2015 WL 1454646, at *12 (S.D.N.Y. Mar. 31, 2015), involved a property dispute between a Russian husband and wife who had taken residence in New York and then divorced. The court accepted that Russia could provide an adequate forum for resolving a domestic relations property dispute, but after applying the relevant factors denied the motion to dismiss on forum non conveniens grounds. While a Russian court could provide an adequate forum for a routine marital property dispute between two Russians, it hardly follows that Russian courts would provide an adequate forum for a politically charged case directly implicating allegations of serious misconduct by the Putin regime. *See also Freidzon v. Lukoil*, No. 14 CIV. 5445 (AT), 2015 WL 13021409, at *1 (S.D.N.Y. Mar. 12, 2015), *appeal dismissed as untimely filed*, 644 F. App'x 52, 53 (2d Cir. 2016)(dismissing business dispute where plaintiff was a citizen of the Russian

Federation and the State of Israel, and the defendants were a Russian company and its New York subsidiary); *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681 (S.D.N.Y. 2003), *aff'd sub nom. Base Metal Trading Ltd. v. Russian Aluminum*, 98 F. App'x 47 (2d Cir. 2004) (dismissing dispute involving "two Russian companies" where "not one plaintiff was a citizen or resident of the United States" and the record indicated "forum shopping by the plaintiffs" as the complaint involved "activities that arise from the conduct of business in Russia." *Id.* at 694-97.

### c.  Likely Witnesses Reside in the United States, Russia, and England

This is not a case in which *all* the witnesses are abroad.  Goldfarb's witnesses will be from New York and New Jersey, including himself, colleagues, and friends, who will assist in establishing critical elements of his claim, including falsity and actual damage to his reputation, and the circumstances of Channel One's interviews of Goldfarb in New York.  *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) (plaintiff bears burden of proving falsity); *Gertz v. Robert Welch, Inc*., 418 U.S. 323 (1974) (establishing plaintiff's burdens of proving fault).  There may be other fact witnesses and expert witnesses drawn from the United States and England, including investigators from Scotland Yard of Litvinenko's murder and his widow Marina, who lives in London.  Thus, statements in Second Circuit cases that have treated the fact that *all* witnesses are abroad as a factor finding *forum non conveniens* do not apply here.  *See Schertenleib v. Traum*, 589 F.2d 1156, 1165 (2d Cir.1978) (Geneva more convenient forum when "[a]ll of the prospective witnesses, apart from [the defendant], either are Swiss or reside in European countries"); *Alfadda v. Fenn*, 159 F.3d at 47 (emphasizing that *all* witnesses were abroad).

### d.  Other Pragmatic Considerations Favor Goldfarb's Choice of New York

Among the pragmatic considerations to be judged under the *Gilbert* factors, a court may consider "questions as to the enforcibility of a judgment if one is obtained."  *Gilbert*, 330 U.S. at

508.  *See also Scottish Air International, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1232 (2nd Cir. 1996) (quoting the enforcibility language in *Gilbert*).  This Court should take into account the passage by Congress of the Securing the Protection of our Enduring and Established Constitutional Heritage Act, Pub. L. No. 111-223, § 1, 124 Stat. 2380, codified as 28 U.S.C. §§ 4101-4105, commonly referred to as the "SPEECH Act."  The SPEECH Act prohibits a court in the United States from recognizing or enforcing a foreign judgment for defamation unless "the foreign court's adjudication provided at least as much protection for freedom of speech and press in that case as would be provided by the first amendment" or "the party opposing recognition or enforcement of that foreign judgment would have been found liable for defamation by a domestic court applying the first amendment." 28 U.S.C. § 4102(a)(1)(A), (B). *See also Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 487 (5th Cir. 2013) (concluding, under the SPEECH Act that a Canadian defamation judgment could not be enforced in the United States).  While the SPEECH Act does not by its terms purport to address choice-of-law or *forum non conveniens* decisions at the front end of litigation, the existence of the SPEECH Act is surely a pragmatic consideration relevant to both the public and private interests to be weighed when assessing a *forum non conveniens* motion.  As to the public interests, the SPEECH Act is yet another factor favoring the application of American, not Russian law, since no judgment non-compliant with the First Amendment would be enforceable in the United States. As to private interests, the SPEECH Act presages that even in the unlikely event that Goldfarb were to receive a fair trial and obtain a judgment against Channel One in Russia—a far-fetched scenario to say the least—that judgment would almost certainly not be enforceable in the United States.

