```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__3/4/2020__
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
ALEX GOLDFARB,                                          :
                                                        :
                                    Plaintiff,          :
                                                        :
            -against-                                   :            18-CV-8128 (VEC)
                                                        :
                                                        :            OPINION AND ORDER
CHANNEL ONE RUSSIA and RT AMERICA,                      :
a.k.a. ANO TV-NOVOSTI,                                  :
                                                        :
                                                        :
                                    Defendants.  :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiff Alex Goldfarb has sued Defendants Channel One Russia ("Channel One") and

RT America a.k.a. Ano TV-Novosti ("RT America") for libel per se and intentional infliction of

emotional distress arising from allegedly defamatory statements broadcast by Defendants

regarding Plaintiff's alleged involvement in the murder of Russian dissident Alexander

Litvinenko. *See* Compl., Dkt. 5.  Defendant Channel One moves to dismiss the complaint on the

ground of *forum non conveniens* ("FNC") and for lack of personal jurisdiction pursuant to

Federal Rule of Civil Procedure 12(b)(2).  Dkt. 59.  Defendant RT America moves to dismiss the

complaint for lack of personal jurisdiction, failure to state a claim, and FNC pursuant to Federal

Rules of Civil Procedure 12(b)(2) and 12(b)(6).[1]  Dkts. 30, 69.  For the following reasons,

Defendants' motions are DENIED.

---

[1]        This case was originally assigned to Hon. Deborah Batts.  Following Judge Batts' death, the case was
reassigned to the undersigned on February 20, 2020.

## BACKGROUND[2]

On November 1, 2006, Alexander Litvinenko ("Litvinenko"), a former officer of the Russian Federal Security Service ("FSB") met with Andre Lugovoy, a former KGB officer, and Dmitry Kovtun in London regarding a possible business venture; Litvinenko mysteriously fell ill that evening.  Compl. ¶¶ 21, 31-32.  Three weeks later, on November 23, 2006, Litvinenko died of poisoning with what was later identified as the radioactive element Polonium-210.  *Id.* ¶ 2.  Two days before his death, Litvinenko signed a written statement accusing Russian President Vladimir Putin of ordering his murder, presumably, in part, as retaliation for Litvinenko's accusations of wrongdoing by Russian government officials.  *Id.* ¶¶ 2, 18, 25, 28, 29, 36.

On May 28, 2007, the United Kingdom ("UK") asked Russia to extradite Lugovoy to stand trial for Litvinenko's murder.  *Id.* ¶ 37.  Russia denied the request; Lugovoy was elected to the Duma in 2007 and awarded a medal "For Services to the Fatherland, Second Degree" by Putin in 2015.  *Id.*  In 2011, UK authorities named Kovtun as a second suspect in Litvinenko's murder and issued an international warrant for his arrest.  *Id.* ¶ 39.  Kovtun is currently a general director of a company in Moscow.  *Id.*

Also in May 2007, Plaintiff, a microbiologist and human rights activist who had met and become friends with Litvinenko during various trips to Moscow in the 1990s, published a book with Litvinenko's widow titled "Death of a Dissident: The Poisoning of Alexander Litvinenko and the Return of the KGB."  *Id.* ¶ 38.  The book argued that Lugovoy and Kovtun poisoned Litvinenko on Putin's orders.  *Id.*

For six years following Litvinenko's death, his father, Walter Litvinenko ("Walter"), publicly blamed Putin for his son's murder.  *Id.* ¶ 45.  Then, in a stunning about-face, on

---

[2] The facts are taken from the Plaintiff's Complaint and are assumed to be true for purposes of this motion.

February 2, 2012, Defendants Channel One and RT America broadcast interviews with Walter in which he called his son a traitor and asked Putin for forgiveness and permission to return to Russia. *Id*. ¶ 47.  A few months later, on May 31, 2012, in another interview with RT America, Walter accused Plaintiff and Boris Berezovsky, a wealthy entrepreneur and former deputy in the Russian Parliament, of murdering his son. [3]  *Id*. ¶¶ 19,  48.  (On the date of the alleged poisoning of Litvinenko, Plaintiff was in New York; he arrived in London approximately two weeks later. *Id.* ¶ 33.)

On December 12, 2012, after reviewing some classified information, Sir Robert Owen, a judge on the High Court of Justice in the UK, found evidence supporting a *prima facie* case that Litvinenko had been murdered by someone working on behalf of the Russian state.  *Id*. ¶¶ 52-54. About 18 months later, Sir Owen opened a Public Inquiry into Litvinenko's death.  *Id*. ¶¶ 55, 58. The Public Inquiry concluded that Lugovoy and Kovtun murdered Litvinenko by placing Polonium-210 in his tea on November 1, 2006; Sir Owen rejected the suggestion that Plaintiff or Berezovsky had any role in the death.  *Id*. ¶¶ 68, 70, 73.  Sir Owen also found that the "FSB operation to kill Mr. Litvinenko was probably approved by [] President Putin."  *Id.* ¶ 72.

