UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

                                     :

ALEX GOLDFARB,                     :      Index No. 1:18-cv-08128(JPC)

               Plaintiff,      :

            v.               :

CHANNEL ONE RUSSIA,          :

             Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
CHANNEL ONE RUSSIA'S RENEWED MOTION FOR RECONSIDERATION**

ROTTENBERG LIPMAN RICH, P.C.
230 Park Avenue, 18th Floor
New York, New York 10169
T: (212) 661-3080
F: (646) 203-0295
*Attorneys for Plaintiff Alex Goldfarb*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ........................................................................................................................2

    I.  CHANNEL ONE'S MOTION DOES NOT SATISFY THE STANDARDS
        GOVERNING MOTIONS FOR RECONSIDERATION .....................................................2

    II.  THIS COURT SHOULD NOT RECONSIDER JUDGE CAPRONI'S
        DECISION THAT PERSONAL JURISDICTION IS PROPER IN NEW YORK ............3

    III. THIS COURT SHOULD NOT RECONSIDER JUDGE CAPRONI'S
        *FORUM NON CONVENIENS* DECISION .......................................................................14

    IV. THIS COURT SHOULD NOT RECONSIDER JUDGE CAPRONI'S
        DECISION THAT JURISDICTION IS PROPER UNDER THE
        DUE PROCESS CLAUSE ...........................................................................................17

    V.  THIS COURT SHOULD NOT CERTIFY AN INTERLOCUTORY
        APPEAL UNDER 28 U.S.C. § 1292(b) ..........................................................................20

        A.  The § 1292(b) Standards Presumptively Disfavor Certification......................20

        B.  No "Pure" Questions of Law are Presented ....................................................21

        C.  Mere Disagreement with Judge Caproni's Rulings
            Does Not Meet the Standard ...........................................................................23

CONCLUSION....................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

Abortion Rights Mobilization, Inc. v. Regan,
552 F. Supp. 364 (S.D.N.Y. 1982) ................................................................. 20, 21, 23

Aguas Lenders Recovery Grp. LLC v. Suez, S.A.,
585 F.3d 696 (2d Cir. 2009)............................................................................. 17

Best Van Lines, Inc. v. Walker,
490 F.3d 239 (2d Cir. 2007).............................................................................. 7, 8, 9

Bialek v. Racal-Milgo, Inc.,
545 F.Supp 25 (S.D.N.Y. 1982)........................................................................ 5

Biro v. Nast,
No. 11 Civ. 4442, 2012 WL 3262770 (S.D.N.Y. Aug. 10, 2012) ............................... 10

Bulova Watch Co., Inc.v. .K. Hattori & Co., Ltd.,
508 F.Supp. 1343-44 (E.D.N.Y. 1981) ............................................................... 5

Cabiri v. Assasie-Gyimah,
921 F. Supp. 1189 (S.D.N.Y. 1996)................................................................... 16

Cavu Releasing Inc. v. Fries,
419 F.Supp.2d 388 (S.D.N.Y. 2005)................................................................... 6

Century Pac., Inc. v. Hilton Hotels Corp.,
574 F. Supp. 2d 369 (S.D.N.Y. 2008).................................................................. 20, 21

Chong v. Healthtronics, Inc.,
No. CV-06-1287 (SJF) (MLO), 2007 WL 1836831 (E.D.N.Y. June 27, 2007).......................... 4, 6

Coast to Coast Energy, Inc. v. Gasarch,
53 N.Y.S.2d 16 (1st Dep't 2017).......................................................................... 6

Convergen Energy LLC v. Brooks,
No. 20-cv-3746 (LJL) ..................................................................................... 6

CutCo Industries v. Naughton,
806 F.2d at 361 (1986).................................................................................... 19

Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP,
No. 11–CV-5994 (CM), 2012 WL 2952929 (S.D.N.Y. July 18, 2012) ........................ 23

ii

Doe v. Exxon Mobil Corp.,
393 F.Supp.2d 20 (D.D.C. 2005) ................................................................... 16

Eades v. Kennedy P.C. Law Offices,
799 F.3d 161 (2d Cir. 2015) ........................................................................ 17

Flor v. BOT Fin. Corp.,
79 F.3d 2814 (2d Cir. 1996) ....................................................................... 20

Garber v. Office of the Comm'r of Baseball,
120 F.Supp.3d 334 (S.D.N.Y. 2014) .............................................................. 21

Gertz v. Robert Welch, Inc.,
418 U.S. 323 (1974) .................................................................................. 13

Gramercy Advisors, LLC v. Ripley,
2004 WL 5847444, No. 13-CV-9079 (S.D.N.Y. 2014) ...................................... 2, 23

Green v. City of New York,
No. 05-CV-0429 (DLI) (ETB), 2006 WL 2516468 (E.D.N.Y. Aug. 29, 2006) ............ 9

Grove Press, Inc. v. Angleton,
649 F.2d 121 (2d Cir.1981) ......................................................................... 19

Harrell v. Joshi,
14-CV-7246, 2015 WL 9275683, (S.D.N.Y. December 18, 2005) (Caproni, J.) ......... 2

Hecklerco, LLC v. YuuZoo Corp.,
258 F.Supp.3d 350 (S.D.N.Y. 2017) ......................................................... 22, 24

In re Ambac Financial Group Sec. Litig.,
693 F. Supp. 2d 241 (S.D.N.Y. 2010) ............................................................ 23

In re Citigroup Pension Plan ERISA Litig.,
No. 05–CV–5296(SAS), 2007 WL 1074912 (S.D.N.Y. Apr. 4, 2007) ...................... 23

In re Houbigant, Inc.,
914 F. Supp. 997 (S.D.N.Y. 1996) ................................................................ 14

In re Levine,
No. 94-44257, 2004 WL 764709 (S.D.N.Y. Apr. 9, 2004) ................................... 24

In re Lloyd's Am. Trust Fund Litig.,
1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) .................................................... 21

In re Trace Int'l Holdings, Inc.,
No. 04–CV1295 (KMW), 2009 WL 3398515 (S.D.N.Y. Oct. 21, 2009)................................... 23

In re World Trade Center Disaster Site Litigation,
469 F. Supp. 2d 134 (S.D.N.Y. 2007)........................................................................................ 23

In re Worldcom, Inc.,
No. M-47 HB, 2003 WL 21498904 (S.D.N.Y. June 30, 2003) ................................................... 21

Indergit v. Rite Aid,
52 F.Supp.3d at 523 .................................................................................................................. 9

Ingenito v. Riri USA, Inc.,
89 F.Supp.3d 462 (E.D.N.Y. 2015) ........................................................................................... 5

Iragorri v. United Technoligies Corp.,
274 F.3d 65 (2d Cir. 2001)......................................................................................................... 15

J. McIntyre Machinery, Ltd. v. Nicastro,
564 U.S. 873 (2011) .................................................................................................................. 18

Jazini v. Nissan Motor Co., Ltd.,
148 F.3d 181 (2d Cir. 1998)....................................................................................................... 4

Joint Stock Company "Channel One Worldwide" v. Russian TV Company, Inc., et al,
Case 1:18 cv-02318 (S.D.N.Y. 2018) ........................................................................................ 7

Joint Stock Company Channel One Russia Worldwide v. Informir, LLC,
Case 1:16-cv-01318 (S.D.N.Y. 2016).......................................................................................... 7

Jonas v. Estate of Leven,
116 F.Supp. 314 (S.D.N.Y. 2015) .............................................................................................. 6

Klinghoffer v. S.N.C. Achille Lauro,
921 F.2d 21 (2d Cir. 1990).......................................................................................................... 21

Koehler v. Bank of Bermuda Ltd.,
101 F.3d 863 (2d Cir. 1996)........................................................................................................ 20, 22

Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust,
729 F.3d 99 (2d Cir. 2013)........................................................................................................... 2

Legros v. Irving,
38 A.D.2d 53 (N.Y. App. Div. 1971) ......................................................................................... 9, 10

Licci v. Lebanese Canadian Bank,
732 F.3d 161 (2d Cir. 2013)........................................................................ 17

Lillbask v. Conn. Dep't of Educ.,
397 F.3d 77 (2d Cir. 2005)............................................................................ 1

Louis Marx & Co. v. Fuji Seiko Co., Ltd.,
453 F. Supp. 385 (S.D.N.Y. 1978) ............................................................. 19

Mayes v. Leipziger,
674 F.2d 178 (2d Cir. 1982).................................................................... 5, 6

McCullagh v. Merrill Lynch & Co.,
No. 01 Civ. 7322 DAB, 2004 WL 744484 (S.D.N.Y. Apr. 7, 2004) ........................................... 14

Myers v. Hertz Corp.,
02-cv-4325, 2007 WL 2126264 (E.D.N.Y. July 24, 2007) .................................................... 1

Neske v. New York Department of Education,
19-CV-2933, 2019 WL 5865245 (S.D.N.Y. Nov. 7, 2019)............................................ 3

Palmieri v. Estefan,
793 F.Supp. 1182 (S.D.N.Y. 1992) ........................................................... 5

Peyser v. Searle Blatt & Co.,
No. 99-cv-10785, 2004 WL 307300 (S.D.N.Y. Feb.17, 2004) ................................................. 1

Picard v. Estate of Madoff,
464 B.R. 578 (S.D.N.Y. 2011)................................................................... 21

Plaza Realty Investors v. Bailey,
484 F. Supp. 335 (S.D.N.Y. 1979) ........................................................... 19

Rafter v. Liddle,
288 F. App'x 768 (2d Cir. 2008) ............................................................... 2

Rasoulzaeh v. Associated Press,
574 F. Supp. 854 (S.D.N.Y. 1983) ........................................................... 16

Retail Pipeline, LLC v. JDA Software Group, Inc.,
Case No. 2:17–cv–00067, 2018 WL 2298355 (D. Vt. May 21, 2018)........................................ 23

RIGroup LLC v. Trefonisco Mgmt. Ltd.,
949 F. Supp. 2d 546 (S.D.N.Y. 2013) aff'd, 559 F. App'x 58 (2d Cir. 2014) .............................. 17

Rosenblatt v. Baer,
383 U.S. 75 (1966) ................................................................................................ 14

Rustal Trading US, Inc. v. Makki,
17 F. App'x 331 (6th Cir. 2001) ............................................................................ 16

Scholastic, Inc. v. Stouffer,
No. 99 11480, 2000 WL 1154252 (S.D.N.Y. Aug.14, 2000) ................................ 6

SEC v. First Jersey Securities,
587 F. Supp. 535 (S.D.N.Y. 1984) ........................................................................ 23

SEC v. Gruss,
No. 11-Civ.-2420, 2012 WL 3306166 (S.D.N.Y. Aug. 13, 2012) .................. 20, 21

Shamoun v. Mushlin,
No. 12 Civ. 3541, 2014 WL 12776779 (S.D.N.Y. Mar. 26, 2014) ....................... 11

Shovah v. Mercure,
2013 WL 5934310 (D. Vt. Nov. 5, 2013) .............................................................. 22

SPL Shipping Ltd. v. Gujarat Cheminex Ltd.,
No. 06-Civ.-15375 (KMK), 2007 WL 1119753 (S.D.N.Y. Apr. 12, 2007) .......... 20

Stutts v. De Dietrich Group,
465 F.Supp.2d 156 (E.D.N.Y. 2006) ....................................................................... 4

Symmetra Pty Ltd. v. Human Facets, LLC,
No. 12-CV-8857, 2013 WL 2896876 (S.D.N.Y. June 13, 2013) ..................... 11, 12

Tannerite Sports, LLC v. NBCUniversal Media LLC,
135 F. Supp. 3d 219 (S.D.N.Y. 2015) ................................................................ 8, 12

Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC,
864 F.3d 236 (2nd Cir. 2017) .................................................................................. 8

Trachtenberg v. FailedMessiah.com,
43 F. Supp. 3d 198 (E.D.N.Y. 2014) .................................................................. 11, 12

United States v. Bert,
814 F.3d 70 (2d Cir. 2016) .................................................................................... 25

Virgin Atlantic Airways, Ltd. v. National Mediation Board.,
956 F.2d 1245 (2d Cir.1992) .................................................................................... 2

<u>Wolo Mfg. Corp. v. ABC Corp.</u>,
349 F.Supp. 3d 176, (S.D.N.Y. 2018) ................................................................ 6

<u>Wye Oak Tech., Inc. v. Republic of Iraq</u>,
941 F. Supp. 2d 53 (D.D.C. 2013) ..................................................................... 16

<u>Youngers v. Virtus Inv. Partners Inc.</u>,
228 F.Supp.3d 295 (S.D.N.Y. 2017) ................................................................. 20

<u>Yousef v. Al Jazeera Media Network</u>,
No.16 -cv-6416 (CM), 2016 WL1665231 (S.D.N.Y. Mar. 22, 2018) ................................ 4, 5, 17

**Rules**

C.P.L.R. §302(a)(1) ................................................................ *passim*

**Statutes**

28 U.S.C.§ 1292(b) ................................................................ *passim*

Plaintiff Alex Goldfarb respectfully submits this memorandum of law in opposition to Defendant Channel One Russia's ("Channel One") motion for reconsideration of Judge Caproni's Opinion and Order dated March 4, 2020 (ECF 74).

## PRELIMINARY STATEMENT

In her Opinion, Judge Caproni carefully explained why she denied in its entirety Channel One's motion to dismiss on the ground of forum non conveniens and for lack of personal jurisdiction. Channel One then filed a motion for reconsideration, or in the alternative for certification pursuant to 28 U.S.C.§ 1292(b). In an Order dated April 9, 2020 (ECF 84) Judge Caproni ordered that Channel One's motion would be "HELD IN ABEYANCE pending jurisdictional discovery relative to Goldfarb's allegation that Channel One published the alleged defamatory material in New York through its subsidiary and agent Channel One Russia Worldwide ".

In support of its motion "held in abeyance" pending the limited jurisdictional discovery authorized by Judge Caproni, Channel One has submitted yet another brief which in large part simply repeats arguments that Judge Caproni had previously considered and rejected. In deciding Channel One's motion it is important to note that "[u]nder the 'law of the case' doctrine, 'courts are understandably reluctant to reopen a ruling once made,' especially 'when one judge or court is asked to reconsider the ruling of a different judge or court'." Lillbask v. Conn. Dep't of Educ., 397 F.3d 77, 94 (2d Cir. 2005); see also Myers v. Hertz Corp., 02-cv-4325, 2007 WL 2126264, at *2 (E.D.N.Y. July 24, 2007) (judge to whom case was reassigned declined to revisit prior judge's ruling "[p]ursuant to the law of the case doctrine"); Peyser v. Searle Blatt & Co., No. 99-cv-10785, 2004 WL 307300, at*1 (S.D.N.Y. Feb.17, 2004) ("the new judge is well advised to pay particular heed to the doctrine of 'law of the case'"). While Channel

One has supplemented its prior briefing with assertions concerning its wholly owned subsidiary and agent  Channel One Russia Worldwide ("CORW"),  the relevant facts and law provide further support for Judge Caproni's  holding that  Channel One is subject to personal jurisdiction in New York pursuant to N.Y.C.P.L.R. §302(a)(1), and the exercise of specific jurisdiction in this case comports with due process. Accordingly, Channel One's motion should be denied in all respects and discovery on the merits should proceed.

