UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                      :

ALEX GOLDFARB,                             :
                                                      :

                  Plaintiff,           :

                                                       :        18 Civ. 8128 (JPC)

        -v-                           :

                                                      :        OPINION

CHANNEL ONE RUSSIA and RT AMERICA a/k/a  :        AND ORDER
ANO TV-NOVOSTI,                       :
                                                      :

                  Defendants.      :
                                                      :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff Alex Goldfarb ("Goldfarb") brings this defamation action alleging that Defendant

Channel One Russia ("Channel One") broadcasted four television programs that falsely implicated

him in a 2006 murder of a Russian dissident in London.  After the Honorable Valerie E. Caproni,

to whom this case was formerly assigned, denied Channel One's motion to dismiss the Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and *forum

non conveniens* on March 4, 2020, Dkt. 74 (the "March 4, 2020 Order"), Channel One moved for

reconsideration of that Order.  Judge Caproni held that motion in abeyance and ordered

jurisdictional discovery, during which period this case was reassigned to the undersigned.  With

jurisdictional discovery now concluded, Channel One has renewed its motion for reconsideration.

Alternatively, Channel One requests certification of the March 4, 2020 Order for an interlocutory

appeal pursuant to 28 U.S.C. § 1292(b).

      For reasons stated below, the Court concludes that Channel One fails to meet the stringent

standard for reconsideration, but instead largely rehashes arguments that were thoroughly

considered and rejected by Judge Caproni in her March 4, 2020 Order.  Nor has Channel One

satisfied section 1292(b)'s requisites for an interlocutory appeal of that Order.  Accordingly,

Channel One's motion for reconsideration and petition for an interlocutory appeal are denied.

## I. Background

### A. Factual Allegations

Goldfarb filed the Complaint in this action on September 7, 2018, pleading two counts of libel *per se* and one count of intentional infliction of emotional distress against Channel One. Dkt. 5 ("Compl." or "Complaint") ¶¶ 115-134. Below, the Court briefly summarizes the Complaint's factual allegations. Because the motion for reconsideration concerns the denial of Channel One's motion to dismiss pursuant to Rule 12(b)(2), the facts alleged in the Complaint are presumed to be true for purposes of this motion. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013). In sum, the allegations concern Channel One's broadcasting of four programs, during which guests and hosts made statements—which Channel One knew were false—that accused Goldfarb of being involved in the murder of Russian dissident Alexander Litvinenko ("Litvinenko") in London on November 23, 2006. Compl. ¶¶ 1, 83-90, 96, 99-107. By publishing these programs around the world, including in the United States, Goldfarb asserts that Channel One caused him reputational and emotional harm. *Id.* ¶¶ 108, 110-113.[1]

#### 1. The Death of Alexander Litvinenko

Litvinenko, a former officer of the Russian Federal Security Service ("FSB"), fled Russia to London on November 1, 2000, on account of political unrest in Russia. *Id.* ¶¶ 18, 24. While in London, Litvinenko wrote two books critical of the Russian government, *id.* ¶ 25, and worked as a consultant for the British Secret Service, *id.* ¶ 28. In connection with his work with the British

---

[1] The Complaint also alleges libel *per se* and intentional infliction of emotional distress against Defendant RT America for its April 1, 2018 broadcast of a studio interview in which the interviewee, Litvinenko's father, Walter Litvinenko, similarly implicated Goldfarb in his son's death. Compl. ¶¶ 115-126, 132-134. On September 1, 2020, Goldfarb voluntarily dismissed his claims against RT America. Dkt. 91. Accordingly, the Court recites the factual and procedural background primarily as it pertains to Channel One.

Secret Service, Litvinenko allegedly uncovered connections between certain Russian criminals and the Russian government. *Id.* ¶¶ 28-29. Goldfarb, a resident of New Jersey who had become friends with Litvinenko during trips to Moscow in the 1990s, was at the time the Chief Executive Officer of a non-profit corporation which provided grants to Litvinenko for his books. *Id.* ¶¶ 11, 20, 30.

On November 1, 2006, Litvinenko met at a London bar with Andrey Lugovoy, a former KGB officer, and Dmitry Kovtun. *Id.* ¶¶ 21, 32. Litvinenko and Lugovoy had been discussing a possible business venture that would have involved providing due diligence reports on Russian figures. *Id.* ¶ 31. That same night, Lugovoy and Kovtun returned to Moscow, and Litvinenko became sick and was later hospitalized from what was determined to be Polonium-210 poisoning. *Id.* ¶¶ 32, 34-35. Litvinenko died on November 23, 2006. *Id.* ¶ 35. The morning after Litvinenko's death, Goldfarb, standing next to Litvinenko's father, Walter Litvinenko, read a signed statement that Litvinenko wrote on November 21, 2006, which accused Russian President Vladimir Putin of ordering his poisoning. *Id.* ¶ 36.

On May 28, 2007, Russia denied the U.K. government's request that Russia extradite Lugovoy to stand trial for Litvinenko's murder. *Id.* ¶ 37. That same month, Goldfarb and Litvinenko's wife published a book titled *Death of a Dissident: The Poisoning of Alexander Litvinenko and Return of the KGB*, which advanced the theory that Lugovoy and Kovtun had poisoned Litvinenko on Putin's orders. *Id.* ¶ 38. In 2011, the U.K. government issued an international arrest warrant for Kovtun stemming from his suspected involvement in Litvinenko's death. *Id.* ¶ 39.

