UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                             :
ALEX GOLDFARB,                                     :

                                     Plaintiff,

                -v-                                             18 Civ. 8128 (JPC)

CHANNEL ONE RUSSIA *et al.*,                   OPINION AND ORDER

                              Defendants.
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Last year, the Court entered a $25 million default judgment against Channel One Russia ("Channel One") on Alex Goldfarb's claims for libel. Hoping to recover a portion of that judgment, Goldfarb now moves for an order requiring three American media companies[1] to turn over amounts owed by those companies to Channel One. For the following reasons, the Court grants Goldfarb's motion and orders the media companies to turn over the funds, subject to Goldfarb first having obtained the necessary license(s) from the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC").

---

[1] Those three companies are International Media Distribution, LLC ("IMD"), Charter Communications Operating, LLC ("CCO"), and DirecTV, LLC ("DirecTV"). The Court refers to these parties collectively as the "Garnishees."

## I. Background[2]

Goldfarb commenced this civil action against Channel One and RT America[3] on September 6, 2018. Dkts. 1, 5. Goldfarb alleged that Channel One defamed him during four television programs broadcast that year, asserting two causes of action for libel, Dkt. 5 ¶¶ 115-131 (First and Second Causes of Action), and one cause of action for intentional infliction of emotional distress, *id.* ¶¶ 132-134 (Third Cause of Action). Eventually, after years of litigation, Channel One decided to call it quits, informing the Court during a conference held on February 28, 2024, that it no longer wished to continue defending this case. *See* Minute Entry dated Feb. 28, 2024. So on April 15, 2024, after a hearing, the Court entered a default judgment against Channel One on Goldfarb's First and Second Causes of Action, each for libel. Dkt. 184. That judgment awarded Goldfarb $25 million in compensatory and punitive damages plus post-judgment interest, and dismissed with prejudice Goldfarb's Third Cause of Action as well as three counterclaims that Channel One had filed in response to Goldfarb's Complaint. *Id.*; *see also* Dkt. 117 at 35-36 (Channel One's counterclaims).

While this action was pending, Russia invaded Ukraine. Sellier Decl. ¶ 4. The conflict prompted a wave of sanctions against individuals and entities affiliated with the Russian government, including Channel One. *Id.* Specifically, on May 8, 2022, OFAC designated Channel One as a Specially Designated National ("SDN") pursuant to Executive Order 14024. *Id.*; *see* U.S. Dep't of Treasury, *U.S. Treasury Takes Sweeping Action Against Russia's War Efforts* (May 8, 2022), available at https://home.treasury.gov/news/press-releases/jy0771 (last visited October 8,

---

[2] The factual record pertaining to Goldfarb's motion consists of a declaration submitted by his counsel, Bertrand C. Sellier, Dkt. 211-1 ("Sellier Decl."), and matters of which the Court may take judicial notice.

[3] On September 1, 2020, Goldfarb filed a notice of dismissal with respect to RT America only, Dkt. 91, which the Court granted that day, Dkt. 92.

2025); Off. of Foreign Assets Control, *Sanctions List Search: Joint Stock Company Channel One Russia*, available at https://sanctionssearch.ofac.treas.gov/Details.aspx?id=37197 (last visited October 8, 2025). As a result of Channel One's designation as an SDN, all of Channel One's "property and interests in property that are in the United States" or are "within the possession or control of any United States person . . . are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in." Exec. Order No. 14024, Sec. 1, 86 Fed. Reg. 20249, 20249 (Apr. 15, 2021); *see* 31 C.F.R. § 587.201(a) ("All transactions prohibited pursuant to Executive Order (E.O.) 14024 of April 15, 2021 are prohibited pursuant to this part.").