### 5. Channel One Has Not Met Its Burden

The burden of proof "on all elements of the motion" to dismiss for *forum non conveniens* falls on Channel One. *Bank of Credit & Commerce International (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2nd Cir.2001).  *Forum non conveniens* analysis is not a mechanical exercise in simple arithmetic, it is a wholistic exercise in discretion.  The Court does not simply compile the factors favoring each side, basing a judgment on whether one party has more "factor points" than the other. *See Piper* 454 U.S. at 249-50. "'In the last analysis, it always must be borne in mind that there is no algorithm that assigns precise weights to the factors that inform *forum non conveniens* determinations.  The doctrine instead is intensely practical and fact-bound.  The most that may be said is that courts reach informed judgments after considering all of the pertinent circumstances.'"  *LaSala v. Bank of Cyprus Publishing Co*., 510 F. Supp. 2d 246, 255 (S.D.N.Y. 2007), *quoting First Union National Bank v. Paribas*, 135 F.Supp.2d 443, 448 (S.D.N.Y.2001), a*ff'd sub nom., First Union National Bank v. Arab African International Bank*, 48 Fed.App'x. 801 (2nd Cir.2002).  No realistic assessment of the risks and perils that would confront Goldfarb if he were forced to litigate his claim in Russia can reach any conclusion other than the cold reality that it would be too dangerous for him to appear there.  Dismissal on *forum non conveniens* grounds effectively ends his case, rendering a cynical defamation smear campaign against him essentially impervious to redress and the rule of law.  This Court ought not countenance such an outcome.

## II.  PERSONAL JURISDICITON EXISTS IN NEW YORK

### A.  Jurisdiction Exists Under § 302(a)(1)

#### 1.  The "Something More" Standard

Jurisdiction under the applicable section of New York's long-arm statute, N.Y. C.P.L.R § 302(a)(1), exists because Channel One transacted business in New York, both by itself and through its New York agent and subsidiary, Channel One Worldwide ("CORW"), and the defamatory statements upon which Goldfarb brings his case arose from that transaction of business. Goldfarb agrees with Channel One's summary of New York law articulated by the Second Circuit in *Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007), which requires, in cases in which out-of-state defamatory statements are projected into New York, that the defendant's conduct also include "something more." *Id.* at 249.  Goldfarb disagrees with Channel One, however, in its application of the "something more" test; there is more than enough "something more" in this case to support jurisdiction under § 302(a)(1).

#### 2.  Channel One And Its Subsidiary And Agent Channel One Russia Worldwide Repeatedly and Intentionally Projected Defamatory Statements Into New York through Paid Subscription Programming

Goldfarb has not alleged merely one single act of defamation projected into New York, but multiple repetitions of Channel One's weaponized propaganda to defame and demonize him.  The projection of the defamation campaign against Goldfarb is not the result of passive activity by Channel One on the internet that happened to be accessed by New Yorkers.  Rather, Channel One, by its subsidiary and agent CORW, contracts to distribute its programming for fees to subscribers in the New York area, from which it extracts substantial profits.

As this Court has recognized, "jurisdiction is more likely to lie when the allegedly defamatory statements were purposefully "written in or directed to New York, as opposed to having reached the forum fortuitously, as by an Internet post accessible to anyone."  *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 230-31 (S.D.N.Y. 2015), *aff'd sub nom. Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media*, LLC, 864 F.3d 236 (2nd Cir. 2017).  Channel One's targeting of New York viewers was deliberate and remunerative, not fortuitous.