Years later, in March 2018, former Russian military intelligence officer Sergei Skripal and his daughter were poisoned in England. *Id.* ¶ 79.  Due to marked similarities to the Litvinenko poisoning, the Litvinenko murder was thrust back into the news.  *Id.*  To set-up a counternarrative to the Western narrative that the Skripal attempted murder was similar to the Livinenko murder, thereby suggesting that the Russian government was responsible, Defendant Channel One aired four programs in March and April 2018 during which reporters accused

---

[3]     Berezovsky held a major stake in ORT-TV, the predecessor of Channel One.  Compl. ¶ 19.  In October 2000, Berezovsky fled to London after pressure from Putin to surrender control of ORT to the state.  *Id.* ¶ 23. Berezovsky and Plaintiff helped Litvinenko and his family escape Russia and obtain asylum in London.  *Id*. ¶ 24.

Plaintiff of poisoning Litvinenko and killing his own wife.[4]  *Id.* ¶ 9.  The programs featured interviews with Walter Litvinenko and Andre Lugovoy, both of whom repeatedly accused Plaintiff of murdering Litvinenko and framing Lugovoy.  *Id.* ¶¶ 83-89, 96-107.  In the March 30, 2018 program, Walter claimed that he saw Plaintiff's wife "crying, weeping: 'Walter, Walter, Alex killed Alexander.'"  *Id.* ¶ 96.  Walter claimed Plaintiff's wife was "a young girl" and "died within a month" of Litvinenko's death.  *Id.* ¶¶ 85, 96.  Channel One's reporter stated that Plaintiff's wife allegedly "confessed that her husband killed Alexander [Litvinenko] and herself died a month later at the age of 28."  *Id.* ¶ 96.  Plaintiff asserts that his wife died of cancer at the age of 55, three years after Litvinenko's murder.  *Id.* ¶ 90.  The Channel One television shows were distributed internationally, including in New York.  *Id.* ¶ 9.

On April 1, 2018, Defendant RT America[5] aired an interview of Walter in which he repeated the allegedly defamatory statements he had previously made on the Channel One programs.  *Id.* ¶ 97.  RT America's reporter stated that the Litvinenko investigation materials from the UK Inquiry Report had been classified even though the UK Inquiry report was, in fact, not classified; it was released publicly in 2016 and remains publicly available.  *Id.* ¶¶ 59, 98.

Defendant Channel One contacted Plaintiff several times in connection with the programs at issue.  *Id.* ¶¶ 91-95. After several interviews were scheduled and then cancelled by Channel One,[6] on March 23, 2018, Plaintiff and Zhanna Agalakova, Channel One's New York-based

---

[4]     Defendant Channel One is a Russian company with its principal place of business in Moscow.  Compl. ¶ 12  According to its website, Channel One is "the most widely distributed Russian-language channel … reaching over 250 million TV viewers around the world."  *Id.*  The programs at issue aired on March 20, March 30, April 4, and April 10, 2018, on Channel One's shows  "Man and Law" and "Let Them Talk."  *Id.* ¶ 9.

[5]     Defendant RT America is a Russian company with its principal place of business in Moscow.  Compl. ¶ 13.  According to its website, "RT has a total weekly audience of 100 million viewers in 47 of the 100+ countries where RT broadcasts."  *Id.*  The program at issue aired on RT America's "Worlds Apart" show.  *Id.* ¶ 97.

[6]     On March 14, 2018, a Channel One producer invited Plaintiff to participate in the taping of the March 20, 2018 program via Skype.  *Id.* ¶ 91.  After Plaintiff indicated that he intended to say that "Lugovoy should be in

correspondent, met in Channel One's New York studio to record an interview. *Id.* ¶ 94. Throughout the interview, Plaintiff denied that he killed Litvinenko, stated that the UK Inquiry Report had named Lugovoy and Kovtun as Litvinenko's murderers, and refuted Walter's claims regarding his wife. *Id.* Although Agalakova told Plaintiff that she would send the tape to Moscow to be broadcast immediately, the interview was never aired. *Id.* As detailed, *supra*, Defendant Channel One instead broadcast the allegedly defamatory statements regarding Plaintiff's supposed role in Litvinenko and his wife's deaths, without rebuttal from Plaintiff, in their three subsequent programs aired on March 30, April 4, and April 10, 2018. *Id.*

Plaintiff asserts a claim of libel per se against both Defendants,[7] alleging that Defendants aired defamatory statements despite knowing they were false and in deliberate disregard of the truth. *Id.* ¶¶ 115-131. Plaintiff also asserts a claim of intentional infliction of emotional distress, alleging that the publication of the defamatory statements caused him to suffer significant damages, including damage to his reputation, humiliation, embarrassment, mental suffering, and emotional distress. *Id.* ¶¶ 133-34.