## ARGUMENT

### I.  CHANNEL ONE'S MOTION DOES NOT SATISFY THE STANDARDS GOVERNING MOTIONS FOR RECONSIDERATION

As Judge Caproni correctly explained in Gramercy Advisors, LLC v. Ripley, 2004 WL 5847444, No. 13-CV-9079 (S.D.N.Y. 2014), "'[a} motion for reconsideration should be granted only when the defendant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Id., quoting Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013), quoting in turn, Virgin Atlantic Airways, Ltd. v. National Mediation Board., 956 F.2d 1245, 1255 (2d Cir.1992). "These requirements are not to be taken lightly." Gramercy Advisors at *1.  "'The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" Harrell v. Joshi, 14-CV-7246, 2015 WL 9275683, (S.D.N.Y. December 18, 2005) (Caproni, J.), quoting Rafter v. Liddle, 288 F. App'x 768, 769 (2d Cir. 2008).

"A motion for reconsideration is thus a tough row to hoe, and the Defendants' plough is not up for the task." Gramercy at *1.  Notwithstanding Channel One's protestations, in the period between the original filing of the motions to dismiss and Judge Caproni's decision, there have been no changes in law, no new interpretations of the governing principles from the Second Circuit, or

other decisions of this Court.  The cases upon which Channel One heavily relies were discussed at length in this Court's original opinion.  This motion is in large part a call "to relitigate settled issues, without pointing to any controlling law or fact that the Court overlooked when issuing the original decision." Neske v. New York Department of Education, 19-CV-2933, 2019 WL 5865245 at *4 (S.D.N.Y. Nov. 7, 2019). And Channel One's motion is equally misguided to the extent that it is based on arguments concerning its wholly owned subsidiary, exclusive international distributor and agent CORW.

## II.  THIS COURT SHOULD NOT RECONSIDER JUDGE CAPRONI'S DECISION THAT PERSONAL JURISDICTION IS PROPER IN NEW YORK

In concluding that there was personal jurisdiction over Channel One Judge Caproni observed:

> Here, there is a substantial relationship between Channel One's conduct in New York and Plaintiff's claims. Channel One actively distributed the programs containing the allegedly defamatory statements throughout New York to paid subscribers through its subsidiary CORW. Moreover, Channel One interviewed Plaintiff in its New York studio. Channel One argues that because that interview never aired, it is irrelevant to Plaintiff's claims. See Channel One Mem. of Law, Dkt. 60 at 8-9. The Court disagrees. The interview occurred as part of Channel One's research for the allegedly defamatory programs, and during the interview Plaintiff directly contradicted statements made during Channel One's programs. That interview is probative of Defendant's alleged knowledge of the falsity of the contents of its programs and is, therefore, central to Plaintiff's libel claim. See *Montgomery v. Minarcin*, 263 A.D.2d 665 (3d Dep't 1999) (exercising jurisdiction over the creators of an allegedly defamatory television news report because the operative facts giving rise to plaintiff's claims occurred in New York).

ECF 74 at 17.

Channel One argues that Judge Caproni erred in finding that for purposes of specific jurisdiction CORW was Channel One's agent. That argument ignores both the relevant facts and law. This is **not** a case where an independent third- party acts as a distributor for an unaffiliated content provider. CORW and its corporate parent Channel One are headquartered in the same

office building in Moscow. (Goldfarb May 13, 2019 Aff., ¶ 14 (ECF 63) Alexi Efimov, the Chief

Executive Officer of CORW, was appointed to his position by Channel One and is listed on its

website as one of its major executives. Id. Through the marketing efforts of CORW, its wholly

owned subsidiary and exclusive international distributor, Channel One targets the New York

market to reach and gain advertising revenue from the substantial Russian speaking audience. Id.¶

19, Ex.8 Channel One's Russian language programs are streamed to tens of thousands of paid

cable, satellite and IPTV subscribers in New York through major outlets, including Spectrum,

DirecTV, Optimum and Xfinity. Id.¶ 16

C.P.L.R. §302(a)(1) provided for long- arm jurisdiction over a foreign defendant "who in

person or through an agent…transacts any business within the state …."  Here, CORW, the wholly

owned subsidiary of Channel One, "does all the business which [the parent corporation] could do

if it were here by its own officials." Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184-85 (2d

Cir. 1998). "Courts have interpreted this to mean that the agent's activities in New York must be

sufficiently important to the foreign corporation that if it did not have a representative to perform

them, the corporation's own official would undertake to perform substantially similar services."

Chong v. Healthtronics, Inc., No. CV-06-1287 (SJF)(MLO), 2007 WL 1836831(E.D.N.Y. June

27, 2007); Stutts v. De Dietrich Group, 465 F.Supp.2d 156, 162 (E.D.N.Y. 2006).

These principles were applied in Yousef v. Al Jazeera Media Network, No.16 -cv-6416

(CM), 2016 WL1665231 (S.D.N.Y. Mar. 22, 2018), where the court held that AJMN, a foreign

corporation, was subject to personal jurisdiction in New York pursuant to CPLR§ 302(a)(1) based

on the activities of its wholly owned subsidiary, AJAM. Yousef was a discrimination case and the

plaintiff was employed in New York by AJAM. The Yousef court applied Jazini and determined

that the activities of AJAM were sufficient to establish jurisdiction over AJMN because " in the

4

absence of AJAM, AJMN would have to perform the services its New York based subsidiary provided in order to get its programming … before a United States audience." Id. at * 10. In reaching this conclusion, the court relied on Palmieri v. Estefan, 793 F.Supp. 1182, 1194 (S.D.N.Y. 1992) (activities performed by Sony Music in New York on behalf of foreign affiliates were sufficiently important to them  that if they had no representative their own officials would perform them); Bulova Watch Co., Inc.v. .K. Hattori & Co., Ltd., 508 F.Supp. 1343-44 (E.D.N.Y. 1981)( if subsidiary did not advertise and  market to penetrate and expand the American market then the parent would).

The analysis in these cases is on point. The words of the Yousef court are equally applicable in this case: "[b]ringing [Channel One] programming to New York and American audiences was clearly important to the organizational life of [Channel One] as a whole" and CORW's activities in New York "were driven by [Channel One's] desire to facilitate 'market penetration and viewership". Yousef at * 10. Channel One's marketing arrangement with its subsidiary CORW makes clear that CORW "functioned as part of a "tightly-knit commercial organization of common-owned entities.'" Id., quoting Bialek v. Racal-Milgo, Inc., 545 F.Supp 25, 32 (S.D.N.Y. 1982). See also Ingenito v. Riri USA, Inc., 89 F.Supp.3d 462, 477-78 (E.D.N.Y. 2015) (personal jurisdiction under 302(a)(1) over Swiss parent corporation based on activities of its wholly owned subsidiary which acted as parent's sales and distribution representative in the United States; cause of action for wrongful termination arose from parent's transaction of business in New York through its agent).