From 2007 to early 2012, Walter Litvinenko publicly blamed the Russian government for his son's murder. *Id.* ¶ 45. This all changed abruptly, however, starting on February 2, 2012, when Channel One and RT America aired interviews of Walter Litvinenko during which he accused his son of being a traitor. *Id.* ¶¶ 46-47. Then, in a May 31, 2012 interview with RT America, Walter

Litvinenko publicly implicated Goldfarb in his son's murder. *Id.* ¶ 48. The Complaint implies that Walter Litvinenko, who was facing a dire financial situation in Italy and had recently lost his wife, changed his story because he received passage to return to Russia as well as an apartment in that country. *Id.* ¶¶ 43-44, 51; *see also id.* ¶ 65.

The Complaint also describes an inquest led by Sir Robert Owen, a High Court judge in the U.K. ("Judge Owen"). After conducting an initial sealed inquiry as to Litvinenko's death, Judge Owen "found evidence of a 'prima facie case'" that Litvinenko was murdered on behalf of the Russian government. *Id.* ¶¶ 52-54. Judge Owen then presided over a public inquiry into Litvinenko's death. *Id.* ¶ 55. Judge Owen considered as evidence two conflicting signed statements by Walter Litvinenko: the first, signed one week after his son's death on November 30, 2006, which blamed the Russian government for his son's poisoning, and the second, signed on September 18, 2012 in Italy, which implied, among other things, that Goldfarb was responsible for his son's death. *Id.* ¶¶ 62-63. Goldfarb testified at Judge Owen's public inquiry and denied Walter Litvinenko's accusations against him. *Id.* ¶ 65. After considering the evidence, Judge Owen concluded that Lugovoy and Kovtun murdered Litvinenko by placing Polonium-210 in his tea and rejected Walter Litvinenko's allegations against Goldfarb. *Id.* ¶¶ 68, 73. In response, Channel One allegedly concocted a narrative to discredit Judge Owen's inquiry and shift the blame for Litvinenko's murder away from Lugovoy, Kovtun, and the Russian government. *Id.* ¶¶ 74-78.

On March 4, 2018, another former Russian intelligence officer and his daughter were poisoned in England via a nerve agent developed in Russia. *Id.* ¶ 79. The U.K. government noted similarities of this poisoning to Litvinenko's death about twelve years earlier. *Id.* The March 4, 2018 attack allegedly resulted in "massive expulsions of Russian diplomats from [the U.K.] and from British allies around the world." *Id.* The Complaint asserts that "Russian media embarked on a massive propaganda offensive" to shift the blame for the March 4, 2018 poisoning from the

Russian government to Western intelligence services. *Id.* ¶¶ 80-81.  In connection with that effort, the Russian media "revived their false narrative of Litvinenko's death, including the accusations against Dr. Goldfarb." *Id.* ¶ 81.  This led to the Channel One programs in Spring 2018 that have given rise to the instant lawsuit.

### 2.  The Allegedly Defamatory Statements

The Complaint alleges that Channel One created and distributed four television programs that defamed Goldfarb.  These programs were aired on March 20, 2018, *id.* ¶¶ 83-90, March 30, 2018, *id.* ¶ 96, April 4, 2018, *id.* ¶¶ 99-102, and April 10, 2018, *id.* ¶¶ 103-107.  Goldfarb alleges that there were various statements made during these programs, by either the host or guests, which Channel One knew were false, including statements: (1) that Goldfarb murdered Litvinenko, *id.* ¶¶ 85-86, 96, 99, 100; (2) implying or expressly asserting that Goldfarb murdered his wife to cover up his poisoning of Litvinenko, *id.* ¶¶ 86, 96; (3) that Goldfarb is a member of the Central Intelligence Agency, *id.* ¶¶ 85, 96, 103, 106; (4) implying that Goldfarb ran an unlawful business aiding Russian criminal asylum-seekers, *id.* ¶¶ 104, 128; and (5) that Goldfarb convinced Litvinenko's wife to commit perjury at the public inquiry overseen by Judge Owen, *id.* ¶¶ 101, 128.

Goldfarb alleges numerous reasons why Channel One knew that these statements were false when it broadcasted them.  First, with respect to the last three programs, Goldfarb points to his March 22, 2018 interview with Channel One's Special Correspondent, Zhanna Agalakova, at Channel One's Manhattan studio.  *Id.* ¶ 94.  During that interview, Goldfarb claims that he "gave a detailed rebuttal to Walter [Litvinenko]'s accusations and to the false background narrative," identified sources where "true facts could be checked" such as the U.K. public inquiry website, and "pointed out the obvious falsity of Walter [Litvinenko]'s claims about his wife's death." *Id.* ¶¶ 94, 123.  Although Agalakova said she would "send the tape to Moscow right away," no part of the interview was ever aired. *Id.* ¶ 94.  Further, on April 5, 2018, a producer of Channel One called

Goldfarb for a second interview, this time conducted over the phone, which was later broadcast on the April 10, 2018 program.[2]  *Id.* ¶ 95.  Goldfarb alleges that Channel One failed to "engag[e] in the most elementary fact-checking," which "evidences that [Channel One's] defamatory statements about Dr. Goldfarb were intentional or made with reckless disregard of the truth."  *Id.* ¶ 120. Goldfarb further asserts that Channel One knew the statements made on the shows were false because it was aware of Judge Owen's public inquiry in the U.K. and his "conclusion that it was beyond reasonable doubt that Lugovoy and Kovtun poisoned Mr. Litvinenko."  *Id.* ¶¶ 74-75, 78, 118.  Finally, Goldfarb alleges that Channel One's intent to defame Goldfarb is "evident from its handling of Dr. Goldfarb's attempts to respond to its defamatory broadcasts," as certain Channel One employees actively pursued Goldfarb's own account of Litvinenko's death  but "higher level executives deliberately prevented the truth from coming out by cancelling two scheduled appearances where Dr. Goldfarb could have directly confronted his accusers . . . and never us[ing] the interview taped o[n] March 23, 2018."  *Id.* ¶ 124.