On May 15, 2024, Goldfarb applied to OFAC for authorization to enforce his judgment against Channel One's U.S.-based assets. Sellier Decl. ¶ 7. Meanwhile, Goldfarb served subpoenas on certain entities—NBC Universal, Charter Communications, and DirecTV—requesting information on any assets or property held by those entities or their subsidiaries that belonged to Channel One as well as any debts owed to Channel One. *Id.* ¶¶ 8-13. In response to those subpoenas, NBC Universal disclosed that one of its subsidiaries, IMD, had "cash liabilities" to Channel One in the total amount of $160,038.17,[4] *id.* ¶ 9; *see* Sellier Decl., Exh. B; Charter Communications reported that it or its subsidiary, CCO, owed $45,954.13 to Channel One in "accrued license [fees]," Sellier Decl., Exh. C; *see* Sellier Decl. ¶¶ 11, 18 (explaining that "the payables previously identified by Charter [Communications] are owed by CCO"); and DirecTV

---

[4] In an August 16, 2024 email to Goldfarb's counsel, NBC Universal explained that IMD "has cash liabilities of $149,812.09 to Channel [One]" and that IMD also has a bankruptcy judgment against a different entity for unpaid license fees for Channel One networks in 2018 to 2019, and that $12,030 in payments on that judgment had been made. Sellier Decl., Exh. B; *see* Sellier Decl. ¶ 9. NBC Universal further explained that "IMD retains 15% as its commission share and 85% of each payment is set aside for cash liabilities to [Channel One]," and that "$10,226.08 from those payments [was] set aside for [Channel One]." Sellier Decl., Exh. B; *see* Sellier Decl. ¶ 9. The $160,038.17 amount, then, reflects the total of $149,812.09 in cash liabilities plus the $10,226.08 set aside for Channel One.

3

disclosed that it owed Channel One $152,999.79, Sellier Decl. ¶¶ 13, 18; Sellier Decl., Exh. D at 5 ¶ 3.  Then, on May 7, 2025, OFAC denied Goldfarb's application for authorization without prejudice on the ground that it would have been premature to grant him a license before a court had ordered the Garnishees to turn over any funds in which Channel One has an interest.  Sellier Decl., Exh. A (OFAC denial letter) at 2.  OFAC's denial letter also explained that while Goldfarb "does not require authorization from OFAC to initiate and conduct . . . legal proceedings" to recover Channel One's frozen assets, further authorization from OFAC would be "required to give effect to a U.S. court order purporting to transfer or otherwise alter or affect property or interests in" those assets.  *Id.* at 1-2.

Soon after receiving OFAC's response, on May 12, 2025, Goldfarb filed a motion under Federal Rule of Civil Procedure 69 seeking an order pursuant to New York's Civil Practice Law and Rules ("N.Y. C.P.L.R.") Section 5225(b) requiring NBC Universal, Charter Communications, and DirecTV to turn over the funds owed to Channel One identified in their respective subpoena responses, plus interest.  Dkt. 192.  Those three entities then filed briefs in response to Goldfarb's motion, in which they stated that while they did not object to the Court ordering them to turn over the relevant funds subject to Goldfarb obtaining authorization therefor from OFAC, they did oppose Goldfarb's request for interest.  Dkts. 197 (Charter Communications Brief), 199 ("NBC Br."), 202 ("DirecTV Br.").  Goldfarb later filed a reply in the form of a declaration by his counsel, withdrawing his request for interest and agreeing that any order requiring NBC Universal, Charter Communications, and DirecTV to turn over the relevant funds should be made contingent on OFAC authorization.  Sellier Decl. ¶ 16; *see also* Dkt. 203 ("Sellier June 10, 2025 Decl.") ¶ 4.  On July 17, 2025, the Court held a conference to discuss Goldfarb's motion.

Following that conference, Goldfarb, NBC Universal, Charter Communications, and DirecTV filed a joint letter on August 8, 2025. Dkt. 209 ("Aug. 8, 2025 Ltr."). In that letter, Goldfarb requested leave to "amend [his] turnover motion to be made pursuant to both Sections 5225(b) and 5227 of the New York Civil Practice Law and Rules, and to name [IMD], a subsidiary of NBC Universal . . . and [CCO], a subsidiary of Charter Communications . . . as additional Garnishees." *Id.* at 1. IMD, CCO, and DirecTV acknowledged that "the payables previously identified are owed" to Channel One. *Id.* at 1-2. And their counsel represented that "in order to release the money" the Garnishees and their banks "will require an order from the Court directing [them] to pay those funds to Dr. Goldfarb and an OFAC license authorizing the transaction." *Id.* at 1-2.