Channel One itself conducts substantial marketing events in New York, including a Gala "Channel One and Atmosphere Marketing Group Dinner" held on November 21, 2017 at the Lotte New York Palace featuring "Channel One Russia Stars."  Goldfarb Aff., Ex. 5-7.  Channel One programs are distributed in the United States through, among other platforms, RCN New York, DirecTV, Comcast, Charter, Verizon Services Corp., Comcast-ATT, Cox, and Frontier Communications.  *Id.*, Ex. 3-4.  The RCN New York subscription package, for example, allows New Yorker viewers the option of purchasing "Prestige" and "Elite" packages that bundle Channel One with other Russian programming, for $24.99 per month, and stand-alone packages featuring only Channel One programming, for $14.95 per month. [3]  Channel One markets various unique New York-targeted advertising buy packages, ranging from "Package 1" costing $3,355.80 to "Package 5" costing $9,103.50. Goldfarb Aff., Ex.8.

By deliberately projecting its programming into New York for consumption by paid subscribers, Channel One plainly transacts business in New York. In *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410 (7th Cir. 1994), for example, the court held that a Canadian football team had subjected itself to jurisdiction in Indiana by

---

[3] https://www.rcn.com/new-york/digital-cable-tv/international/russian/

entering the state via paid cable television broadcasts, equating the subscription broadcasts to the physical distribution of magazines in a forum state. *Id.* at 412. ("The defendant had also 'entered' the state in some fashion, as by the sale (in *Calder*) of the magazine containing the defamatory material. Well, we have that here too, because of the broadcasts."). *See also Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11ᵗʰ Cir. 2008) (citing *Indianapolis Colts* and noting, "The Seventh Circuit held that the Canadian team was subject to personal jurisdiction in Indiana even though its only activity directed toward Indiana was the broadcast of its games on nationwide cable television.").

Two Complaints filed by CORW in the United States District Court for the Southern District of New York recite facts illustrating CORW's transaction of business in New York as Channel One's agent. Goldfarb Aff. Ex.2-3. In *Joint Stock Company Channel One Russia Worldwide v. Informir, LLC*, Case 1:16-cv-01318-UA (S.D.N.Y. 2016), CORW sued various defendants for impermissibly intercepting and rebroadcasting the television programming material produced by Channel One in Russia and then broadcast on a subscription basis through licenses authorized to distribute Channel One's product to subscribers in the United States, including New York. *Id.*, Ex. 2. Channel One's distribution includes cable and satellite platforms and IPTV; Channel One's programming content is encrypted in all modes so that only authorized paying subscribers in New York and elsewhere may access it. *CORW Complaint*, ¶¶ 3, 5, 6. Paragraph 84 of the *CORW* Complaint specifically recites:

> Plaintiffs are actively engaged in the production and distribution of the Programming and other copyrighted works primarily in the Russian language on their respective Channels. Plaintiffs have entered into certain license agreements providing non-parties with the exclusive right to broadcast and re-broadcast their Programming and other copyrighted materials in the United States. Only the relevant license holders are authorized to broadcast, re-broadcast or otherwise transmit Plaintiffs' protected, copyrighted programming and other materials in the United States via IPTV or otherwise.

Similarly, CORW invoked the jurisdiction of this Court in *Joint Stock Company "Channel One Worldwide" v. Russian TV Company, Inc., et al*, Case 1:18 cv-02318 (S.D.N.Y. 2018), again based its assertion that it is doing business in New York via various licensing and subscription agreements, which the named defendants were allegedly violating.  Goldfarb Aff., Ex. 3.

For purposes of CPLR Section 302 "agent … include[s] any person who, with the consent of the nondomiciliary and under some measure of [its] control, acts in New York for the benefit of the nondomiciliary." *Mayes v. Leipziger*, 674 F.2d 178,181 (2d Cir.1982).  The focus of the analysis is "on the realities of the relationship in question rather than the formalities of agency law," and the alleged agent must have acted in New York "for the benefit of, and with the knowledge and consent of, the foreign principal." *Cutco Indus, Inc. v.Naughton*, 806 F.2d 361,366 (2d Cir.1986).