---

prison for murder and Walter should be ashamed of himself," the Channel One producer withdrew the invitation. *Id.* On March 21, 2018, Channel One again invited Plaintiff to participate in the taping of the program, this one set to air on March 30, 2018; Plaintiff agreed and Channel One directed its New York-based associate to arrange for a camera crew. *Id.* ¶¶ 92-93. On March 23, 2018, the morning of the scheduled taping, Channel One cancelled the taping. *Id.*

[7]       Plaintiff claims that three statements aired by Channel One and RT America are defamatory per se: Plaintiff murdered Litvinenko; Plaintiff murdered Plaintiff's wife; and Plaintiff is an agent of the CIA. Compl. ¶ 116. The first two, if false, are clearly libel per se. It is premature at this point to decide whether it is libel per se to falsely accuse someone of being involved with the CIA.

## DISCUSSION

### I.   Defendants' Motion to Dismiss for *Forum Non Conveniens* is Denied

Channel One moved to dismiss Plaintiff's complaint on the grounds of *forum non conveniens, see* Dkt. 59, and RT America joined the motion, Dkt. 69.

The doctrine of *forum non conveniens* is a "discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *Carey v. Bayerische Hypo–Und Vereinsbank AG,* 370 F.3d 234, 237 (2d Cir. 2004) (citations and internal quotation marks omitted); *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257 (1981). The Second Circuit has established a three-part test for evaluating motions to dismiss on FNC grounds. First, the district court must determine "the degree of deference properly accorded [to] the plaintiff's choice of forum." *Norex Petroleum Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Techs. Corp.,* 274 F.3d 65, 73– 74 (2d Cir. 2001) (en banc)). Second, the court must consider "whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute," and finally, the court must balance the private and public interests implicated in plaintiff's choice of forum. *Id.*

### a.   Step One: The Court Defers to Plaintiff's Choice of Forum

As a general matter, courts defer to a plaintiff's choice of forum; indeed, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947). The "degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations." *Iragorri,* 274 F.3d at 71. On one hand, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States,

the more difficult it will be for the defendant to gain dismissal for *forum non conveniens.*" *Id.* at 72 (footnote omitted). On the other hand, "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons ... the less deference the plaintiff's choice commands." *Id.* Because one of the factors that "necessarily affects a plaintiff's choice of forum is the need to sue in a place where the defendant is amenable to suit," courts do not "withhold deference for the plaintiff's choice merely because she did not sue in her home district." *Iragorri*, 274 F.3d at 71-73 (explaining that it would "make little sense to withhold deference" for a "hypothetical plaintiff residing in New Jersey, who brought suit in the Southern District of New York, barely an hour's drive from the plaintiff's residence, because the defendant was amenable to suit in the Southern District but not in New Jersey."); *Guidi v. Inter-Continental Hotels Corp,* 224 F.3d 142, 146 (2d Cir. 2000) (the "home forum" of an American citizen for *forum non conveniens* purposes is any "United States court").

Here, the Court defers to Plaintiff's choice of forum. Although Defendants argue that Plaintiff's decision to sue in this district warrants less deference because Plaintiff is a resident of New Jersey, the Court disagrees. As will be discussed in detail *infra,* because Channel One operates a studio in Manhattan, conducted an interview with Plaintiff pertaining to the claims in this case at that studio, and distributes its programming throughout this district, Channel One is subject to personal jurisdiction in this District.[8] As such, Plaintiff has chosen a forum in which "defendant is amenable to suit" and the Court will not "withhold deference for the plaintiff's

---

[8]     As will be discussed *infra*, the Court will permit jurisdictional discovery to determine whether RT America is subject to personal jurisdiction. Nonetheless, Plaintiff has made a sufficient start toward establishing personal jurisdiction; Plaintiff alleges that RT America has distribution contracts with New York cable and satellite television operators and hotels targeting New York residents and visitors, and maintains a television studio and a correspondent in New York. Goldfarb Aff., Dkt. 46 ¶¶ 10-11

choice merely because []he did not sue in [his] home district." *Iragorri*, 274 F.3d at 72-73; *Wiwa v. Royal Dutch Petroleum Co*., 226 F.3d 88, 103 (2d Cir. 2000) ("The benefit for a U.S. resident plaintiff of suing in a U.S. forum is not limited to suits in the very district where the plaintiff resides, especially considering that the defendant may not be amenable to suit in the plaintiff's district of residence.").