In asserting that Channel One Russia Worldwide is not its agent, Channel One primarily relies on the Second Circuit's decision in Mayes v. Leipziger, 674 F.2d 178, 181 (2d Cir. 1982). Channel One's reliance is misplaced.  In Mayes, the Second Circuit stated that "federal district

courts sitting in New York and lower New York state courts have looked to the 'realities' of the situation and have construed 302(a)(1)'s use of the word 'agent' to include any person who, with the consent of the nondomiciliary and under some measure of his control, acts in New York for the benefit of the nondomiciliary." Id. at 181.  "The required control need not rise to the level of absolute control over the acts or decisions of the putative agent; rather, it may involve the ability of the principal to influence such acts or decisions by virtue of the parties' respective roles." Chong, supra at *7; Cavu Releasing Inc. v. Fries, 419 F.Supp.2d 388, 392 (S.D.N.Y. 2005); Scholastic, Inc. v. Stouffer, No. 99 11480, 2000 WL 1154252 (S.D.N.Y. Aug.14, 2000).  Looking to the *realities* of the situation here, it is obvious that CORW, the wholly owned subsidiary of Channel One,  is subject to "*some measure of control*" by Channel One.[1]

Channel One's contention that it is not subject to personal jurisdiction in New York even though it injected its defamatory programming into New York by its wholly owned subsidiary CORW should be rejected out of hand. If this were the law, content-providers anywhere and everywhere could avoid liability for defamation through the corporate shell game of transmitting their content through wholly-owned subsidiaries that are nominally organized under a technically separate legal form. As the cases noted above make clear, this Court is not required to blind itself

---

[1] This is a far cry from Mayes, where the court held that a New York lawyer was not the "agent" of a California law firm sued in a malpractice action because the evidence showed that the lawyer was acting in his client's interests rather than the interests of the California firm. Id. at 182. The other cases cited by Channel One are also readily distinguishable. See Convergen Energy LLC v. Brooks, No. 20-cv-3746 (LJL)("the only meaningful information" before the court was a letter of intent describing the alleged agent as an "affiliate" of the nondomiciliary defendant); Wolo Mfg. Corp. v. ABC Corp., 349 F.Supp. 3d 176, 195-99 (S.D.N.Y. 2018) (conclusory allegations that corporate defendant was agent of corporate officer residing in Florida); Jonas v. Estate of Leven, 116 F.Supp. 314, 328-29 (S.D.N.Y. 2015) (no jurisdiction over French and Swiss individuals based on conclusory allegations); Coast to Coast Energy, Inc. v. Gasarch, 53 N.Y.S.2d 16, 19 (1ˢᵗ Dep't 2017) ( vague, unsubstantiated allegations insufficient for jurisdiction over alleged Swiss principal).

to the "realities" how COR and CORW function in New York as parts of a "tightly-knit commercial organization of common-owned entities".

Channel One also argues that two actions filed by CORW in the Southern District of New York on behalf of Channel One, <u>Joint Stock Company Channel One Russia Worldwide v. Informir, LLC</u>, Case 1:16-cv-01318 (S.D.N.Y. 2016) and <u>Joint Stock Company "Channel One Worldwide" v. Russian TV Company, Inc., et al</u>, Case 1:18 cv-02318 (S.D.N.Y. 2018), do not support CORW's status as Channel One's agent for purposes of specific jurisdiction. In these actions, CORW filed claims arising out of the alleged unauthorized distribution of Channel One's programs in the United States. According to Channel One these filings by CORW prove nothing because in those complaints CORW alleged that Channel One had authorized CORW to represent its interests in the matter. In fact, the filing of these actions by CORW to protect Channel One's interests supports a finding of specific jurisdiction in this case. CORW's filing of actions to protect Channel One's interests are yet another illustration of CORW doing all the business that Channel One would undertake to do in New York but for the fact that CORW is here to provide such services. This also evidences the fact that CORW provides essential services to its corporate parent as part of a tightly knit commercial organization .Far from being irrelevant, the actions filed in this judicial district by CORW further reinforce CORW's status as Channel One's agent for purposes of specific jurisdiction.

In addition to its flawed argument that CORW is not Channel One's agent,  Channel One goes on to repeat its assertion that Judge Caproni failed to properly apply the applicable case law, including <u>Best Van Lines, Inc. v. Walker</u>, 490 F.3d 239, 249 (2d Cir. 2007), which requires, in cases where out-of-state defamatory statements are projected into New York, that the defendant's conduct also include "something more" than distribution. <u>Id.</u> at 249.  Ch. One Mem.at 11-16.

Judge Caproni did not "overlook" <u>Best Van Lines</u>.  Rather, she carefully analyzed and applied <u>Best Van Lines</u> and found  multiple grounds for holding that the required "something more" is present here, including the distribution of Channel One's defamatory programming in New York through its agent CORW, the maintenance of an office and studio in New York, and most importantly, the interview Channel One conducted with Goldfarb from its New York studio.

Dr. Goldfarb has not alleged merely one single act of defamation projected into New York, but multiple repetitions of Channel One's weaponized propaganda to defame and demonize him. The projection of the defamation campaign against Goldfarb is not the result of passive activity by Channel One on the internet that happened to be accessed by New Yorkers.  Rather, Channel One, by its wholly owned subsidiary and agent CORW, distributes its programming for fees to subscribers in the New York area, from which it obtains substantial profits.  As Judge Caproni correctly recognized, "jurisdiction is more likely to lie when the allegedly defamatory statements were purposefully "written in or directed to New York, as opposed to having reached the forum fortuitously, as by an Internet post accessible to anyone." <u>Tannerite Sports, LLC v. NBCUniversal Media LLC</u>, 135 F. Supp. 3d 219, 230-31 (S.D.N.Y. 2015), <u>aff'd sub nom. Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC</u>, 864 F.3d 236 (2nd Cir. 2017).  Channel One's targeting of New York viewers was deliberate and remunerative, not random or fortuitous.

Channel One boldly asserts that "all of the cases cited by the Court in its jurisdictional analysis support Channel One's position, not Plaintiff's." Ch. One Mem. at 13. This assertion blithely ignores the procedural standards applicable to a motion for reconsideration. Channel One sets forth a case-by-case discussion of why, according to Channel One, its interpretation of these cases is right, and Judge Caproni's is wrong.  This sort of advocacy is *never permitted* in such a

motion, as it amounts to nothing more than a plea for a "do-over." See Green v. City of New York, No. 05-CV-0429 (DLI) (ETB), 2006 WL 2516468, at *2 (E.D.N.Y. Aug. 29, 2006) ("The situation presented by defendants' motion for reconsideration is just as plaintiffs describe it in their opposition memorandum of law: "In school yard parlance, defendants' motion would be known as a request for a 'do over.' The 'do over,' and hence defendants' motion for reconsideration, is denied."); Indergit v. Rite Aid, 52 F.Supp.3d at 523 (a motion for reconsideration is not an opportunity "to obtain a second bite at the apple").

Channel One would have this Court conclude that Judge Caproni's analysis of every case she relied on was wrong. As shown below, it is Channel One and not Judge Caproni, that is mistaken.

Judge Caproni cited Legros v. Irving, 38 A.D.2d at 55-56 (N.Y. App. Div. 1971), noting that the court had approved the exercise of jurisdiction over a defamation claim because all the significant actions culminating in the publication of the book occurred in New York, including research and printing, as well as the negotiation and execution of the publishing contract. ECF 74 at 15. Channel One argues that there was qualitatively more New York based activity in Legros than here. This sort of nitpick does not matter. Judge Caproni *assumed* all that Channel One now presses, observing that Legros noted that "all significant actions culminating in publication" took place in New York. Id. at 15. But she invoked Legros, and the numerous other cases it cited, for the far more modest point that New York law supports the proposition that the "something more" required under Best Van Lines may be satisfied when *in part* there is significant New York activity leading to the defamatory publication in New York: "The requirement that the Defendant do 'something more' is satisfied *when at least part* of the defamatory content was created, researched, written, developed, or produced in New York." Id. at 14 (emphasis added). Is Legros an easier

case because more of the pre-publication activity occurred in New York than here?  Maybe, maybe

not.  Is it error requiring Judge Caponi's decision to be reversed that <u>Legros</u> supported the

proposition for which she cited it, though it may have been a more extreme case?  Absolutely not.