## B.  Procedural Background

### 1.  The March 4, 2020 Order Denying Channel One's Motion to Dismiss

On April 12, 2019, Channel One moved to dismiss the Complaint under Rule 12(b)(2) for lack of personal jurisdiction and *forum non coveniens*.  Dkt. 59.  In an Order dated March 4, 2020, Judge Caproni denied Channel One's motion in its entirety.  March 4, 2020 Order at 20.  Because before this Court now is a motion to reconsider that Order, this Court summarizes Judge Caproni's decision in detail below.

Judge Caproni first rejected Channel One's argument that dismissal was warranted on

---

[2] Although not alleged in the Complaint, Goldfarb conceded that he participated in this interview from his home in New Jersey in his opposition to Channel One's motion to dismiss.  *See* March 4, 2020 Order at 16 n.11 (finding the telephone interview to be irrelevant to the personal jurisdiction analysis because there was no indication that either Goldfarb or the interviewer were in New York at the time of the call).

*forum non conveniens* grounds.  *Id.* at 6-12.  Applying the three-part test in this Circuit to assess

*forum non conveniens*, *id.* at 6 (citing *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146,

153 (2d Cir. 2005)), the Court first deferred to Goldfarb's choice of the Southern District of New

York as his forum, *id.* at 6-8.  Previewing issues that would be further discussed later in her Order,

Judge Caproni found Channel One to be amenable to suit in this District, noting that Channel One

operates a studio in Manhattan, conducted an interview of Goldfarb pertaining to his defamation

claims at that studio, and distributes its programing throughout this District.  *Id.* at 7-8.  Next,

Judge Caproni found Russia not to be an adequate alternative forum, crediting Goldfarb's

"purported fear of returning to Russia, including concerns that he would be imprisoned or

physically harmed."  *Id.* at 9 (quoting Affidavit of Plaintiff Alex Goldfarb in Opposition to Motion

to Dismiss of Channel One Russia, Dkt. 63 ("Goldfarb Aff.") ¶¶ 4-7).  Judge Caproni cited as

support for these purported fears an affidavit from a former KGB agent and political asylee named

Yuri Shvets, who previously has served as an expert on Russian matters in U.S. court.  *Id.* (citing

Affidavit of Yuri Shvets, Dkt. 65 ("Shvets Aff.") ¶¶ 1-4).  Shvets opined that Goldfarb's "activities

'exposing grave crimes committed by the top representatives of the Putin regime earn him a place

near the top of the FSB's enemy list' and that his 'life and/or freedom would be in grave danger if

he enters Russia.'"  *Id.* (quoting Shvets Aff. ¶ 19).

Turning to the public and private interest factors for the *forum non conveniens* analysis,

the Court first determined that the public interest militates in favor of this District as a convenient

forum because the lawsuit may be viewed as a local dispute given Channel One's studio in New

York, interview of Goldfarb in New York, and distribution of its programing throughout the United

States.  *Id.* at 10.  The Court also rejected Channel One's argument that New York's choice-of-

law authority would necessarily require that Goldfarb's defamation claims be governed by Russian

law.  *Id.* at 10-11.[3]  As to the private interest factors, the Court acknowledged that certain key witnesses are in Russia, but explained that not all witnesses are abroad, with several also residing in London, and Channel One had not demonstrated that the cost of receiving documents in the United States from Russia would be excessively burdensome.  *Id.* at 11.

Judge Caproni then turned to Channel One's request for dismissal on personal jurisdiction grounds.  The Court began with applying New York's long-arm statute, and in particular New York C.P.L.R. section 302(a)(1), to consider whether Channel One transacts business in New York and whether the cause of action arose from that business.  March 4, 2020 Order at 13 (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)).  Judge Caproni further noted that, for defamation cases involving statements projected into New York, courts require "something more" than just the distribution of the defamatory statement within the state.  *Id.* at 14 (quoting *Best Van Lines, Inc.*, 490 F.3d at 249).  Applying these standards, Judge Caproni held that Channel One transacts business in New York for several reasons.  First, and "most significantly," Channel One's New York-based correspondent, Agalakova, conducted an interview of Goldfarb in New York.  *Id.* at 15.  Judge Caproni also relied on the allegations "that Channel One, by its subsidiary and agent Channel One Russia Worldwide (CORW), contracts to distribute its programming through" various cable platforms throughout New York.  *Id.*  Finally, Judge Caproni found that Channel One's maintenance of a studio in New York with a camera crew and Agalakova supported personal jurisdiction over Channel One.  *Id.*  Judge Caproni explained that, while Agalakova's interview of Goldfarb never aired, "it constitutes activity in New York directly related to the

---

[3] With the caveat that a full choice-of-law analysis would later be necessary, Judge Caproni "note[d] that New York choice-of-law rules dictate that the substantive law of the jurisdiction with the most significant interest in the litigation should be applied, and that, in defamation cases, 'the jurisdiction of the plaintiff's domicile at the time of the alleged defamation usually has the greatest interest in the outcome of the litigation.'"  March 4, 2020 Order at 10-11 (quoting *Bryks v. Canadian Broad. Corp.*, 928 F. Supp. 381, 383 (S.D.N.Y. 1996)).  Goldfarb, of course, was not domiciled in Russia at the time of the alleged defamation.