On August 11, 2025, this Court granted Goldfarb leave to file an amended turnover motion and ordered him "to promptly serve all motion papers on all the Garnishees and Channel One Russia," giving Channel One "twenty-one days" from the filing of proof of service "to file any objections to the motion." Dkt. 210. Goldfarb filed his amended motion on August 15, 2025, which names IMD, CCO, and DirecTV as Garnishees and requests an order that they "turn over . . . all funds that are in each Garnishee's possession, and in which Judgment Debtor Channel One Russia has an interest, as identified in the Sellier Declaration with respect to each Garnishee, subject to a license from [OFAC] authorizing the transaction." Dkt. 211; *see also* Sellier Decl. ¶¶ 21-23 (seeking an order directing IMD, CCO, and DirecTV "to turn over to Plaintiff the funds identified in the August 8, 2025, joint letter, subject to a license from OFAC"). Goldfarb filed proof of service of the amended turnover motion as to the Garnishees and Channel One on August 20, 2025. Dkts. 212, 213.

On August 27, 2025, DirecTV and IMD reiterated that they "do not oppose Plaintiff's amended turnover motion seeking funds owed to Channel One Russia," so long as this Court "directs" them "to pay the Funds to Plaintiff only upon such authorization from OFAC." Dkt. 214. And on September 25, 2025, Charter Communications—and presumably CCO—confirmed the same. *See* Dkt. 215 (letter from counsel for Charter Communications); *see also* Aug. 8, 2025 Ltr. (explaining that counsel for Charter Communications "is authorized to accept service of an amended motion on behalf of CCO LLC" and requesting an order "directing CCO LLC and its bank to pay those funds to Dr. Goldfarb" subject to the OFAC license). Channel One did not file any objection.

## II. Discussion

### A. Applicable Law

It is well-established that "[f]ederal courts have the authority to enforce their judgments, and retain jurisdiction over supplementary proceedings to do so." *Arrowhead Cap. Fin., Ltd. v. Seven Arts Ent., Inc.*, No. 14 Civ. 6512 (KPF), 2025 WL 551357, at *2 (S.D.N.Y. Feb. 18, 2025) (internal quotation marks omitted). Federal Rule of Civil Procedure 69 supplies the applicable framework to that end, providing that "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise," and specifying that "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Because Goldfarb brought the instant motion in the Southern District of New York, the Court must apply New York state law in determining whether he is entitled to the amounts that the Garnishees owe to Channel One. *Mitchell v. Garrison Protective Servs., Inc.*, 819 F.3d 636, 638 (2d Cir. 2016) (*per curiam*).

In his original motion, Dkt. 192, Goldfarb relied on Section 5225(b) of Article 52 of N.Y. C.P.L.R., which is the Article "govern[ing] the enforcement and collection of money judgments

6

in New York." *Teamsters Loc. 456 Pension, Health & Welfare, Annuity, Educ. & Training, Indus. Advancement & Legal Servs. Funds by Picani v. CRL Transp., Inc.* ("*Teamsters*"), No. 18 Civ. 2056 (KMK), 2020 WL 3619048, at *3 (S.D.N.Y. July 2, 2020). Section 5225(b), which applies to "[p]roperty not in possession of [the] judgment debtor," N.Y. C.P.L.R. § 5225(b), "allows a judgment creditor to commence a [special] proceeding to order a third party to turn over the judgment debtors' assets." *Tire Eng'g & Distrib. L.L.C. v. Bank of China Ltd.*, 740 F.3d 108, 110 (2d Cir. 2014). Specifically, Section 5225(b) authorizes a proceeding "against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee." N.Y. C.P.L.R. § 5225(b).

At the conference held on July 17, 2025, however, all parties agreed that Goldfarb's motion could alternatively be treated under N.Y. C.P.L.R. Section 5227 and consented to the Court construing the motion under that provision. Goldfarb's amended motion thus proceeds under both Section 5225(b) and Section 5227. Dkt. 211. Section 5227 allows a judgment creditor to commence a special proceeding "against any person who it is shown is or will become indebted to the judgment debtor" and to seek an order "requir[ing] such person to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy the judgment, and to execute and deliver any document necessary to effect payment." N.Y. C.P.L.R. § 5227. When a garnishee "pays a debt he owes the judgment debtor" to the judgment creditor pursuant to an order issued by a court under Section 5227, the garnishee "is discharged from his obligation to the judgment debtor to the extent of the payment." *Id.* § 5209; *see JPMorgan Chase Bank, N.A. v. Motorola, Inc.*, 846