In an analysis that is squarely applicable in this case, these principles were applied by the court in the Infomir action brought by Channel One's agent CORW.  The court held that it had personal jurisdiction over defendant Panorama Alliance LP under CPLR 302(a)(1) based on the actions of its agent in New York, an authorized dealer who sold subscriptions to Panorama's IPTV services. Case 1:16-cv-01318-GBD-BCM Dkt. No. 205.  The court also held that due process concerns were satisfied because the sales of Panorama IPTV subscriptions through its New York agent constituted purposeful availment and gave it reason to foresee litigating in New York.

The New York sales and marketing activities of CORW as agent on behalf of Channel One, its corporate parent, establish personal jurisdiction over Channel One pursuant to CPLR §302(a)(1).  *See, e.g., Uebler v.Boss Media AB*, 432 F.Supp2d 301,305 (S.D.N.Y. 2006) (jurisdiction over Swedish parent established where subsidiary agent "functioned as an integral part" of parent's business); *Mayer v. Josiah Wedgewood & Sons, Ltd.*, 601 F.Supp 1523,1530

(S.D.N.Y 1985)(jurisdiction over British parent where subsidiary agent acted as parent's "mouthpiece and relay station" in New York); *Katz Agency v. Evening News Assn.*, 514 F.Supp.423, 428 (S.D.N.Y. 1981)

Channel One's own activities in New York, and the sales and marketing activities of Channel One's agent CORW in New York, as detailed by CORW itself in two complaints it has filed in the Southern District, more than suffice for purposes of jurisdiction.  To live by the sword is to die by the sword.  Channel One by its agent CORW has invoked the jurisdiction of this Court to protect Channel One's ongoing business interests in broadcasting its programming content for profit into New York, Channel One should be deemed judicially estopped from denying the existence of those same ongoing business interests when it is sued for defamation arising from defamatory content arising from that same stream of commercial programming.  *See, e.g., Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 618-19 (2nd Cir. 2012) ("'Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . .") *quoting New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

### 3.   Channel One's Preparation for its Broadcasts Included Journalistic Activity Conducted in New York, Including its New York Office

In addition to the marketing activities of its agent CORW in New York other activities of Channel One support jurisdiction.  Activity within New York to research or prepare a publication or broadcast will count as a factor supporting the "something more" required to establish jurisdiction.  *See Symmetra Pty Ltd. v. Human Facets, LLC*, No. 12 CIV. 8857 SAS, 2013 WL 2896876, at *6 (S.D.N.Y. June 13, 2013) ("Under this standard, jurisdiction is more likely to lie when the defendant's contacts with New York were in preparation for the defamatory statement— for example, staying in New York to research a defamatory book or news broadcast.");

*Montgomery v. Minarcin*, 263 A.D.2d 665, 693 N.Y.S.2d 293 (3d Dep't 1999) (jurisdiction over an out-of-state defendant was supported by fact that an allegedly defamatory news report was written and researched by the defendant in New York prior to being broadcast in New York).

Channel One maintains a facility at 250 West 57th Street in Manhattan which it uses as the base for its journalists and videographers to work on stories. A journalist employee of Channel One, Ms. Shanna Agalakova, is based at the Channel One Manhattan facility. Agalakova sent Goldfarb a message on March 22, 2018, requesting an interview at Channel One's 250 West 57th Street facility. The next day Agalakova videotaped an interview with Goldfarb lasting more than one hour.[4] Cpt., ¶ 94. This New York interview strongly supports jurisdiction in New York. (Another Channel One producer, identified as "Natalia," telephoned Goldfarb and interviewed him, and a segment of this interview was subsequently broadcast by Channel One in its defamatory programs. Cpt., ¶ 95. Goldfarb has candidly acknowledged that he received this call in New Jersey.)