### b.  Step Two: Russia is Not an Adequate Alternative Forum

Although an alternative forum is generally adequate if a defendant is "amenable to service of process there, and if it permits litigation of the subject matter of the dispute," *Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 75 (2d Cir. 2003) (citing *Piper,* 454 U.S. at 254 n.22), it may nonetheless be inadequate if it is "characterized by a complete absence of due process or an inability of the forum to provide substantial justice to the parties." *In re Arbitration Between Monegasque De Reassurances S.A.M.  v. Nak Naftogaz of Ukr.,* 311 F.3d 488, 499 (2d Cir. 2002).  Moreover, a court may decline to dismiss on FNC grounds if the proposed alternative forum would be dangerous for the plaintiff.  *Rasoulzadeh v. Associated Press*, 574 F. Supp. 854, 861 (S.D.N.Y. 1983), *aff'd*, 767 F.2d 908 (2d Cir. 1985) (refusing to dismiss for FNC even though important evidence was undoubtedly located in Iran because plaintiffs faced a risk of being killed if they returned to Iran); *Rustal Trading US, Inc. v. Makki*, 17 F. App'x 331, 335 (6th Cir. 2001) ("serious obstacles to conducting litigation in the alternative forum, such as a well-founded fear of persecution there, may render the forum inadequate."); *Cabiri v. Assasie-Gyimah*, 921 F. Supp. 1189, 1199 (S.D.N.Y. 1996) (rejecting an FNC motion because "plaintiff is highly unlikely to obtain justice in the Ghanaian courts, and [] to force plaintiff to bring this action in Ghana would unnecessarily put him in harm's way, or, also unacceptable, would mean an end to the action altogether.").

Here, although Defendants emphasize that they are amenable to service of process in Russia and that Russian law permits litigation of Plaintiff's claims, *see* Sokolov Decl., Dkt. 61 ¶¶ 15-21, the Court nonetheless finds Russia to be an inadequate alternative forum.  The Court credits Plaintiff's purported fear of returning to Russia, including concerns that he would be imprisoned or physically harmed. [9]  Goldfarb Aff., Dkt. 63 ¶¶ 4-7.  Plaintiff's fears are supported by Yuri Shvets, a former KGB agent who was granted political asylum in the United States and has served as an expert on Russia and Ukraine in numerous federal and immigration court cases. Shvets Aff., Dkt. 65 ¶¶ 1-4.  Shvets states that Plaintiff's activities "exposing grave crimes committed by the top representatives of the Putin regime earn him a place near the top of the FSB's enemy list" and that his "life and/or freedom would be in grave danger if he enters Russia."  *Id.* ¶ 19.  In short, Russia is not an adequate alternative forum to resolve Plaintiff's claims.

### c.   Step Three: The Balance of Public and Private Factors Favors Plaintiff's Choice of Forum

If the court determines that an adequate alternative forum exists, it must "balance two sets of factors to ascertain whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum proposed by the defendant."  *Iragorri*, 274 F.3d at 73.  The first set of factors are private interest factors, which include: (1) the ease of access to evidence; (2) the cost for witnesses to attend trial; (3) the availability of compulsory process; and (4) and other factors that might shorten the trial or make it less expensive.  *Piper*, 454 U.S. at 241 n.6.  In considering these factors, the court compares "the hardships defendant would suffer through the retention of

---

[9]      On a motion to dismiss for *forum non conveniens*, a court must accept the facts alleged in the complaint as true.  *See, e.g., Aguas Lenders Recovery Grp. LLC v. Suez, S.A.*, 585 F.3d 696, 697 (2d Cir. 2009).  The court may also consider certain evidence outside the pleadings, including affidavits. *See id.* at 697–98 n.1; *RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 549 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2d Cir. 2014).

jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in another country." *Iragorri*, 274 F. 3d at 74.  Public interest factors include: (1) the interest in having local disputes settled locally; (2) the interest in avoiding problems associated with the application of foreign law; and (3) the interest in avoiding burdening jurors with cases that do not affect their community.  *Alfadda v. Fenn*, 159 F.3d 41, 46 (2d Cir. 1998).  The defendant bears the burden of establishing that an adequate alternative forum exists and that the "balance of private and public interest factors tilts heavily in favor of the alternative forum."  *Abdullahi v. Pfizer, Inc.,* 562 F.3d 163, 189 (2d Cir. 2009).