Channel One next rebukes Judge Caproni for quoting <u>Biro v. Nast</u>, No. 11 Civ. 4442, 2012

WL 3262770 (S.D.N.Y. Aug. 10, 2012)  for the proposition that "courts have typically found long-

arm jurisdiction over defamation claims where the defendant engaged in some purposeful activity

within New York that was directly related to the creation of the allegedly defamatory work."  <u>Id.</u>

<u>Biro</u> does not say that *all* the purposeful activity must be within New York, only that *some* of it

must be.  <u>Biro</u> at 2012 WL 3262770 at *13 ("It is undisputed that at least some portion of FAR's

investigation of Biro took place in New York (particularly the analysis of the Parkers' painting),

and that Franks traveled to New York at least once in connection with that investigation.").

Channel One does not dispute the accuracy of the quotation from <u>Biro</u>.  The best Channel

One can do is fuss over whether the "directly related" element recited in <u>Biro</u> aligns factually with

the proposition that Channel One's interview of Goldfarb was "directly related" to the defamatory

broadcasts here.  That question was definitively analyzed and answered by Judge Caproni. *Of*

*course,* the interview that Dr. Goldfarb gave to Channel One was *directly related* to its broadcast.

That Channel One ignored the compelling statements Dr. Goldfarb made in that interview entirely

discrediting the defamatory smear campaign against him only strengthens the required nexus, and

his entire case.  <u>See</u> ECF 74 at 14-16.  Once again Channel One argues that the intersections with

New York in <u>Biro</u> were greater than in Goldfarb's case. Such fine factual distinctions and

disagreements are not the sterner stuff required in Motions for Reconsideration.[2]

---

[2] <u>See</u> WILLIAM SHAKESPEARE, JULIUS CAESAR, Act III, Sc. ii ("Ambition should be made of sterner
stuff.")

Channel One similarly complains that Judge Caproni "also misapplied Shamoun v. Mushlin, No. 12 Civ. 3541, 2014 WL 12776779 (S.D.N.Y. Mar. 26, 2014). Channel One is wrong. Judge Caproni  merely quoted, accurately, what Shamoun stated: "Plaintiff must show that the defendant engaged in some purposeful activity within New York that was directly related to the creation of the allegedly defamatory work, such as research, writing, printing, or broadcasting." Id. at 14.  In Shamoun this standard was not satisfied.  As Judge Caproni carefully explained, however, in this case the standard has been satisfied:

> Finally, and most significantly, Channel One's New York-based correspondent, Zhanna Agalakova, interviewed Plaintiff in Channel One's New York studio on March 23, 2018, in connection with several of the programs that are at issue in this case. Id. ¶ 94. Over the course of the interview, Plaintiff "gave a detailed rebuttal to Walter's accusations and to the false background narrative," and informed Ms. Agalakova that the UK inquiry had found that Lugovoy and Kovtun murdered Litvinenko. Id. Despite having Plaintiff's taped interview, Channel One broadcast the allegedly defamatory allegations that directly contradicted Plaintiff's statements in three programs in March and April 2018, all after Goldfarb's interview, without ever airing or disclosing Plaintiff's contrary statements. Thus, although Plaintiff's interview never aired, it constitutes activity in New York directly related to the creation of the allegedly defamatory statements subsequently broadcast by Channel One. *Compare Symmetra Pty Ltd. v. Human Facets*, LLC, No. 12-CV-8857, 2013 WL 2896876, at *6 (S.D.N.Y. June 13, 2013) ("jurisdiction is more likely to lie when the defendant's contacts with New York were in preparation for the defamatory statement—for example, staying in New York to research a defamatory book or news broadcast) with *Trachtenberg v. FailedMassiah.com*, 43 F. Supp. 3d 198, 202 (E.D.N.Y. 2014) (dismissing defamation claim under § 302 because defamatory content was not "based on research physically conducted in New York"). Because Plaintiff participated in an interview conducted by Channel One in New York, purportedly as part of Channel One's research or preparation for its subsequent allegedly defamatory programs, it is subject to personal jurisdiction in New York.11 *See Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 234 (S.D.N.Y. 2015), *aff'd sub nom. Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017) (dismissing a defamation case for lack of jurisdiction because, among other things, Plaintiff failed to show that employees of defendant "who assisted in the broadcast interviewed any people in New York or relied on any sources in New York in connection with the creation or broadcast of the [ ] report.").

ECF 74 at 15-16.  Channel One complains that somehow this passage erroneously applied three of the cases cited within it, <u>Symmetra</u>, <u>Trachtenberg</u>, and <u>Tannerite</u>, and provides its own views of the true meaning of those precedents.

Judge Caproni correctly cited <u>Symmetra</u> and <u>Trachtenberg</u> as *foils* to illustrate a key pivot point, using the introductory signal "*compare*" to contrast research activity in preparation of a defamatory article that *does* have physical connection to New York (<u>Symmetra</u>) with activity that does not (<u>Trachtenberg</u>).  The comparison underscored the significance of the interview of Dr. Goldfarb conducted at Channel One's New York studio on West 57th Street by Channel One's New York-based correspondent, Zhanna Agalakova. The citation to <u>Tannerite</u> *was* for the same purpose, to *contrast* what was missing in <u>Tannerite</u> from what was present in this case—activity by journalists interviewing sources in New York.  Moreover, in this case it was not just *any* witness being interviewed, but the plaintiff himself, the target of the defamatory smear Channel One was preparing.

Channel One reveals its true colors, and in so revealing destroys its request for reconsideration, by articulating its *real* argument, which is that the West 57th Street interview does not count.  *That* is, at the end of the day, the lynchpin to Channel One's argument.  Here is what Channel One wrote in its Motion for Reconsideration:

> Yet, the West 57th Street facility itself bears no logical relationship—much less a "direct" or "substantial" relationship—to the content of the alleged defamatory utterances giving rise to Plaintiff's claims. It is uncontested that the comments on Channel One's television shows Plaintiff considers defamatory were uttered solely in Moscow, on shows that were entirely edited and produced in Moscow, not at the West 57th Street facility. Orlov Decl. ¶ 6, ECF 54-1; Nasonova Decl. ¶ 6, ECF 62. Likewise, it is uncontested that Plaintiff's interview from the West 57th Street facility never aired, and thus logically cannot bear a "direct" or "substantial" relationship in the creation of the defamatory content. Compl. ¶ 94 ("Nothing from this interview ever appeared on air."); id. ¶ 124 ("Channel One never used the interview").

Ch. One March 18, 2020 Mem. at 5-6.  Channel One's argument that the West 57th Street interview does not count is *exactly* the same argument upon which Channel One relied in its initial motion to dismiss. This is *exactly* the same argument that Judge Caproni analyzed and rejected.  ECF 74 at 17 ("Channel One argues that because that interview never aired, it is irrelevant to Plaintiff's claims. See Channel One Mem. of Law, Dkt. 60 at 8-9. The Court disagrees.")

The fact that Channel One's argument was considered and rejected, and rightly so, suffices to defeat reconsideration.  But there is a more profound problem with Channel One's argument. Dr. Goldfarb's Complaint, considered in its entirety, alleges that Channel One knowingly and intentionally set out, from the beginning, to discredit him and assign blame for Alexander Litvinenko's murder on him in order to obfuscate and deflect the consensus in the United Kingdom and the United States that the Russian government was responsible both for  Litvinenko's murder and the poisoning of former Russian military intelligence officer Sergei Skripal and his daughter in England in March 2018.  In furtherance of this dark and malevolent campaign of character assassination, Channel One interviewed Dr. Goldfarb in Manhattan.  That Channel One never included any of his irrefutable statements in that interview—statements disproving the validity of the pre-conceived hit job Channel One was orchestrating against him—cannot, in law or logic or moral principle, now be used *against Dr.* Goldfarb as he seeks redress for the reputational harm caused by Channel One's callous, knowing, and reckless disregard of his elemental human right to his dignity and good name.  Gertz v. Robert Welch, Inc., 418 U.S. 323, 341 (1974) ("The individual's right to the protection of his own good name 'reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty. The protection of private personality, like the protection of life itself, is left primarily to the individual States under the Ninth and Tenth Amendments. But this does not

mean that the right is entitled to any less recognition by this Court as a basic of our constitutional system.'"), quoting Rosenblatt v. Baer, 383 U.S. 75, 92 (1966) (Stewart, J., concurring).