creation of the allegedly defamatory statements subsequently broadcast by Channel One." *Id.* For similar reasons, Judge Caproni found a substantial relationship between Channel One's conduct in New York and Goldfarb's claims, explaining that the interview of Goldfarb in New York "occurred as part of Channel One's research for the allegedly defamatory programs," and Goldfarb's contradiction of Channel One's purportedly defamatory statements at that interview "is probative of [Channel One's] alleged knowledge of the falsity of the contents of its programs and is, therefore, central to [Goldfarb's] libel claim." *Id.* at 17 (citing *Montgomery v. Minarcin*, 693 N.Y.S.2d 293, 295 (App. Div. 1999)). Having concluded that personal jurisdiction is appropriate under New York's long-arm statute, Judge Caproni then determined that the exercise of such jurisdiction would not violate the Due Process Clause, explaining that "Channel One has purposefully availed itself of the privilege of conducting business [in New York.]" *Id.* at 18.[4]

## 2. The Motions for Reconsideration

On March 18, 2020, Channel One filed a motion for reconsideration of the March 4, 2020 Order, or, in the alternative, a request for certification of an interlocutory appeal of the Order under section 1292(b). Dkts. 75-76. On April 9, 2020, Judge Caproni held Channel One's motion for reconsideration in abeyance pending jurisdictional discovery "relative to Goldfarb's allegation that Channel One published the alleged defamatory material in New York through its subsidiary and agent Channel One Russia Worldwide." Dkt. 84 at 1. Jurisdictional discovery ended on October 23, 2020. Dkt. 88.

On September 29, 2020, this case was reassigned to the undersigned. In accordance with a previously issued scheduling order, Channel One filed its renewed motion for reconsideration

---

[4] In the March 4, 2020 Order, Judge Caproni also denied without prejudice RT America's motion to dismiss for lack of personal jurisdiction and allowed Goldfarb to conduct jurisdictional discovery as to RT America's conduct in New York. March 4, 2020 Order at 18-20. As noted above, Goldfarb has since voluntarily dismissed his claims against RT America. Dkt. 92.

or, in the alternative, certification under section 1292(b) on November 6, 2020.  Dkts. 96, 97

("Motion for Reconsideration"), 98.  Goldfarb filed his opposition on November 24, 2020, Dkt.

99, and Channel One submitted its reply on December 7, 2020, Dkts. 100-101.

## II.  Discussion

### A.  Applicable Legal Standard for a Motion for Reconsideration

Federal Rule of Civil Procedure 54(b) provides district courts with authority to "revise[]"

an order "at any time before the entry of judgment adjudicating all the claims and all the parties'

rights and liabilities."  Fed. R. Civ. P. 54(b).  Local Civil Rule 6.3 further instructs that, in seeking

reconsideration of a court order denying a motion, the moving party must "set[] forth concisely

the matters or controlling decisions which counsel believes the Court has overlooked."  Local Civil

Rule 6.3.[5]  As such, Rule 54(b) permits "reconsideration in the district court's equitable

discretion."  *Kaplan v. City of New York*, No. 14 Civ. 4945 (RJS), 2018 WL 2084955, at *5

(S.D.N.Y. Mar. 22, 2018); *accord WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86, 95 (S.D.N.Y.

2012) ("A district court has broad discretion in deciding a Rule 54(b) motion.").  The Court's wide

discretion in revising a prior order, however, is not unbounded.  "[A] court must be mindful that

'where litigants have once battled for the court's decision, they should neither be required, nor

without good reason permitted, to battle for it again.'"  *Kaplan*, 2018 WL 2084955, at *5 (quoting

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 332 F.3d 147,

167 (2d Cir. 2003)).

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the

---

[5]  In addition to Rule 54(b) and Local Civil Rule 6.3, Channel One's original motion purported to move under Rule 60(b).  *See* Dkt. 75.  Rule 60(b), however, "applies only to final orders and judgments."  *See Ferring B.V. v. Fera Pharm. LLC*, No. 13 Civ. 4640 (SJF), 2015 WL 5307793, at *1 n.3 (E.D.N.Y. Sept. 10, 2015).  Because the March 4, 2020 Order was not a final order and the Court has not entered final judgment, only Rule 54(b) and Local Rule 6.3 are applicable to the instant motion.  *See Malibu Media, LLC v. Doe*, No. 15 Civ. 1862 (RJS), 2015 WL 4271825, at *1 (S.D.N.Y. July 14, 2015).

interests of finality and conservation of scarce judicial resources." *Iowa Pub. Emp. Ret. Sys. v. Deloitte & Touche LLP*, 973 F. Supp. 2d 459, 462 (S.D.N.Y. 2013) (internal quotation marks and citation omitted), *aff'd*, 558 F. App'x 138 (2d Cir. 2014). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Specifically, the Second Circuit has instructed that a motion for reconsideration under Rule 54(b) should be granted only when the moving party meets the burden of identifying: (1) "an intervening change of controlling law," (2) "the availability of new evidence," or (3) "the need to correct a clear error or prevent manifest injustice." *Coopers & Lybrand LLP*, 322 F.3d at 167 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). The motion may not be used as "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Geo-Group Commc'ns, Inc. v. Shah*, No. 15 Civ. 1756 (KPF), 2020 WL 5743516, at *10 (S.D.N.Y. Sept. 25, 2020) (quoting *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).