7

N.Y.S.2d 171, 181 (1st Dep't 2007) ("The policy to protect garnishees from double liability is given statutory expression in [N.Y.] C.P.L.R. [Section] 5209 . . . .").[5]

Although Section 5227 contemplates a "special proceeding" against a third-party garnishee, N.Y. C.P.L.R. § 5227, the Federal Rules of Civil Procedure recognize only "one form of action—the civil action." Fed. R. Civ. P. 2. The Second Circuit, accordingly, has held that "a party seeking a money judgment against a non-party garnishee may proceed by motion and need not commence a special proceeding, as long as the court has personal jurisdiction over the garnishee." *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469 (2d Cir. 2018); *see also Vera v. Republic of Cuba*, 802 F.3d 242, 244 n.3 (2d Cir. 2015) (indicating that "the filing requirements of a 'special proceeding' under New York law need not be strictly adhered to as long as there is no prejudice to the opposing party in giving notice of the claims and framing the issues"). Accordingly, courts in this District have entertained requests for a turnover order through the form of a motion under Rule 69, treating such motions under the standard applicable to motions for summary judgment. *See, e.g.*, *Arrowhead Cap. Fin.*, 2025 WL 551357, at *3; *Reich v. Casabella Landscaping, Inc.*, No. 21 Civ. 9327 (AEK), 2024 WL 4950033, at *3 (S.D.N.Y. Dec. 3, 2024); *Teamsters*, 2020 WL 3619048, at *3. Under that approach, the judgment creditor must show that there are no genuine disputes of material fact and that it is entitled to the relevant funds under Rule 69(a)(1) and Section 5227. *See CSX Transp.*, 879 F.3d at 473 ("A court may grant

---

[5] Prior to the amended turnover motion, DirecTV and NBC Universal asked the Court to include in any order a "decree[]" that they "will no longer possess the property of [Channel One] upon payment and thus cannot be subject to a claim by [Channel One] for such funds." DirecTV Br. at 1; NBC Br. at 2 n.3. Because there is no case or controversy pending before the Court concerning Channel One's rights, if any, to recover the funds that the Garnishees have yet to turn over to Goldfarb, the Court declines to pre-judge the merits, if any, of such a dispute. *See* U.S. Const. Art. III.

summary relief where there are no questions of fact, but it must conduct a trial on disputed issues of fact on adverse claims in a turnover matter." (internal quotation marks omitted)).

**B.    Analysis**

Under the standards described above, the Court readily concludes that Goldfarb is entitled to a turnover order in the amount of the debt owed by the Garnishees—IMD, CCO, and DirecTV—to Channel One.  On the record presented, there is no dispute as to either the fact or amount of the debt that the Garnishees presently owe to Channel One.  *See* Sellier Decl. ¶¶ 8-23; Sellier Decl., Exhs. B, C, D.  Indeed, each of the Garnishees has stated that it has no objection to the Court ordering it to turn over the respective amounts sought by Goldfarb's motion.  *See* Dkts. 214, 215.  Thus, the Court concludes that the undisputed factual record shows that each Garnishee "is . . . indebted to" Channel One within the meaning of Section 5227, enabling the Court to "require [each Garnishee] to pay to [Goldfarb] the debt" that it owes to Channel One "upon maturity," N.Y. C.P.L.R. § 5227, which has occurred.

### III. Conclusion

For these reasons, the Court grants Goldfarb's motion for a turnover order and will enter a separate written order directing each Garnishee to pay to Goldfarb the amount of the debt that it owes to Channel One, subject to Goldfarb first having obtained the requisite authorization from OFAC.[6]  The Clerk of Court is respectfully directed to close Docket Number 211.

SO ORDERED.

Dated: October 8, 2025
    New York, New York

JOHN P. CRONAN
United States District Judge

---

[6] In light of Goldfarb's withdrawal of his request for interest, Sellier June 10, 2025 Decl. ¶ 4, the Court will not include a provision for interest in its forthcoming order.  The Court will require that Goldfarb obtain authorization from OFAC in order to receive the funds sought by his motion, given his agreement to that condition.  *See id.*