In a herring about as red as any red herring might ever be, Channel One argues that because Goldfarb's New York taping session were not included in the defamatory broadcasts, it somehow does not count in the personal jurisdiction analysis. Channel One then recites the truism that defamation requires publication to a third party. This is all nonsense, sound and fury signifying nothing. Channel One is conflating analysis of the merits with analysis of jurisdiction. The interview conducted by Channel One in New York with Goldfarb is *directly* germane to his cause

---

[4] Channel One seeks to make hay from the Declaration of its Channel One witness Larisa Nasonova, head of Channel One's department of human resources, who reviewed the tape and declares it lasted for about 30 minutes, not an hour. The length of the tape does not necessarily align with the length of time Goldfarb spent with Agalakova in New York in the interview process, nor does it legally matter. The point is that the interview was conducted in New York in preparation for the defamatory broadcasts.

of action.  That interview, and the complete failure of Channel One to include it or pay it any heed, will be central to the jury presentation on issues relating to falsity and fault.  The fact that Channel One deliberately chose *not* to broadcast the interview it took of Goldfarb in New York will be highly probative of Channel One's knowledge of falsity or reckless disregard for truth or falsity. The idea that it somehow matters that Goldfarb cannot base his defamation claim on what he said in his interview with Channel One in Manhattan makes no sense as applied to either jurisdiction or his claim on the merits.  Goldfarb is not suing Channel One for what *Goldfarb himself said* to Channel One in New York.  He is suing for what Channel One actually broadcast.  Yet this does not mean that the interview is somehow erased from history.  It remains highly relevant to jurisdiction and Channel One's connection to the forum.  Channel One used its own facilities in New York to have its New York based journalist interview Goldfarb in New York in preparation of the very defamatory stories giving rise to Goldfarb's defamation claim.  The interview also remains highly relevant to the merits of Goldfarb's claim, and as already explained, will play a central role on issues of fault and falsity.

Channel One also asserts that it somehow matters that Agalakova, "played no role in Channel One's decision not to air the interview."  Deft. Mem.at 22.  Whether she played a role or not is a fact question to be illuminated by discovery.  Yet whether she personally played a role to kill the interview or not isn't the issue; the issue is *jurisdiction*.  Agalakova conducted the interview as Channel One's journalist in New York.  The who, what, when, why, and where of the decision by Channel One not to use the interview is beside the point.  What matters is that the interview happened, and it happened in New York.

Channel One seeks to discount the relevance of this interview because, Channel One asserts, it bears no relationship to any element of Goldfarb's prima facie case.  In fact, the

interviews were integral to the stories Channel One was producing.  Channel One did not call Goldfarb into Manhattan or phone him as a follow up on a lark to engage in chit-chat.  Channel One knew exactly what it was doing in reaching out to Goldfarb and why.  A jury could well read into these interviews the darkest and most cynical of calculations—that Channel One, seeking to cover itself, felt it necessary to engage in a perfunctory exchange with Goldfarb so it might later say it that it did so.  Goldfarb will be able to rely on this interview as central to his presentation on fault and falsity, both of which *are* elements of his prima facie case. *See Hepps* 475 U.S. at 778; *Gertz*, 418 U.S. at 348.

### a.  Jurisdiction is Proper Under the Due Process Clause

Assertion of personal jurisdiction over Channel One is entirely consistent with the Due Process Clause.  Indeed, the analysis required to establish jurisdiction under § 302(a)(1) essentially performs double-duty, for it also demonstrates that assertion of jurisdiction over Channel One will not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  As the Supreme Court explained *in Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), "Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.* at 473.

In this suit there is *both* physical and digital presence of activities in New York.  Channel One interviewed Goldfarb in New York at Channel One's New York facility; it engaged in aggressive promotional activity of its content in New York through events such as its marketing gala in Manhattan; and by its agent CORW, it distributed paid subscription transmission of its

22

defamatory content into New York, the digital equivalent of a physical sale of magazines or newspapers in New York.  *See Indianapolis Colts,* 34 F.3d at 412.