Although the Court has already determined that Russia is not an adequate forum, the Court will briefly analyze the public and private interest factors regarding dismissal.  With respect to the public interest factors, although all of the allegedly defamatory broadcasts were recorded in Russia, Plaintiff's suit may nonetheless be viewed as a local dispute.  Defendant Channel One maintains a studio in New York, distributes its programming throughout the United States, and interviewed Plaintiff in its New York studio as part of its production process.  RT America has contracts with multiple service providers that allow it to gain access to cable and satellite subscribers throughout the United States.  Moreover, harm to Plaintiff's reputation would have occurred primarily in the United States, where he resides.  In short, Plaintiff has a strong interest in having this dispute settled in the United States.

Next, although Channel One argues that New York choice of law principles would require the Court to apply Russian law, the Court disagrees.  While the Court need not perform a detailed choice-of-law analysis at this moment, it notes that New York choice-of-law rules dictate that the substantive law of the jurisdiction with the most significant interest in the litigation should be applied, and that, in defamation cases, "the jurisdiction of the plaintiff's

domicile at the time of the alleged defamation usually has the greatest interest in the outcome of

the litigation." *Bryks v. Canadian Broad. Corp*., 928 F. Supp. 381, 383 (S.D.N.Y. 1996) (citing

*Reeves v. Am. Broad. Cos.,* 719 F.2d 602, 605 (2d Cir. 1983)); *Merrill Lynch Futures, Inc. v.*

*Miller,* 686 F. Supp. 1033, 1041 (S.D.N.Y. 1988); *Davis v. Costa–Gavras,* 580 F. Supp. 1082,

1091 (S.D.N.Y. 1984); Restatement (Second) of Conflict of Laws § 150(2) (1971).  Thus,

although the Court acknowledges that a full choice-of-law analysis will require a balancing of

several other factors, at the moment, because Plaintiff is not domiciled in Russia, the Court

rejects Defendant's contention that "New York's choice-of-law principles indicate that Russian

law should govern Plaintiff's claims."  Channel One Mem. of Law, Dkt. 60 at 14.

      Turning to the private interest factors, Defendant argues that critical evidence and

witnesses are located in Russia and that litigating in the United States would require extensive

translation of Russian documents into English.  *Id*. at 10-11.  These factors are insufficient to

warrant dismissal.  Although certain key witnesses and relevant documents are undoubtedly

located in Russia, the Court agrees with Plaintiff that this "is not a case in which all the witnesses

are abroad."  Pl. Mem. of Law, Dkt. 66 at 12.   Specifically, Plaintiff resides in New Jersey and

Zhanna Agalakova, the Channel One reporter who interviewed Plaintiff, works out of the

Channel One studio in New York.  In addition, other relevant witnesses, such as colleagues,

friends, investigators of Litvinenko's murder, and Litvinenko's widow, who may be used to

establish elements of Plaintiff's claim, including falsity and damages, live in the United States or

in London.  *See id.*  Moreover, although the inconvenience of shipping documents from Russia to

the United States is a consideration in the FNC analysis, Defendant has "not demonstrated that

these costs are excessively burdensome, especially in view of the defendant's vast resources," or

that the "additional cost and inconvenience to the defendant of litigating in New York is [not]

fully counterbalanced by the cost and inconvenience to the plaintiff[] of requiring [him] to reinstitute the litigation in [Russia]." *Wiwa*, 226 F.3d at 107; *see also Calavo Growers of Cal. v. Generali Belg.,* 632 F.2d 963, 969 (2d Cir. 1980) (Newman, J., concurring) ("It will often be quicker and less expensive to transfer a witness or a document than to transfer a lawsuit."). Accordingly, Defendants have failed to meet their burden of showing that the "balance of convenience tilts strongly in favor of trial in the foreign forum." *R. Maganlal & Co. v. M.G. Chem. Co*., 942 F.2d 164, 167 (2d Cir. 1991).

In sum, because Russia is an inadequate forum to resolve this dispute and, even if it were, Defendants have failed to demonstrate that the balance of public and private interest factors mandates dismissal, the Court defers to Plaintiff's choice of forum and declines to dismiss this case for *forum non conveniens*.

## II. Channel One's Motion to Dismiss for Lack of Personal Jurisdiction is Denied

Channel One also moves to dismiss for lack of personal jurisdiction. When responding to a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *See Grand River Enters. Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 165 (2d Cir. 2005). Personal jurisdiction of a federal court over a non-resident defendant in a diversity action is governed by the law of the state in which the court sits and by the limits of due process. *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir. 1994); *DiStefano v. Carozzi N. Am., Inc.,* 286 F.3d 81, 84 (2d Cir. 2001). Accordingly, the Court must engage in a "two-part analysis." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999). First, the court looks to the relevant jurisdictional statute of the forum state, which, in this case is New York. *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir.