### III.   THIS COURT SHOULD NOT RECONSIDER JUDGE CAPRONI'S *FORUM NON CONVENIENS* DECISION

Channel One's attack on Judge Caproni's denial of its motion to dismiss on *forum non conveniens* grounds is based on its assertion that her decision "was shaped, in large part, by its erroneous conclusion that personal jurisdiction exists." Ch. One Nov. 6 Mem.at 17. Because as shown above Channel One is mistaken, and Judge Caproni's decision concerning personal jurisdiction was correct, its attack fails. Channel One's brief on this point is essentially a rehash of its prior arguments with the addition of weaving in its mistaken assertion that Channel One is not subject to personal jurisdiction in New York. Id. at 17-21. The cases Channel One cites and the arguments it makes were considered and rejected by Judge Caproni. But a motion for reconsideration "is not one in which a party may reargue 'those issues already considered when a party does not like the way the original motion was resolved.'" McCullagh v. Merrill Lynch & Co., No. 01 Civ. 7322 DAB, 2004 WL 744484, at *1 (S.D.N.Y. Apr. 7, 2004). quoting In re Houbigant, Inc., 914 F. Supp. 997, 1001 (S.D.N.Y. 1996).

Channel One again argues that Dr. Goldfarb's choice of a New York forum is not entitled to respect because he resides in New Jersey.  This is nothing more than an attempt to relitigate this Court's sound conclusion that for *forum non conveniens* purposes any federal district in which a foreign entity is subject to jurisdiction is the "home forum" for an American plaintiff. ECF 74 at 7. Channel One's argument was legally wrong in the first round, and it remains legally wrong now. As Judge Caproni explained:

> Because one of the factors that "necessarily affects a plaintiff's choice of forum is the need to sue in a place where the defendant is amenable to suit," courts do not "withhold deference for the plaintiff's choice merely because she did not sue in her

home district." <u>Iragorri</u>, 274 F.3d at 71-73 (explaining that it would "make little sense to withhold deference" for a "hypothetical plaintiff residing in New Jersey, who brought suit in the Southern District of New York, barely an hour's drive from the plaintiff's residence, because the defendant was amenable to suit in the Southern District but not in New Jersey."); <u>Guidi v. Inter-Continental Hotels Corp</u>, 224 F.3d 142, 146 (2d Cir. 2000) (the "home forum" of an American citizen for forum non conveniens purposes is any "United States court").

<u>Id.</u> at 7. Channel One's attempt to distinguish <u>Iragorri v. United Technoligies Corp.</u>, 274 F.3d 65, 73–74 (2d Cir. 2001) (en banc) was rejected by Judge Caproni, and should be rejected again, as Channel One's claim that it is not amenable to suit in this Court is without merit..

Channel One also disputes Judge Caproni's conclusion that "a court may decline to dismiss on FNC grounds if the proposed alternative forum would be dangerous for the plaintiff."  ECF 74 at 8. Judge Caproni clearly explained the basis for that ruling:

> The Court credits Plaintiff's purported fear of returning to Russia, including concerns that he would be imprisoned or physically harmed. 9 Goldfarb Aff., Dkt. 63 ¶¶ 4-7. Plaintiff's fears are supported by Yuri Shvets, a former KGB agent who was granted political asylum in the United States and has served as an expert on Russia and Ukraine in numerous federal and immigration court cases. Shvets Aff., Dkt. 65 ¶¶ 1-4. Shvets states that Plaintiff's activities "exposing grave crimes committed by the top representatives of the Putin regime earn him a place near the top of the FSB's enemy list" and that his "life and/or freedom would be in grave danger if he enters Russia." Id. ¶ 19. In short, Russia is not an adequate alternative forum to resolve Plaintiff's claims.

<u>Id.</u> at 9.

Channel One once again repeats its extreme claim that a forum may be deemed inadequate *only* if a plaintiff points to credible evidence that the plaintiff has been threatened or experienced past harm there.  According to Channel One, unless Dr. Goldfarb can claim that Russia threatened him in the past, he is now required to risk being imprisoned or killed by the Putin regime.  This is not the law, and the cases cited by Channel One, all of which were cited in the opinion of this Court, stand for no such draconian proposition.

This lawsuit arises from Russia's complicity in the poisoning murder of Dr. Goldfarb's close friend, Alexander Litvineko, followed by Channel One, a mouthpiece for the Russian Government of Vladimir Putin, attempting to pin the murder on Goldfarb.  That Goldfarb would fear for his life were he to return to Russia is entirely credible.  The cases invoked by Channel One require nothing more.

No showing of more existed in Rasoulzaeh v. Associated Press, 574 F. Supp. 854, 861 (S.D.N.Y. 1983), where the court expressed the concern that the plaintiffs would be harmed in the future if forced to litigate in Iran.  No showing of more was required by the Sixth Circuit in Rustal Trading US, Inc. v. Makki, 17 F. App'x 331, 335 (6th Cir. 2001), in which the court stated that "a well-founded *fear* of persecution . . .may render the forum inadequate." In Cabiri v. Assasie-Gyimah, 921 F. Supp. 1189 (S.D.N.Y. 1996), as Channel One notes, the plaintiff had previously been harmed in Ghana, but nothing in the decision in Cabiri describes that prior harm as a *sine qua non* to the grant of *forum non conveniens* relief; to the contrary, the court articulated its reasoning in far broader language, observing that "to force plaintiff to bring this action in Ghana would unnecessarily put him in harm's way." Id. at 1199. See also Wye Oak Tech., Inc. v. Republic of Iraq, 941 F. Supp. 2d 53, 57–58 (D.D.C. 2013) (a "court will not force plaintiffs to litigate in a forum where they would face a particularized and "serious risk to their safety."); Doe v. Exxon Mobil Corp., 393 F.Supp.2d 20, 29 (D.D.C. 2005) (dismissal for *forum non conveniens* denied where plaintiffs showed that they faced "a genuine risk of reprisals" if they litigated in Indonesia against the military).

Judge Caproni has already rejected Channel One's breezy confidence that Dr. Goldfarb has nothing to fear if he were to travel to Russia. She cited the evidence that Dr. Goldfarb's accusations against the top representatives of the Putin regime "earn him a place near the top of the FSB's

enemy list" and thus his "life and/or freedom would be in grave danger if he enters Russia."  ECF 74 at 9.  Judge Caproni also correctly cited the law governing these assertions. On a motion to dismiss for *forum non conveniens*, a court must accept the facts alleged in the complaint as true. See, e.g., Aguas Lenders Recovery Grp. LLC v. Suez, S.A., 585 F.3d 696, 697 (2d Cir. 2009). The court may also consider certain evidence outside the pleadings, including affidavits. See id. at 697–98 n.1; RIGroup LLC v. Trefonisco Mgmt. Ltd., 949 F. Supp. 2d 546, 549 (S.D.N.Y. 2013), aff'd, 559 F. App'x 58 (2d Cir. 2014). Id. at 9, n. 9.  Judge Caproni was right then and remains right now.