When considering a motion for reconsideration, a judge typically reviews his or her own prior ruling. The undersigned, however, is in the somewhat unusual position of being asked to reconsider the ruling of another judge. Courts in similar positions have emphasized that they are "understandably reluctant to reopen a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge." *Murray v. Dutcavich*, No. 17 Civ. 9121 (PMH), 2020 WL 3318212, at *1 (S.D.N.Y. June 18, 2020) (internal quotation marks and citation omitted); *see also Jones v. Goodrich Corp.*, No. 12 Civ. 1297 (JBA), 2020 WL 4558967, at *2 (D. Conn. Aug. 7, 2020) ("[R]econsideration is particularly improper where the moving party 'attempt[s] to

relitigate' before a newly assigned judge any 'arguments rejected or ruled irrelevant' by the prior judge." (quoting *Dandong v. Pinnacle Perf. Ltd.*, No. 10 Civ. 8086 (JMF), 2012 WL 6217646, at *2 (S.D.N.Y. Dec. 3, 2012)))[6]; *Waverly Props. LLC v. KMG Waverly*, No. 09 Civ. 3940 (PAE), 2011 WL 13322667, at *1 (S.D.N.Y. Dec. 19, 2011); *Peyser v. Searle Blatt & Co., Ltd.*, No. 99 Civ. 10785 (GEL), 2004 WL 307300, at *1 (S.D.N.Y. Feb. 17, 2004) ("[T]he [reassigned] judge is well advised to pay particular heed to the doctrine of 'law of the case,' and not to attempt a *de novo* review of all of the many orders and decisions made over a lengthy period by diligent and experienced judicial officers who have handled the case previously."). In a circumstance like this, the Court must be particularly vigilant in ensuring that the moving party is not benefiting from the reassignment by obtaining a second bite of the apple.

## B. Personal Jurisdiction

The Court begins with Channel One's request that the Court reconsider Judge Caproni's denial of its motion for dismissal for lack of personal jurisdiction. *See* Motion for Reconsideration at 4-17. Channel One makes three primary arguments: (1) the Court improperly relied on the distribution of the programs into New York by Channel One's exclusive distributor and subsidiary, Channel One Russia Worldwide ("CORW"), in finding that New York's long-arm statute permitted the Court to exercise personal jurisdiction over Channel One, *id.* 4-8; (2) the Court's attribution of CORW's distribution of the programs in New York to Channel One violates the Due Process Clause, *id.* at 8-11; and (3) the Court incorrectly applied law governing New York's long-arm statute in defamation cases, *id.* at 11-16. As discussed below, the Court finds that Channel One has failed to show that Judge Caproni overlooked any controlling decisions or data "that might

---

[6] While *Jones* involved a motion to alter or amend a judgment pursuant to Rule 59(e), the standard governing a motion under Rule 59(e) and for reconsideration of a court order under Local Rule 6.3 are identical. *See Ong v. Chipotle Mexican Grill, Inc.*, 329 F.R.D. 43, 50 (S.D.N.Y. 2018).

reasonably be expected to alter the conclusion reached by the court," *Shrader*, 70 F.3d at 257, or that reconsideration is otherwise appropriate.

To begin with, Judge Caproni correctly articulated the two-pronged analysis for personal jurisdiction under New York C.P.L.R. section 302(a)(1), New York's long-arm statute, which requires the Court to consider: "(1) whether the defendant 'transacts any business' in New York, and, if so, (2) whether the cause of action arises from that business." March 4, 2020 Order at 13 (citing *Best Van Lines, Inc.*, 490 F.3d at 246). Judge Caproni also properly recognized that in defamation cases, the first prong of section 302(a)(1) requires something more than the publication of a defamatory statement within the state. *Id.* at 14; *see Best Van Lines, Inc.*, 490 F.3d at 248-49. Examining "the totality of the defendant's activities within the forum," March 4, 2020 Order at 13 (quoting *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortg. Inv'rs*, 510 F.2d 870, 873-74 (2d Cir. 1975)), Judge Caproni concluded that "[Goldfarb] has sufficiently identified 'something more' to establish personal jurisdiction over Channel One," *id.* at 15. The Court reached this conclusion based on Goldfarb's "alleg[ations] that Channel One, by its subsidiary and agent Channel One Russia Worldwide, contracts to distribute its programing . . . throughout New York"; Goldfarb's uncontested allegations that "Channel One maintains a studio in New York and employs a camera crew and a New York correspondent," Agalakova; and "most significantly," the interview conducted by Agalakova of Goldfarb "in Channel One's New York studio on March 23, 2018, in connection with several of the programs that are at issue in this case." *Id.*

Judge Caproni also found the second prong, "whether the cause of action arises from that business," satisfied because of the "substantial relationship between Channel One's conduct in New York and [Goldfarb's] claims." *Id.* at 17. In particular, the Court considered and explicitly rejected "Channel One['s] argu[ment] that because that interview never aired, it is irrelevant to [Goldfarb's] claims." *Id.* Instead, the Court found that "[t]he interview occurred as part of

13

Channel One's research for the allegedly defamatory programs," and was "probative of [Channel One's] alleged knowledge of the falsity of the contents of its programs and is, therefore, central to [Goldfarb's] libel claim." *Id.*

Channel One's primary argument in support of reconsideration of this personal jurisdiction holding is that Judge Caproni's agency conclusion was flawed. Motion for Reconsideration at 5-8. But this argument—which amounts to Channel One's contention that CORW's acts may not be imputed to Channel One absent a showing of some control by Channel One—is a rehash of the same argument that Channel One put forward in support of its motion to dismiss. *See* Dkt. 67 at 8. Channel One has not pointed to any new law or controlling decisions that Judge Caproni failed to consider, but instead relies on its disagreement with the Court's application of legal authorities to the facts of this case. A litigant may not use a motion for reconsideration to present arguments already rejected. *See Geo-Group Commc'ns, Inc.*, 2020 WL 5743516, at *10.