The two controlling Supreme Court decisions guiding personal jurisdiction analysis under the Due Process Clause in the context of defamation actions are two unanimous decisions, *Keeton v. Hustler Magazine*, 465 U.S. 770, and *Calder v. Jones*, 465 U.S. 783 (1984). In *Keeton*, the plaintiff, a New Yorker, sued *Hustler Magazine* for libel in New Hampshire.  465 U.S. at 798. *Keeton* was brought before the dawn of the Internet.  Jurisdiction was thus grounded solely in the physical copies of *Hustler* sold in New Hampshire.  *Id.* at 772.  The Supreme Court treated the ongoing delivery of physical copies of *Hustler* into New Hampshire as easily satisfying the requirements of the Due Process Clause for personal jurisdiction.  *Id., citing World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297-98 (1980); *International Shoe Corp. v. Washington,* 326 U.S. at 317.

Both by itself and through its agent CORW Channel One deliberately marketed and distributed its television broadcasts to paid subscribers in New York.  Those commercially sold transmissions of its defamatory content channeled through various subscription content distributors are the electronic equivalent to the physical copies of the magazines sold in *Keeton*. When coupled with the other activities engaged in by Channel One in targeting and marketing its programming in New York, and its conduct of an interview with Goldfarb in New York, due process jurisdiction under *Keeton* is easily satisfied.

The *Calder* case arose from a defamation case brought in California by the actress Shirley Jones arising from an article published in *The National Enquirer*.  The jurisdiction dispute was not over whether the Florida corporate journalistic entity, *The National Enquirer*, could be sued in California, but whether two individual journalists and editors who worked for the *Enquirer* could

be sued in California.  The Supreme Court upheld the assertion of jurisdiction over the two individuals, applying an "effects test" that emphasized the predictability that adverse effects to the reputation of the plaintiff would be realized in the forum state.

*Calder* ought not much detain this Court.  Goldfarb has not reached into the organization chart of Channel One to sue individual producers and journalists in its employ.  He has, rather, limited his suit to Channel One as an *entity*, and as such it is *Keeton*, not *Calder*, that is on point. In any event, it was perfectly foreseeable to Channel One that Goldfarb, who spent much of his career at Columbia University in New York and was actively engaged as a professor and activist within New York, would suffer severe reputational damage in New York and its metropolitan area. In such a sprawling polyglot metropolitan arena, the fundamental values reflected in America's efforts to mediate fairly between protection of the human dignity comprehended by the law's protection of individual reputation and the nation's profound commitment to freedom of speech should not turn on a Columbia professor's decision to reside on one side or the other of the Hudson River.  *See also Walden v. Fiore*, 572 U.S. 277, 287 (2014) ("The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. . . In this way, the "effects" caused by the defendants' article—i.e., the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to California.").  And moreover, as *Keeton* established, New York has an interest in protecting Goldfarb's reputation on behalf of New Jersey, and all of its sister states.

### b.  Jurisdiction Discovery Would Be Required Prior to Dismissal

The Court should rule that there is enough, based on the submissions before it, to allow the case to proceed in New York.  At the very least, Dr. Goldfarb has made a serious start in establishing personal jurisdiction and therefore the Court should not dismiss this case without

giving him the opportunity to more fully develop the record through jurisdictional discovery. *See, e.g., Marine Midland Bank, N.A. v. Miller*, 664 F. 2d 899, 904 (2nd Cir. 1981); Uebler, supra, 363 F. Supp. at 306 (decision to allow jurisdictional discovery "bolstered by the fact that the facts necessary to establish personal jurisdiction lie within [Defendant's] exclusive knowledge").

Dated: May 13, 2019
New York, New York

ROTTENBERG LIPMAN RICH, P.C.

By: _____
　　Bertrand Sellier, Esq.
　　Richard E. Rosberger, Esq.
　　230 Park Avenue, 18th Floor
　　New York, New York 10169
　　T: (212) 661-3080
　　F: (646) 203-0281
　　Attorneys for Plaintiff Alex Goldfarb

　　Rodney A. Smolla
　　Delaware Law School
　　4601 Concord Pike
　　Wilmington, Delaware 19803-1406
　　(application for pro hac vice to be
　　filed)