2001).  If the exercise of jurisdiction is appropriate under New York's long-arm statute, the court

must then decide whether such exercise comports with due process; under the due process clause

of the Fourteenth Amendment, a state may "authorize its courts to exercise personal jurisdiction

over an out-of-state defendant" only if "the defendant has 'certain minimum contacts with [the

state] such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice.'" *Daimler AG v. Bauman*, 571 U.S. 117 (2014) (alteration in original)

(quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)).

### a.  Channel One Transacts Business in New York

New York's long-arm statute provides for both general and specific personal

jurisdiction.[10]  Pursuant to CPLR § 302(a)(1), a court may exercise specific jurisdiction over a

non-domiciliary that "in person or through an agent … transacts any business within the state or

contracts anywhere to supply goods or services in the state."  Specific jurisdiction over the non-

domiciliary also requires that the cause of action arise from the enumerated acts.  *Biro v. Nast,*

No. 11-CV-4442, 2012 WL 3262770, at *9 (S.D.N.Y. Aug. 10, 2012).  Thus, to determine

whether a defendant is subject to personal jurisdiction under § 302(a)(1), the court must decide

(1) whether the defendant "transacts any business" in New York and, if so, (2) whether the cause

of action arises from that business.  *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 246 (2d Cir.

2007).

With respect to the "transacting business" part of the analysis, courts look to "the totality

of the defendant's activities within the forum."  *Sterling Nat'l Bank & Trust Co. of N.Y. v.*

*Fidelity Mortg. Inv'rs,* 510 F.2d 870, 873-74 (2d Cir. 1975).  In defamation cases, however,

---

[10]    Plaintiff does not argue that Defendant Channel One is subject to general personal jurisdiction.  Moreover, the parties agree that, because this is a defamation case, only § 302(a)(1) provides a basis for asserting specific jurisdiction.  *See* CPLR 302(a)(2), (3) (expressly exempting "a cause of action for defamation of character arising from the act.").

New York courts construe "transacts any business within the state" more narrowly than in other

types of litigation.  *Best Van Lines*, 490 F.3d at 248.  The Second Circuit has explained that "the

single act of uttering a defamation, no matter how loudly, is not a transact[ion of] business that

may provide the foundation for personal jurisdiction."  *Id.* (internal quotation marks omitted)

(alteration in original).  In other words, "when the defamatory publication itself constitutes the

alleged 'transact[ion of] business' for the purposes of section 302(a)(1), more than the

distribution of a libelous statement must be made within the state to establish long-arm

jurisdiction over the person distributing it." *Id.* at 249 (citing *Strelsin v. Barrett,* 36 A.D.2d 923

(1st Dep't 1971) (holding that the court did not have jurisdiction over a California defendant who

allegedly libeled the plaintiff during a television broadcast recorded in California because the

mere subsequent distribution of the tape in New York did "not constitute doing business in New

York by the newscaster who performed elsewhere.")).

New York courts may exercise personal jurisdiction in defamation cases when the

defendant's out-of-state conduct involved defamatory statements projected into New York, "but

only where the conduct also included something more."  *Best Van Lines,* 490 F.3d at 249.  The

requirement that the Defendant do "something more" is satisfied when at least part of the

defamatory content was created, researched, written, developed, or produced in New York.  *See

e.g. Biro*, 2012 WL 3262770, at *10 ("courts have typically found long-arm jurisdiction over

defamation claims where the defendant engaged in some purposeful activity within New York

that was directly related to the creation of the allegedly defamatory work."); *Shamoun v.

Mushlin*, No. 12-CV- 3541, 2014 WL 12776779, at *6 (S.D.N.Y. Mar. 26, 2014) ("Plaintiff must

show that the defendant engaged in some purposeful activity within New York that was directly

related to the creation of the allegedly defamatory work, such as research, writing, printing, or

broadcasting.") (internal quotation marks omitted); *Legros v. Irving,* 38 A.D.2d 53, 55-56 (1st Dep't 1971) (exercising jurisdiction over a defamation claim because "all the significant actions culminating in the publication of the [allegedly defamatory] book occurred in New York," including research and printing, as well as the negotiation and execution of the publishing contract).