Channel One claims, without case citation, that, despite Judge Caproni's finding that the Russian regime is so hostile to Dr. Goldfarb that it would be dangerous for him to go there, Russia is an adequate alternative forum because he could supposedly pursue his case in abstentia. That argument is offensive and absurd. The hostility found by Judge Caproni would certainly prevent Dr. Goldfarb from receiving a fair hearing from courts controlled by Putin. (Hooper Aff. ECF 64)

## IV.  THIS COURT SHOULD NOT RECONSIDER JUDGE CAPRONI'S DECISION THAT JURISDICTION IS PROPER UNDER THE DUE PROCESS CLAUSE

The short answer to Channel One's due process argument is that since, as shown above, there is personal jurisdiction over it pursuant to CPLR§302(a)(1), a provision for specific jurisdiction that does extend as far as the Constitution permits, the exercise of jurisdiction does not offend due process. Yousef, supra, at *14. As stated by the Second Circuit, while "personal jurisdiction permitted under the long-arm statute may theoretically be prohibited under due process, we would expect such cases to be rare." Licci v. Lebanese Canadian Bank, 732 F.3d 161,170 (2d Cir. 2013); Eades v. Kennedy P.C. Law Offices, 799 F.3d 161 (2d Cir. 2015)(same).In light of Channel One's extensive contacts with New York, both in its own right and through its

agent CORW, this is hardly that "rare" case. Channel One, which derives substantial revenues from the broadcasts of its programming in New York, has no valid complaint about being required to defend this action here.

The cases cited by Channel One in its argument that this Court should reconsider Judge Caproni's decision that subjecting Channel One to jurisdiction in New York does not violate the Due Process Clause do not come close to establishing that this is the "rare" case where such a holding is theoretically possible. Channel One relies heavily on J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873, 877 (2011). To begin, McIntyre is not some new development in the law—it was decided in 2011. Substantively, McIntyre has nothing to do with the factual paradigm here. The question posed in McIntyre was "[w]hether a person or entity is subject to the jurisdiction of a state court *despite not having been present in the State either at the time of suit or at the time of the alleged injury*," could be subject to jurisdiction consistent with the Due Process Clause. Id. at 877 (Plurality Opinion) (emphasis added). In McIntyre, the Court reaffirmed the elemental notion that "[p]resence within a State at the time suit commences through service of process is another example" of circumstances sufficient to establish jurisdiction. Id. at 877. In contrast, Channel One was *admittedly* present in New York at the time of the tortious conduct and the time of this action.

McIntyre was a products liability case in which a British defendant's machine found its way into New Jersey through an independent distributor. In finding the manufacturer's contacts with New Jersey insufficient to support jurisdiction, the Court emphasized that "[t]he British manufacturer had no office in New Jersey; it neither paid taxes nor owned property there; and it neither advertised in, nor sent any employees to, the State." Id. at 886. Indeed, the Court noted,

"the defendant does not have a *single contact* with New Jersey short of the machine in question ending up in this state.'" Id. (quoting the trial court) (emphasis added).

This case bears no comparison to McIntyre.  Channel One's defamatory broadcasts were directed into New York through its wholly owned subsidiary and agent CORW. Judge Caproni correctly credited the allegations "that Channel One, by its subsidiary and agent Channel One Russia Worldwide ('CORW'), contracts to distribute its programming through platforms such as RCN New York, DirecTV, Comcast, Charter, Verizon Services Corp., Comcast-ATT, Cox, and Frontier Communications to subscribers throughout New York."  ECF 74 at 15.  As already noted, under the New York long-arm statute and constitutional due process jurisprudence, a party may be subject to jurisdiction through the actions of its agent.  See CPLR § 302(a)(1) (a court may exercise specific jurisdiction over a non-domiciliary that "in person *or through an agent* . . . transacts any business within the state") (emphasis added); CutCo Industries v. Naughton, 806 F.2d at 366 (1986) ("To be considered an agent for jurisdictional purposes, the alleged agent must have acted in the state "for the benefit of, and with the knowledge and consent of" the non-resident principal."), citing Grove Press, Inc. v. Angleton, 649 F.2d 121, 122 (2d Cir.1981); Plaza Realty Investors v. Bailey, 484 F. Supp. 335, 347 (S.D.N.Y. 1979); Louis Marx & Co. v. Fuji Seiko Co., Ltd., 453 F. Supp. 385, 390 (S.D.N.Y. 1978).

Moreover, as Judge Caproni correctly observed, Channel One has purposefully availed itself of New York law through numerous actions in addition to the distribution of its defamatory content at issue here:

> Here, Channel One has purposefully availed itself of the privilege of conducting business within the forum state by maintaining a studio and at least one full-time employee in New York and by distributing its programming to paying subscribers throughout New York. Moreover, Channel One operates its studio and distributes its programming in and throughout New York entirely independently of Plaintiff's claims. Walden v. Fiore, 571 U.S. 277, 285 (2014) ("the plaintiff cannot be the only

link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum ..."). In short, the exercise of jurisdiction over Channel One comports with due process.

ECF 74 at 18. This Court's Due Process Clause analysis was entirely sound, and should not be reconsidered.

### V.   THIS COURT SHOULD NOT CERTIFY AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b).

#### A. The § 1292(b) Standards Presumptively Disfavor Certification

It is a basic tenet of federal law to delay appellate review until a final judgment has been entered." Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir. 1996).  Interlocutory appeal "is a rare exception."  Id.   Under that "rare exception," a district court may only certify an immediate appeal of an interlocutory order if it finds that the order (1) "involves a controlling question of law" (2) "as to which there is a substantial ground for difference of opinion" and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  All three conditions must be satisfied. SEC v. Gruss, No. 11-Civ.-2420, 2012 WL 3306166, at *1 (S.D.N.Y. Aug. 13, 2012) ("The criteria for certifying a question under § 1292(b) 'are conjunctive, not disjunctive.'"); SPL Shipping Ltd. v. Gujarat Cheminex Ltd., No. 06-Civ.-15375 (KMK), 2007 WL 1119753, at *1 (S.D.N.Y. Apr. 12, 2007). Certification under Section 1292(b) "is not intended as a vehicle to provide early review of difficult rulings in hard cases." Abortion Rights Mobilization, Inc. v. Regan, 552 F. Supp. 364, 366 (S.D.N.Y. 1982).  "The Second Circuit has repeatedly cautioned that certification 'should be strictly limited because only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" Century Pac., Inc. v. Hilton Hotels Corp., 574 F. Supp. 2d 369, 372 (S.D.N.Y. 2008), quoting Flor v. BOT Fin. Corp., 79 F.3d 281, 284 (2d Cir. 1996). Interlocutory appeals are "presumptively disfavored," Youngers

v. Virtus Inv. Partners Inc., 228 F.Supp.3d 295, 298 (S.D.N.Y. 2017), and only "exceptional circumstances" will justify departure from the general rule of waiting for a final judgment to appeal an interlocutory order.  Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 25 (2d Cir. 1990).  And "even when the elements of section 1292(b) are satisfied, the district court retains 'unfettered discretion' to deny certification." Garber v. Office of the Comm'r of Baseball, 120 F.Supp.3d 334, 337 (S.D.N.Y. 2014).

### B.  No "Pure" Questions of Law are Presented

Channel One cannot meet the demanding § 1292(b) standards.  Certification requires a *pure* question of law.  A question of law "must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." Century Pacific, 574 F. Supp. 2d at 37, quoting In re Worldcom, Inc., No. M-47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003). See also Gruss, 2012 WL 3306166, at *2. An order presenting "a mixed question of law and fact, not a controlling issue of pure law" is "not appropriate for certification." Century Pacific, 574 F. Supp. 2d at 37, quoting Abortion Rights Mobilization, 552 F. Supp. at 366.

By definition, neither this Court's rulings on *forum non conveniens* nor its rulings on personal jurisdiction satisfy the "pure question of law" standard.  Channel One's arguments on both issues would require the Second Circuit to investigate and apply the record.  That is a disqualifier.  "[R]esolving that question would necessarily require the Court of Appeals to delve into the record." McGraw-Hill, 293 F. Supp. 3d at 399. "Indeed, a question that 'turns on the . . . assessment of the pleadings, is not a 'pure question of law' suited for interlocutory appeal.'" Id., quoting Picard v. Estate of Madoff, 464 B.R. 578 (S.D.N.Y. 2011).  See also In re Lloyd's Am. Trust Fund Litig., 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997) ("As a general matter, rulings on the sufficiency of pleadings are not appropriate for interlocutory appeal.").