Further, Judge Caproni did not overlook any facts that would be reasonably expected to have altered her conclusion. The Court reviewed the facts proffered by Goldfarb in connection with Channel One's distribution through CORW in analyzing whether personal jurisdiction exists. March 4, 2020 Order at 15 (citing Goldfarb Aff.). Nor has Channel One identified on reconsideration any evidence obtained in jurisdictional discovery that would impact Judge Caproni's personal jurisdiction analysis. The Court is unaware of anything unearthed in jurisdictional discovery that calls into question that Channel One distributes its programming in New York through its wholly owned subsidiary, CORW; that CORW, in turn, contracts to distribute those programs through various cable providers in New York; that Channel One and CORW are headquartered in the same office complex in Moscow; that the Chief Executive Officer of CORW is listed as an executive of Channel One on Channel One's website; and that CORW

has brought two piracy lawsuits in this District in connection with Channel One's broadcasts.[7]  *See*

Goldfarb Aff. ¶¶ 13-18.  Channel One therefore has failed to show that the Court overlooked

relevant facts or controlling law, or that an intervening change of law occurred.  And absent such

a showing, this Court declines to reconsider or overturn Judge Caproni's decision.  *See Peyser*,

2004 WL 307300, at *1.

Channel One also fails to show that reconsideration of this issue is warranted to "correct a

clear error or prevent manifest injustice."  *Coopers & Lybrand LLP*, 322 F.3d at 167.  The March

4, 2020 Order explicitly noted that the "most significant[]" factor in the Court's personal

jurisdiction analysis was Agalakova's interview of Goldfarb on March 23, 2018 in Channel One's

Manhattan studio.  March 4, 2020 Order at 15.  That factor, of course, was in addition to the Court

noting Channel One's maintenance of that studio in New York and its employment of Agalakova

and a camera crew.  *Id*.  Thus, the prior decision was primarily premised on Channel One's *own*

conduct in New York, which the Court found related to Goldfarb's defamation claims.  This is in

stark contrast to the cases that Channel One cites to in support of its motion for reconsideration,

*see* Motion for Reconsideration at 5-6, where the courts found a lack of personal jurisdiction under

section 302(a)(1) based *solely* on a defendant's conduct through a third party.  *See e.g.*, *Mayes v.*

*Leipziger*, 674 F.2d 178, 180, 183-84 (2d Cir. 1982) (rejecting personal jurisdiction under section

302(a)(1) "because [a third-party] was the agent of defendants" when the plaintiff also failed to

show that the defendants conducted business in New York themselves); *Convergen Energy LLC*

---

[7] Channel One contends that "[t]he fruits of discovery have yielded no additional facts from which it may be plausibly concluded that CORW is Channel One's 'agent' for purposes of New York's long-arm statute."  Motion for Reconsideration at 5.  But the jurisdictional discovery did not occur in the posture of a pending or anticipated motion to dismiss.  Rather, Judge Caproni already had denied dismissal, and the jurisdictional discovery was conducted in anticipation of Channel One's motion to reconsider the Court's finding of personal jurisdiction over Channel One. Channel One has not identified any facts or information obtained during jurisdictional discovery that calls into doubt that holding.

*v. Brooks*, No. 20 Civ. 3746 (LJL), 2020 WL 5549039, at *7-8 (S.D.N.Y. Sept. 16, 2020) (after finding that the "[p]laintiffs have not alleged that [the defendant] conduct[ed] business in New York," holding that the plaintiffs failed to allege sufficient facts to allow an inference that subsidiary's acts should be imputed to the defendant); *Wolo Mfg. Corp. v. ABS Corp.*, 349 F. Supp. 3d 176, 195, 198 (S.D.N.Y. 2018) (finding personal jurisdiction lacking under an agency theory when the complaint was "devoid of factual allegations describing any specific conduct on the part of [the defendant]"); *Coast to Coast Energy, Inc. v. Gasarch*, 53 N.Y.S.3d 16, 19-20 (App. Div. 2017) (finding that the defendant's personal conduct in New York was insufficient to provide jurisdiction and then rejecting personal jurisdiction under an agency theory); *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 328 (S.D.N.Y. 2015) (analyzing whether personal jurisdiction may be imputed on individual defendants under section 302(a)(1) for the plaintiff's second cause of action solely through the filing of a lawsuit by a corporation when the defendants were officers or directors of that corporation).  Channel One has not presented any reason to reconsider Judge Caproni's findings that Channel One has transacted business in the state by maintaining a studio in New York, employing a camera crew and a New York correspondent, and, most importantly, conducting an interview of Goldfarb in New York.

The Court further denies Channel One's request to reconsider whether the unaired interview from March 23, 2018 is substantially related to Goldfarb's claims of defamation for purposes of section 302(a)(1).  Motion for Reconsideration at 12-17.  First, Channel One's detailed discussion of cases cited by Judge Caproni in the March 4, 2020 Order boils down to disagreement with how to apply legal propositions articulated in those cases, which of course featured very different facts, to the case at hand.  *See* Motion for Reconsideration at 13-16.  Channel One's disagreement with the application of the law from those cases to the facts of this case hardly means that Judge Caproni overlooked controlling legal authority.  Second, Channel One briefed these

arguments at length in its original motion to dismiss as well.  *See* Dkt. 60 at 17-22.  And on these issues too, Judge Caproni considered and rejected Channel One's arguments in the March 4, 2020 Order.  *See* March 4, 2020 Order at 17 ("Channel One argues that because th[e] interview never aired, it is irrelevant to [Goldfarb's] claims.  The Court disagrees." (citation omitted)).  As Judge Caproni reasoned in her Order:

> The interview occurred as part of Channel One's research for the allegedly defamatory programs, and during the interview [Goldfarb] directly contradicted statements made during Channel One's programs.  That interview is probative of [Channel One's] alleged knowledge of the falsity of the contents of its programs and is, therefore, central to [Goldfarb's] libel claim.

*Id.*  Channel One provides the Court with no new facts or case law not before Judge Caproni at the time of the March 4, 2020 Order, but instead argues that Judge Caproni misapplied case law to the facts in reaching this conclusion.  "A court should not grant a motion for reconsideration pursuant to [Rule 54(b)] 'where the moving party seeks solely to relitigate an issue already decided.'"  *Mitchell Grp. USA LLC v. Udeh*, No. 14 Civ. 5745 (AMD), 2016 WL 11480860, at *1 (E.D.N.Y. Feb. 17, 2016) (quoting *Shrader*, 70 F.3d at 257).   And this Court declines to do so here.