Here, although it is a close case, Plaintiff has sufficiently identified "something more" to establish personal jurisdiction over Channel One.  First, Plaintiff alleges that Channel One, by its subsidiary and agent Channel One Russia Worldwide ("CORW"), contracts to distribute its programming through platforms such as RCN New York, DirecTV, Comcast, Charter, Verizon Services Corp., Comcast-ATT, Cox, and Frontier Communications to subscribers throughout New York.  Pl. Mem. of Law, Dkt. 66 at 15-16; Goldfarb Aff., Dkt. 63 Exs. 3-7.  Moreover, Channel One maintains a studio in New York and employs a camera crew and a New York correspondent.  Compl. ¶¶ 16, 93-94.  Finally, and most significantly, Channel One's New York-based correspondent, Zhanna Agalakova, interviewed Plaintiff in Channel One's New York studio on March 23, 2018, in connection with several of the programs that are at issue in this case.  *Id.* ¶ 94.  Over the course of the interview, Plaintiff "gave a detailed rebuttal to Walter's accusations and to the false background narrative," and informed Ms. Agalakova that the UK inquiry had found that Lugovoy and Kovtun murdered Litivnenko.  *Id.*  Despite having Plaintiff's taped interview, Channel One broadcast the allegedly defamatory allegations that directly contradicted Plaintiff's statements in three programs in March and April 2018, all after Goldfarb's interview, without ever airing or disclosing Plaintiff's contrary statements.  Thus, although Plaintiff's interview never aired, it constitutes activity in New York directly related to the creation of the allegedly defamatory statements subsequently broadcast by Channel One.

*Compare Symmetra Pty Ltd. v. Human Facets, LLC*, No. 12-CV-8857, 2013 WL 2896876, at *6 (S.D.N.Y. June 13, 2013) ("jurisdiction is more likely to lie when the defendant's contacts with New York were in preparation for the defamatory statement—for example, staying in New York to research a defamatory book or news broadcast) *with Trachtenberg v. FailedMassiah.com*, 43 F. Supp. 3d 198, 202 (E.D.N.Y. 2014) (dismissing defamation claim under § 302 because defamatory content was not "based on research physically conducted in New York").  Because Plaintiff participated in an interview conducted by Channel One in New York, purportedly as part of Channel One's research or preparation for its subsequent allegedly defamatory programs, it is subject to personal jurisdiction in New York.[11]  *See Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 234 (S.D.N.Y. 2015), *aff'd sub nom. Tannerite Sports, LLC v. NBCUniversal News Grp.,* 864 F.3d 236 (2d Cir. 2017) (dismissing a defamation case for lack of jurisdiction because, among other things, Plaintiff failed to show that employees of defendant "who assisted in the broadcast interviewed any people in New York or relied on any sources in New York in connection with the creation or broadcast of the [] report.").

In sum, because Channel One's conduct in New York constitutes "something more" than merely projecting defamatory statements into the forum, the Court finds that Defendant "transacts business" in New York for purposes of satisfying the first prong of § 302(a)(1).

---

[11]     In addition to the interview that was taped in New York, a Channel One producer also conducted a 15-minute telephone interview of Plaintiff on April 5, 2018.  Compl. ¶ 95.  A short segment of the telephone interview was played during Channel One's April 10, 2018 program.  *Id.*  Plaintiff concedes, however, that he participated in the telephone interview from his residence in New Jersey, Pl. Mem. of Law, Dkt. 66 at 20, and there is no indication that the interviewer was in New York at the time of the interview.  Accordingly, the telephone interview does not support Plaintiff's argument that Channel One transacted business in New York.

**b. Plaintiff's Claim Arises out of Channel One's Conduct in New York**

As noted, *supra*, in order to exercise personal jurisdiction under § 302(a)(1), the plaintiff's cause of action must also arise from defendant's transaction of business in the state. A suit will arise "out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Henderson v. INS,* 157 F.3d 106, 123 (2d Cir. 1998) (internal quotation marks omitted).

Here, there is a substantial relationship between Channel One's conduct in New York and Plaintiff's claims. Channel One actively distributed the programs containing the allegedly defamatory statements throughout New York to paid subscribers through its subsidiary CORW. Moreover, Channel One interviewed Plaintiff in its New York studio. Channel One argues that because that interview never aired, it is irrelevant to Plaintiff's claims. *See* Channel One Mem. of Law, Dkt. 60 at 8-9. The Court disagrees. The interview occurred as part of Channel One's research for the allegedly defamatory programs, and during the interview Plaintiff directly contradicted statements made during Channel One's programs. That interview is probative of Defendant's alleged knowledge of the falsity of the contents of its programs and is, therefore, central to Plaintiff's libel claim. *See Montgomery v. Minarcin,* 263 A.D.2d 665 (3d Dep't 1999) (exercising jurisdiction over the creators of an allegedly defamatory television news report because the operative facts giving rise to plaintiff's claims occurred in New York).

In sum, because Channel One transacts business in New York and Plaintiff's cause of action arises from that conduct, Channel One is subject to personal jurisdiction in New York pursuant to CPLR § 302(a)(1).