The precedent on this point is crystalline as applied to a district court's application of law to fact on matters such as the existence of personal jurisdiction. Such determinations do not present pure questions of law. This Court's rejection of Channel One's challenge to personal jurisdiction is thus "not a pure question of law suitable for interlocutory appeal for the same reasons set forth above—i.e., because it simply challenges the sufficiency of the Complaint's allegations as to personal jurisdiction." McGraw-Hill, 293 F. Supp. 3d at 400, citing Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 866 (2d Cir. 1996) (observing that while interlocutory orders may involve issues of in personam jurisdiction, "§ 1292(b) was not meant to substitute an appellate court's judgment for that of the trial court"); Shovah v. Mercure, 2013 WL 5934310, at *2 (D. Vt. Nov. 5, 2013) (finding interlocutory appeal unwarranted where court's conclusion that the facts supported the exercise of personal jurisdiction did not involve a novel or unsettled area of law).

Every issue raised by Channel One, from whether Russia is or is not a dangerous and therefore inadequate forum for *forum non conveniens* purposes, to whether CORW acted as Channel One's agent in New York, to the role of the interview of Dr. Goldfarb at Channel One's West 57th Street New York studio, require detailed application of law to fact. This renders these issues out of bounds under § 1292(b). See Koehler, 101 F.3d at 866. ("Moreover, since the exercise of personal jurisdiction over a foreign parent corporation through a resident subsidiary is a question of law which turns on a thorough examination of the facts defining the relationship between the two corporations, we are reluctant to rely on what may turn out to be an incomplete record to clarify legal doctrine for the district court's guidance."); McGraw-Hill, 293 F. Supp. 3d at 400 ("And to the extent that iBestBargains challenges this Court's assessment of whether that prima facie showing has been made, the question of whether the pleadings, affidavits, and supporting materials support a finding of jurisdiction is 'not a question of law at all.'"), quoting Hecklerco,

LLC v. YuuZoo Corp., 258 F.Supp.3d 350, 357 (S.D.N.Y. 2017); Retail Pipeline, LLC v. JDA Software Group, Inc., Case No. 2:17–cv–00067, 2018 WL 2298355 (D. Vt. May 21, 2018) ("To the extent Defendant challenges the court's conclusion that Plaintiffs met this burden, 'the question of whether the pleadings, affidavits, and supporting materials support a finding of [personal] jurisdiction is not a question of law at all.'"), quoting McGraw–Hill, 293 F. Supp. 3d at 400.

### C. Mere Disagreement with Judge Caproni's Rulings Does Not Meet the Standard

Certification is not permitted when the issue is simply "whether the trial court properly applied the law to the facts." Abortion Rights Mobilization, 552 F. Supp. at 371-72. See also In re Ambac Financial Group Sec. Litig., 693 F. Supp. 2d 241, 285 (S.D.N.Y. 2010); In re World Trade Center Disaster Site Litigation, 469 F. Supp. 2d at 145 (S.D.N.Y. 2007); SEC v. First Jersey Securities, 587 F. Supp. 535, 536 (S.D.N.Y. 1984). "The requirement that a certified order contain substantial ground for difference of opinion cannot be met simply because one party is dissatisfied with the Court's ruling, any more than it can be defeated simply because the Court believes itself to be correct. Gramercy at *4. See also In re Citigroup Pension Plan ERISA Litig., No. 05–CV–5296(SAS), 2007 WL 1074912, at *2 (S.D.N.Y. Apr. 4, 2007); Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP, No. 11–CV-5994 (CM), 2012 WL 2952929, at *8 (S.D.N.Y. July 18, 2012). Instead, "[t]he requirement of § 1292(b) that there be a 'substantial ground for difference of opinion' is satisfied where (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult, and one of first impression in the Second Circuit." In re Trace Int'l Holdings, Inc., No. 04–CV1295 (KMW), 2009 WL 3398515, at *3 (S.D.N.Y. Oct. 21, 2009).

No conflicting authority on the issues presented by Channel One exists. Nor are any of the issues matters of first impression in the Second Circuit. To the contrary, Channel One's submissions are quintessential examples of attempts to do what § 1292(b) jurisprudence forbids—

granting a disgruntled litigant an interlocutory appeal solely because of the litigant's disgruntlement.

A district court's application of law to fact to determine that personal jurisdiction exists plainly does not qualify as a "controlling question of law as to which there is a substantial ground for difference of opinion" under § 1292(b).  Such rulings on personal jurisdiction are not appropriate for interlocutory appeal.  Were the law otherwise, every routine decision of courts determining that personal jurisdiction exists would be immediately appealable.  See Hecklerco, 258 F.Supp.3d at 357 ("As an initial matter, the 'controlling question of law as to which there is substantial ground for difference of opinion' on which the YuuZoo Defendants rely is not a question of law at all. 28 U.S.C. Section 1292(b). The YuuZoo Defendants simply disagree that the factual record supports the Court's exercise of jurisdiction over them.").  What was true in Hecklerco is true here.   Channel One does not care for this Court's rulings and wants an interlocutory appeal.  As the court in Hecklerco explained: "The YuuZoo Defendants now argue that the Court was wrong because 'the facts cannot support a finding of specific jurisdiction.' (Memorandum at 5.) In other words, the YuuZoo Defendants seek appellate review of a decision concerning a factual determination with which they disagree. Because interlocutory appeal "is not intended as a vehicle to provide early review of difficult rulings in hard cases," In re Levine, 2004 WL 764709, at *2, the YuuZoo Defendants' motion for interlocutory appeal must be denied." Hecklerco, 258 F.Supp.3d at 357, quoting In re Levine, No. 94-44257, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004).

24

## CONCLUSION

"[J]ustice delayed is justice denied." United States v. Bert, 814 F.3d 70, 83 (2d Cir. 2016).

Given the many delays that have already encumbered this litigation, the pending motions should

be summarily rejected.  Context matters.  This is a case in which *liability* is essentially a forgone

conclusion.  There is no *conceivable* basis for challenging the egregious and monumental falsity

of the publications.  Dr. Goldfarb stands accused by Channel One of complicity in the murder of

Alexander Litvinenko and Dr. Goldfarb's own wife.  These heinous and monumental lies have

already been *conclusively proven false* by high tribunals in the United Kingdom, as Judge Caproni

correctly noted. ECF 74 at 3.  Channel One is the Russian government's puppet for the propagation

of the most cynical and manipulative propaganda.  There is no *conceivable* basis for any claim that

this brazen defamation was published with anything other than knowledge of falsity and reckless

disregard for truth or falsity. Dr. Goldfarb has alleged that Channel One knew full well (as

everyone with any grounding in truth or reality knows) that its smear campaign was a lie, advanced

to deflect guilt and responsibility from Vladimir Putin and the Russian government for the vicious

murder of Litvinenko and the 2018 poisonings of Sergei Skripal and his daughter.

For these reasons, Dr. Goldfarb respectfully urges this Court to deny the pending motions

and provide for merits discovery to proceed as expeditiously as practicable.

Dated: November 24, 2020
New York, New York

ROTTENBERG LIPMAN RICH, P.C.

By: _____
Bertrand Sellier, Esq.
230 Park Avenue, 18th Floor
New York, New York 10169
T: (212) 661-3080
F: (646) 203-0281
bsellier@rlrpclaw.com
-and-
Rodney A. Smolla, Esq.
Delaware Law School
4601 Concord Pike
Wilmington, Delaware 19803-1406

*Attorneys for Plaintiff*
*Alex Goldfarb*