Lastly, and for similar reasons, the Court rejects Channel One's contention that the Court's personal jurisdiction finding would violate its constitutional rights under the Due Process Clause. Judge Caproni reviewed controlling Supreme Court precedent, and found that personal jurisdiction over Channel One would "not offend traditional notions of fair play and substantial justice," March 4, 2020 Order at 18 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)), and that "defendant has purposefully avail[ed] itself of the privilege of conducting activities within the forum state," *id.* (quoting *Best Van Lines*, 490 F.3d at 242-43).  Here too, Judge Caproni relied on Channel One's personal conduct in New York.  *Id.*  And Channel One again cites to case law dealing with very different scenarios—namely, whether a defendant could be haled into a court *solely* for transactions in that state undertaken by a third party.  Motion for Reconsideration at 9;

see *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011) ("[the defendant] had no office in New Jersey; it neither paid taxes nor owned property there; and it neither advertised in, nor sent any employees to, the State."); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 921 (2011) ("[P]etitioners are not registered to do business in North Carolina.  They have no place of business, employees, or bank accounts in North Carolina.  They do not design, manufacture, or advertise their products in North Carolina.  And they do not solicit business in North Carolina or themselves sell or ship tires to North Carolina customers.").  Channel One therefore has not identified any controlling decisions or data that Judge Caproni overlooked in her due process analysis.

Thus, for the above reasons, the Court declines to reconsider Judge Caproni's finding of personal jurisdiction in the March 4, 2020 Order.

## C.  *Forum Non Conveniens*

Channel One additionally seeks reconsideration of Judge Caproni's denial of dismissal on *forum non conveniens* grounds.  *See* Motion for Reconsideration at 17-27.  Channel One argues that (1) the Court's *forum non conveniens* analysis was tainted by its erroneous personal jurisdiction analysis and the finding that Channel One is amenable to suit in this District, *id.* at 17-19; (2) the Court erred in deciding that Russia is not an adequate forum because the affidavits relied upon fail to establish credible evidence that Goldfarb had been threatened in Russia or experienced past harm there, *id.* at 19-21; and (3) the Court mistakenly refused to address Channel One's assertion that Goldfarb could litigate his claims in a Russian court without being physically present in Russia, *id.* at 22.  As with its arguments regarding personal jurisdiction, Channel One has failed to demonstrate that Judge Caproni overlooked controlling authority or relevant data, or that reconsideration is otherwise warranted.

Initially, Judge Caproni once again set forth the correct three-part test in this Circuit for

dismissal on *forum non conveniens* grounds: (1) "'the degree of deference properly accorded [to] the plaintiff's choice of forum,'" (2) "'whether the alternative forum proposed by defendants is adequate to adjudicate the parties' dispute,'" and (3) "[a] balanc[ing] [of] the private and public interests implicated in plaintiff's choice of forum."   March 4, 2020 Order at 6 (quoting *Norex Petroleum Ltd.*, 416 F.3d at 153).

For reasons mentioned in the preceding section, the Court rejects Channel One's argument that the Court's *forum non convenience* holding was "tainted" by its personal jurisdiction analysis. The Court is also unpersuaded by Channel One's claim that the Court improperly credited Goldfarb's allegations of fear of harm in Russia in finding that country to be an inadequate forum. Channel One's primary argument here—namely, that a forum only can be found inadequate based on fear of harm if a plaintiff has suffered harm or been threatened in the past, *id.* at 19—was made by Channel One in connection with its motion to dismiss, Dkt. 67 at 4-5 ("The cases [Goldfarb] cites are readily distinguishable, as plaintiffs therein had experienced *actual past harm in the alternate forum*." (citation omitted)).   Channel One did not cite any controlling authority for this "past harm" requirement before Judge Caproni in support of its motion to dismiss, and continues to fail to do so in its motion for reconsideration.   In addition, Channel One has not pointed to any controlling case law that Judge Caproni misapplied by relying on Goldfarb's asserted  fear and on the affidavit from Shvets to conclude that Russia is not an adequate forum.   To the contrary, Judge Caproni cited case law reflecting that it is appropriate to consider whether the alternative forum would be dangerous to the plaintiff, March 4, 2020 Order at 8 (citing *Rasoulzadeh v. Associated Press*, 574 F. Supp. 854, 861 (S.D.N.Y. 1983), *aff'd*, 767 F.2d 908 (2d Cir. 1985); *Rustal Trading US, Inc. v. Makki*, 17 F. App'x 331, 335 (6th Cir. 2001); *Cabiri v. Assasie-Gyimah*, 921 F. Supp.

1189, 1199 (S.D.N.Y. 1996))[8], and noted that a court may consider affidavits when faced with a motion to dismiss on *forum non conveniens* grounds, *id.* 9 n.9 (citing *Aguas Lenders Recovery Grp. LLC v. Suez, S.A.*, 585 F.3d 696, 697-98 n.1 (2d Cir. 2009); *RIGroup LLC v. Trefonsico Mgmt. Ltd.*, 949 F. Supp. 2d 546, 549 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2d Cir. 2014)). Channel One's attack on Judge Caproni's analysis here, therefore, reflects "disagreement with this Court's explication of the relevant legal standards and application of the standards to the facts of this case," *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 398 (S.D.N.Y. Mar. 5, 2018), and is insufficient to warrant reconsideration.