      **c.  Exercising Personal Jurisdiction Over Channel One Does Not Violate its Due Process Rights**

In order to exercise personal jurisdiction over an out-of-state defendant, the Due Process clause requires that the defendant have "certain minimum contacts with [the forum state], such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (internal quotation marks omitted).  In evaluating whether a defendant has sufficient minimum contacts, the "crucial question is whether the defendant has purposefully avail[ed] itself of the privilege of conducting activities within the forum state" such that he "should reasonably anticipate being haled into court there." *Best Van Lines*, 490 F.3d at 242-43 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Here, Channel One has purposefully availed itself of the privilege of conducting business within the forum state by maintaining a studio and at least one full-time employee in New York and by distributing its programming to paying subscribers throughout New York.  Moreover, Channel One operates its studio and distributes its programming in and throughout New York entirely independently of Plaintiff's claims.  *Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("the plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum . . .").  In short, the exercise of jurisdiction over Channel One comports with due process.

**III.  RT America's Motion to Dismiss for Lack of Personal Jurisdiction Is Denied Without Prejudice, and Plaintiff is Permitted to Take Jurisdictional Discovery**

RT America moves to dismiss Plaintiff's complaint for lack of personal jurisdiction and failure to state a claim.  *See* Dkt. 30.

In deciding a motion to dismiss for lack of personal jurisdiction, a district court may decide the motion "on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion." *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981). "Personal jurisdiction is necessarily a fact-sensitive inquiry dependent on the particulars of the case before the court." *Gucci Am., Inc. v. Frontline Processing Corp.,* 721 F. Supp. 2d 228, 240–41 (S.D.N.Y. 2010) (citing *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir. 1997)).

Here, Plaintiff argues that RT America is subject to personal jurisdiction because it transacts business in New York by virtue of "distribution contracts with New York cable and satellite television operators and hotels targeting New York residents and visitors." Goldfarb Aff., Dkt. 46 ¶ 11. Goldfarb also alleges, "upon information and belief," that RT has a television studio and a correspondent in New York. *Id.* ¶ 10.

As explained, *supra*, the Second Circuit has made clear that "more than the distribution of a libelous statement must be made within the state to establish long-arm jurisdiction over the person distributing it." *Best Van Lines*, 490 F.3d at 248. Although Plaintiff has not specifically alleged that Defendant utilized its studio and correspondent in New York in the creation of the allegedly defamatory statements or the research that preceded the broadcast, he has made a barely sufficient start toward establishing personal jurisdiction. *Stratagem Dev. Corp. v. Heron Int'l, N.V.*, 153 F.R.D. 535, 547-48 (S.D.N.Y. 1994). Thus, the court will permit jurisdictional discovery to allow Plaintiff to develop, if possible, facts necessary to establish that Defendant's conduct in New York constitutes "something more" than "mere defamatory utterances sent into the state" for purposes of exercising personal jurisdiction.[12]  *See Best Van Lines*, 490 F.3d at 248.

---

[12]    The Court will stay RT America's motion to dismiss for failure to state a claim. If RT America renews its motion to dismiss for lack of personal jurisdiction following the completion of jurisdictional discovery, the Court will decide the motion to dismiss for failure to state a claim when it resolves the issue of personal jurisdiction. If RT elects not to re-raise the issue of personal jurisdiction, the Court will then decide the motion to dismiss.

Accordingly, Defendant RT America's motion to dismiss for lack of personal jurisdiction is denied without prejudice to renew after the completion of jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, the Court declines to dismiss this case for *forum non conveniens*. The Court finds that Plaintiff has adequately alleged a basis for personal jurisdiction over Defendant Channel One Russia. Thus, Defendant Channel One's motion to dismiss is DENIED. The Court will allow jurisdictional discovery to determine whether the Court can exercise personal jurisdiction over Defendant RT America. Accordingly, Defendant RT America's motion to dismiss for lack of personal jurisdiction is DENIED without prejudice; RT America's motion to dismiss for failure to state a claim is STAYED.

The parties are ordered to meet and confer. Not later than **March 31, 2020**, they must jointly propose a reasonable schedule for jurisdictional discovery as to RT America and indicate whether they prefer to proceed with discovery as to Channel One prior to the resolution of RT America's motion to dismiss. If the parties wish to proceed with discovery as to Channel One, the parties must also provide the Court with a proposed case management plan by that date.

The Clerk of Court is respectfully directed to close the open motions at docket entries 30 and 59.

**SO ORDERED.**

**Date:  March 4, 2020**
        **New York, New York**

_____
        **VALERIE CAPRONI**
        **United States District Judge**