Channel One also has not demonstrated that Judge Caproni disregarded any controlling legal authority by not deferring to an affidavit attesting that Goldfarb could litigate the action without being present in Russia.  Motion for Reconsideration at 22; Second Declaration of Sergey S. Sokolov, Dkt. 68 ¶¶ 21-33.  Channel One argued this same point in its motion to dismiss, Dkt. 67 at 5-6, and has not pointed the Court to any binding authority for this proposition that a court must blind itself to a plaintiff's sworn statements as to fear of harm as long as an opposing party maintains that the plaintiff could litigate his or her claims *in abstentia*.  Obviously, in a normal case, a litigant can more powerfully advocate for its interests when appearing in person at a court proceeding, as compared to appearing *in abstentia*.  Here, given Judge Caproni's findings as to Goldfarb's fear of litigating in Russia and the reasons for that fear, it certainly is understandable why there would be concerns with a proceeding occurring in Russia in his absence.

Accordingly, the Court denies Channel One's request to reconsider Judge Caproni's denial of its motion to dismiss on *forum non conveniens* grounds.

---

[8] Channel One suggest that Judge Caproni erroneously relied upon *Rasoulzadeh* and *Cabiri* and seeks to distinguish those cases because the plaintiffs had been granted political asylum in the United States.  Motion for Reconsideration at 19-20.  Channel One does not explain why that status would be dispositive and, regardless, as a citizen living in the United States, Goldfarb of course would not need asylum to be protected from harm in Russia.

**D.  Interlocutory Appeal**

Lastly, the Court declines to certify an interlocutory appeal under 28 U.S.C. § 1292(b) of the March 4, 2020 Order as to both the personal jurisdiction and *forum non conveniens* rulings. *See* Motion for Reconsideration at 22-24.  Section 1292(b) authorizes a district court to certify an interlocutory appeal of an order if three factors are met: (1) "such order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  "Section 1292(b) is 'a rare exception to the final judgment rule that generally prohibits piecemeal appeals.'" *Sanders v. Houslanger & Assocs., PLLC*, No. 17 Civ. 8985 (DC), 2018 WL 6444922, at *3 (S.D.N.Y. Nov. 5, 2018) (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)).  A party seeking certification is required to show "exceptional circumstances sufficient to overcome the general aversion to piecemeal litigation and to justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment."  *In re S. Afr. Apartheid Litig.*, 624 F. Supp. 2d 336, 339 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).  "Because [i]nterlocutory appeals are presumptively disfavored, district courts have broad discretion to deny certification even where the statutory criteria are met."  *United States v. Cath. Health Sys. of Long Island Inc.*, No. 12 Civ. 4425 (MKB), 2021 WL 681085, at *5 (E.D.N.Y. Feb. 22, 2021) (alteration in original) (internal quotation marks and citations omitted).  Channel One has failed to show that this is one of those exceptional cases where certification under section 1292(b) is appropriate.

First, an appeal pursuant to section 1292(b) must involve "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record."  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 536 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).  The crux of Channel One's petition of certification as to

the personal jurisdiction issue is that Judge Caproni incorrectly applied the law concerning New York's long-arm statute and the Due Process Clause to the facts of this case.   Motion for Reconsideration at 22-24.   Additionally, Channel One's arguments as to Judge Caproni's *forum non conveniens* holding largely take issue with the Court's review and assessment of the factual affidavits provided by both Channel One and Goldfarb in deciding whether Russia is an adequate forum for this action.   *Id.* at 24.   Such disputes concerning the application of the law to the specific facts of a case typically are not appropriate for an interlocutory appeal.   *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d at 536 (collecting cases); *Hecklerco, LLC v. YuuZoo Corp. Ltd.*, 258 F. Supp. 3d 350, 357 (S.D.N.Y. 2017) (holding that "simpl[e] disagree[ment] that the factual record supports the Court's exercise of jurisdiction over [the defendants]" is "not a question of law at all").

Channel One also fails to demonstrate a "substantial ground for difference of opinion" of issues decided in the March 4, 2020 Order.   The law applied in the Order is settled, whether as to personal jurisdiction or *forum non conveniens*, and Channel One has not cited legal authorities which place in doubt the standards applied by the Court.   *Cf. Tantaros v. Fox News Network LLC.*, 465 F. Supp. 3d 385, 392 (S.D.N.Y. 2020) (granting certification of interlocutory appeal for a "matter of first impression in this Circuit"); *Yesh Music, LLC v. Amazon.com, Inc.*, No. 16 Civ. 1406 (BMC), 2017 WL 2623854, at *6 (E.D.N.Y. June 16, 2017) ("A substantial ground for difference of opinion may exist where the issues are difficult and of first impression, or where the party seeking interlocutory review can point to a substantial split in Second Circuit district court rulings on the relevant issue." (internal quotation marks and citation omitted)).

The third factor admittedly militates in favor of permitting an interlocutory appeal.   A reversal of the Court's March 4, 2020 Order would end this litigation in this Court, and therefore "materially advance the ultimate termination of the litigation."   28 U.S.C. § 1292(b).   The same

could be said, however, of any dispositive motion to dismiss order.  With the first two factors weighing heavily in favor of denying certification of the March 4, 2020 Order, the Court denies Channel One's petition to seek an interlocutory appeal under section 1292(b).

### III.  Conclusion

For the reasons discussed above, Channel One's renewed motion for reconsideration is denied.  Channel One has failed to demonstrate "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Coopers & Lybrand LLP*, 322 F.3d at 167.  The Court also denies Channel One's request to certify the March 4, 2020 Order for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

The Clerk of Court is respectfully directed to close the motion pending on Docket Number 96.

Channel One shall file an Answer to the Complaint within fourteen days of the filing of this Order.  The Court will schedule an Initial Pretrial Conference by separate order.

SO ORDERED.

Dated: April 13, 2021
     New York, New York

               JOHN P. CRONAN
           United States District Judge